**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

THE NATIONAL FEDERATION
OF THE BLIND OF VIRGINIA, et al.,

Plaintiffs,

v.                                              Case No. 3:23-cv-127-HEH

VIRGINIA DEPARTMENT OF
CORRECTIONS, et al.,

Defendants.


**PLAINTIFFS NACARLO COURTNEY'S AND WILLIAM STRAVITZ'S**
**MEMORANDUM IN OPPOSITION TO**
**MOTION TO DISMISS ON BEHALF OF DEFENDANT VITALCORE**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 1

I.      Nacarlo Courtney ............................................................................................... 1

II.     William Stravitz ................................................................................................ 3

STANDARD OF REVIEW .............................................................................................. 4

ARGUMENT .................................................................................................................. 5

I.      Both Mr. Courtney and Mr. Stravitz allege sufficient facts to state a medical malpractice claim against VitalCore. ........................................................................... 5

        A.      Plaintiffs need not use the specific term "medical malpractice" or invoke the VMMA to state a medical negligence claim against VitalCore. ........................... 5

        B.      Both Mr. Courtney and Mr. Stravitz allege sufficient facts to state a medical negligence claim against VitalCore. ......................................................... 7

                1.      Nacarlo Courtney .......................................................................... 7

                2.      William Stravitz ............................................................................ 8

        C.      Mr. Courtney and Mr. Stravitz do not need to comply with the VMMA's procedural requirements in a federal court action. ................................................ 9

II.     Mr. Courtney's and Mr. Stravitz's allegations are sufficiently specific to put VitalCore on notice of the claims alleged. ............................................................... 12

CONCLUSION .............................................................................................................. 15

CERTIFICATE OF SERVICE ...................................................................................... 16

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Andes v. United States*,
No. 1:19-cv-00005, 2020 WL 3895780 (W.D. Va. July 10, 2020) .............................. 10, 11, 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................... 6, 12, 13

*Bd. of Trs. v. Four-C-Aire, Inc.*,
929 F.3d 135 (4th Cir. 2019) ............................................................................................. 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................... 4, 6, 7, 12

*Brown v. Koulizakis*,
331 S.E.2d 440 (Va. 1985) ................................................................................................. 7

*De'lonta v. Johnson*,
708 F.3d 520 (4th Cir. 2013) ............................................................................................. 8

*Dixon v. Sublett*,
809 S.E.2d 617 (Va. 2018) ................................................................................................. 7

*Edwards v. City of Goldsboro*,
178 F.3d 231 (4th Cir. 1999) ............................................................................................. 4

*Erie R. Co. v. Tompkins*,
304 U.S. 64 (1938) .............................................................................................................. 9

*Felder v. Casey*,
487 U.S. 131 (1988) ............................................................................................................ 9

*Hall v. DIRECTV, LLC*,
846 F.3d 757 (4th Cir. 2017) ............................................................................................. 4

*Hanna v. Plumer*,
380 U.S. 460 (1965) ...................................................................................................... 9, 10

*King v. Rubenstein*,
825 F.3d 206 (4th Cir. 2016) ............................................................................................. 4

*Marcantonio v. Dudzinski*,
155 F. Supp. 3d 619 (W.D. Va. 2015) ............................................................................. 13

*Pledger v. Lynch*,
5 F.4th 511 (2021) .............................................................................................. 9, 10, 11, 12

*Raub v. Bowen*,
    960 F. Supp. 2d 602 (E.D. Va. 2013) .................................................................................. 13

*Ray v. Roane*,
    948 F.3d 222 (4th Cir. 2020) ............................................................................... 4, 6, 12

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ............................................................................................ 9, 10, 11

*Tobey v. Jones*,
    706 F.3d 379 (4th Cir. 2013) ............................................................................... 4, 6, 12

*Washington v. Brooks*,
    No. 3:20CV88-HEH, 2021 WL 4975268 (E.D. Va. Oct. 26, 2021) .......................................... 5

*Whittaker v. O'Sullivan*,
    No. 3:21cv474, 2022 WL 3215007 (E.D. Va. Aug. 9, 2022) .................................................. 11

*Zupko v. United States*,
    No. 20-2157, 2022 WL 256343 (4th Cir. Jan. 26, 2022) .................................................. 11, 12

## Rules

Fed. R. Civ. P. 1 ......................................................................................................................... 9

Fed. R. Civ. P. 11(b) ................................................................................................................. 10

Fed. R. Civ. P. 8(a)(2) ......................................................................................................... 12, 13

## Regulations

Va. Code Ann. § 8.01-20.1 .................................................................................................. 9, 10, 12

**INTRODUCTION**

Mr. Courtney and Mr. Stravitz have alleged sufficient facts to state medical negligence claims against VitalCore. Contrary to VitalCore's assertions, Mr. Courtney and Mr. Stravitz need not provide an expert witness certification to comply with the Virginia Medical Malpractice Act's procedural requirements because they bring their state-law medical malpractice claims in federal court. Mr. Courtney and Mr. Stravitz also state their claims against VitalCore with sufficient specificity to satisfy federal pleading standards. Finally, although VitalCore mistakenly suggests Mr. Courtney's and Mr. Stravitz's Eighth Amendment claims against VitalCore were brought under a *respondeat superior* theory, Mr. Courtney and Mr. Stravitz are choosing not to pursue their Eighth Amendment direct liability claims against VitalCore at this time.

**STATEMENT OF FACTS**

Plaintiffs National Federation of the Blind of Virginia and seven individual prisoners incarcerated by the Virginia Department of Corrections ("VDOC") filed suit challenging inaccessible services and deficient medical treatment in violation of their constitutional rights and applicable federal and state disability civil rights laws. *See generally* Compl. ¶¶ 1–5, ECF No. 1. The claims against Defendant VitalCore are found in Counts Seven, Eight, Eleven, and Twelve of the Complaint. *Id.* ¶¶ 324–32, 333–43, 361–74.

**I.    Nacarlo Courtney**

Plaintiff Nacarlo Courtney is visually impaired and was most recently housed at Greensville Correctional Center ("Greensville"). *Id.* ¶¶ 11, 13. Previously, Mr. Courtney was housed at Sussex I State Prison ("Sussex I"). *Id.* ¶ 12. He was subsequently moved to Sussex II State Prison ("Sussex II") before being transferred to Wallens Ridge State Prison, Nottoway Correctional Center, and finally Greensville. *Id.* ¶ 12.

While at Sussex I, Mr. Courtney was diagnosed with keratoconus. *Id.* ¶ 216. This causes his corneas to thin and bulge into a cone shape, leading to vision loss and sensitivity to light. *Id.* Mr. Courtney's eyesight progressively deteriorated, even as he was prescribed contacts to correct his vision. *Id.* ¶ 217. By 2019, Mr. Courtney's vision had substantially worsened to 20/200 in his right eye and 20/100 in his left eye. *Id.* ¶ 219.

By February 2020, Mr. Courtney's condition had deteriorated to the point where he submitted an informal complaint to correctional officials at Sussex II to seek access to medical care and new contacts, which had been delayed by two months. *Id.* ¶ 220. He was not seen by a medical provider until June 2020, who noted that Mr. Courtney's keratoconus was "unstable" in both eyes and that he required different contact lenses. *Id.* ¶ 221.

Mr. Courtney subsequently received a new right contact lens, but not a new left one. *Id.* ¶ 222. That right contact lens broke in July or August 2021, and Mr. Courtney submitted requests for a medical appointment and new contacts. *Id.* ¶ 223. Those requests were not timely honored, and Mr. Courtney submitted a formal written complaint in September 2021. *Id.* ¶¶ 223–24. But Sussex II officials never sent Mr. Courtney to see a doctor, nor did they replace his broken right contact lens. *Id.* ¶¶ 224–25.

Upon his transfer to Greensville in November 2021, a medical provider in the Greensville infirmary found that Mr. Courtney required a 0.9% sodium chloride solution to insert his contact lenses, as well as contact lens solution to clean his contacts daily. *Id.* ¶ 227. Mr. Courtney was referred to the Ophthalmology Department at VCU in December 2021 to obtain the contact lens solution. *Id.* ¶ 228. That same month, VitalCore began providing medical services to prisoners on site at Greensville and Deerfield Correctional Centers. *Id.* ¶ 70. The following month, Mr. Courtney informed Greensville officials that his right contact lens was still broken, as it had been

for over a year. *Id.* ¶ 229. In April 2022, Mr. Courtney stated in an emergency grievance that he could barely see and that he needed immediate medical attention. *Id.* ¶ 230. In early May 2022, Dr. Gore admitted Mr. Courtney to the infirmary "for his safety." *Id.* ¶ 231. Three days later, Dr. Gore finally referred Mr. Courtney to outside specialists at VCU who prescribed artificial tears and gel lubricant for Mr. Courtney's eyes. *Id.* ¶ 232.

By July 2022, Mr. Courtney was scheduled for a contact lens fitting. *Id.* ¶ 234. Dr. Lenna Walker at VCU Ophthalmology fitted Mr. Courtney for new lenses, and ordered that Greensville supply him with contact lens cleaning solution and 0.9% sodium chloride solution. *Id.* ¶ 235. Dr. Walker also noted that she had requested to see Mr. Courtney for his fitting at least six times. *Id.* In August 2022, Dr. Gore, a VitalCore employee, denied Mr. Courtney the contact lens cleaning solution that Dr. Walker had prescribed. *Id.* ¶ 236.

Mr. Courtney continued to have issues with receiving regular follow-up appointments with the ophthalmologists throughout the remainder of his time at Greensville. *Id.* ¶ 237. He likewise struggled to obtain the cleaning solution and the 0.9% sodium chloride solution that he must apply before inserting his contact lenses. *Id.* Mr. Courtney's eyesight worsened during the period of time in which VitalCore's employee, Dr. Gore, failed to ensure that Mr. Courtney had regular appointments and medical treatment for his eyes, leading to physical pain from his bulging eyes, infection, and significant emotional distress. *Id.* ¶ 238.

## II.    William Stravitz

Plaintiff William Stravitz is a visually impaired prisoner currently housed at Deerfield Correctional Center ("Deerfield"). *Id.* ¶¶ 45, 49. Mr. Stravitz's vision loss is caused by cataracts that were initially diagnosed in the fall of 2021. *Id.* ¶ 239. After waiting five months for an appointment with a specialist, Mr. Stravitz's diagnosis was confirmed by Defendant Dr. Gupta, who told him that he would schedule him for surgery to have his cataracts removed. *Id.* ¶ 240.

Mr. Stravitz has submitted multiple requests to schedule his cataract surgery since March 2022, but has yet to see a surgeon. *Id.* ¶ 241.

More than a year after his initial diagnosis and surgery recommendation, Mr. Stravitz has yet to receive either a follow-up appointment or any action to remove his cataracts. *Id.* ¶¶ 244–45. Mr. Stravitz's vision is progressively deteriorating while he awaits surgery, which has caused him increased physical discomfort, mental anguish, and emotional distress. *Id.* ¶ 247. Additionally, his worsening eyesight puts him at risk of losing his job in the prison library. *Id.* ¶ 161.

## STANDARD OF REVIEW

A party moving to dismiss a complaint pursuant to Rule 12(b)(6) bears the burden of demonstrating that the plaintiff's claims are legally insufficient, and that the plaintiff has stated no claim for relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (alteration in original) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)). In considering a Rule 12(b)(6) motion, the court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). The court must also "construe the complaint 'liberally so as to do substantial justice.'" *Bd. of Trs. v. Four-C-Aire, Inc.*, 929 F.3d 135, 152 (4th Cir. 2019) (quoting *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017)). The court does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

## ARGUMENT

I. **Both Mr. Courtney and Mr. Stravitz allege sufficient facts to state a medical malpractice claim against VitalCore.**

A. **Plaintiffs need not use the specific term "medical malpractice" or invoke the VMMA to state a medical negligence claim against VitalCore.**

As a threshold issue, relying on *Washington v. Brooks*, No. 3:20CV88-HEH, 2021 WL 4975268, (E.D. Va. Oct. 26, 2021), VitalCore erroneously maintains that Mr. Courtney and Mr. Stravitz must specifically use the term "medical malpractice" in order to bring a medical negligence claim against VitalCore. Mem. of Points and Auths. in Supp. of Def. VitalCore's Mot. to Dismiss Pls.' Compl. ("Def.'s Mot.") at 11–12, 14–15. *Washington* does not stand for this proposition, and it is readily distinguishable. In *Washington*, the plaintiff simply alleged that the medical professionals in that case had "breached their duties to exercise reasonable care" and that "[a]s a direct and proximate result of [their] negligence . . . , [Plaintiff] suffered injuries, great physical pain, severe emotional distress, and mental anguish." 2021 WL 4975268, at *2 (quoting SAC ¶¶ 318, 320).

Here, by contrast, Mr. Courtney alleges that VitalCore is legally responsible for the actions of its employee, Dr. Gore, which were performed in the scope of his employment with VitalCore. Compl. ¶ 363. Mr. Courtney further alleges that "Defendants owed a duty to Mr. Courtney to treat him in accordance with recognized and acceptable standards of medical care, health care, nursing care, and treatment" and that "Defendants breached this duty." Compl.¶ 364.

Likewise, Mr. Stravitz alleges that "Defendants had, among other duties, duties to exercise reasonable care with regard to the *provision of medical care* to Mr. Stravitz, *including prompt medical care and treatment for his cataracts*. Defendants breached this duty." *Id.* ¶ 369 (emphasis added). Mr. Stravitz further alleges that "Defendants owed a duty to Mr. Stravitz *to*

*treat him in accordance with recognized and acceptable standards of medical care, health care, nursing care, and treatment*." *Id.* ¶ 371 (emphasis added).

That Mr. Courtney and Mr. Stravitz do not specifically invoke the VMMA or use the term "medical malpractice" is not fatal to their claims against VitalCore. Neither must specifically caption the claim "medical malpractice" to make it clear that this is a medical negligence claim, as medical malpractice is a type of negligence. Moreover, the allegation in Count 11 makes clear that Dr. Gore has a "dut[y] to exercise reasonable care with regard to the provision of medical care to Mr. Courtney" and that VitalCore is legally responsible for breaches of that duty within the scope of Dr. Gore's employment. *Id.* ¶¶ 362–63.

In Count 12, Mr. Stravitz likewise alleges that Dr. Harris owed him a "dut[y] to exercise reasonable care with regard to the provision of medical care to Mr. Stravitz, including prompt medical care and treatment for his cataracts" and that VitalCore is legally responsible for breaches of that duty within the scope of Dr. Harris's employment. *Id.* ¶¶ 369–70. This is sufficient for both Mr. Courtney and Mr. Stravitz to allege medical malpractice claims against VitalCore. *See Ray*, 948 F.3d at 226 ("A complaint need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" (alterations omitted) (quoting *Tobey*, 706 F.3d at 387)).

Contrary to *Twombly* and *Iqbal*, VitalCore attempts to impose a requirement that Mr. Courtney and Mr. Stravitz specifically invoke the VMMA for their claims to proceed. But this is not the standard. Mr. Stravitz and Mr. Courtney must merely allege sufficient facts to survive a

motion to dismiss their medical malpractice claims—and both have done so here. *See Twombly*, 550 U.S. at 570.[1]

> **B.    Both Mr. Courtney and Mr. Stravitz allege sufficient facts to state a medical negligence claim against VitalCore.**

Under Virginia law, "[i]n medical malpractice cases, as in other negligence actions, the plaintiff must establish not only that the defendant violated the applicable standard of care, and was therefore negligent, he must also sustain the burden of showing that the negligent acts constituted a proximate cause of the injury or death." *Dixon v. Sublett*, 809 S.E.2d 617, 620 (Va. 2018) (quoting *Brown v. Koulizakis*, 331 S.E.2d 440, 446 (Va. 1985)). Mr. Courtney has alleged enough facts to support a claim against VitalCore as Dr. Gore's employer, and Mr. Stravitz has done the same to support a claim against VitalCore as Dr. Harris's employer.[2]

> **1.    Nacarlo Courtney**

Here, Mr. Courtney alleges that he went over a year and a half with a broken right contact lens, did not receive his prescribed contact lens cleaning solution or 0.9% sodium chloride solution, and has had continuous issues receiving his prescriptions and regular follow-up appointments. Compl. ¶¶ 227, 229, 232–33, 235–37. If VitalCore's employee Dr. Gore had promptly scheduled Mr. Courtney's treatment and provided him with his required medications, then Mr. Courtney would not have experienced worsening eyesight as well as "pain from his

---

[1] In fact, VitalCore understood Count 12 to be a medical malpractice claim, because it demanded an expert witness certification from Mr. Stravitz—a demand applicable only to medical malpractice claims under Virginia law. *See infra* Section I.C.

[2] Mr. Courtney and Mr. Stravitz are pursuing a medical malpractice claim under a *respondeat superior* theory of liability. Contrary to VitalCore's characterization of their Eighth Amendment claims, Mr. Courtney and Mr. Stravitz are not pursuing *respondeat superior* liability for their Eighth Amendment deliberate indifference claims as there is no vicarious liability under § 1983. *See* Def's Mot. at 7–8. There are, however, theories of direct liability under § 1983, but Mr. Courtney and Mr. Stravitz are choosing not to pursue their Eighth Amendment direct liability claims against VitalCore at this time.

increasingly bulging, swollen eyes, infection, and significant emotional distress" as he alleges. *Id.* ¶¶ 237–38.

VitalCore contends that Dr. Gore cannot be held responsible for the denial of Mr. Courtney's prescriptions, including the contact lens cleaning solution and 0.9% sodium chloride solution, because "the administration of prescription medications is highly regulated." Def.'s Mot. at 13 (citing *De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013)). VitalCore's reliance on *De'lonta* is misplaced. *De'lonta* does not stand for the proposition that a defendant medical provider may refuse to provide prescription medication if that failure constitutes deficient medical care. Rather, the Fourth Circuit explained that if a prison cannot provide an inmate with the prescribed treatment, it must provide him with a different treatment that "must nevertheless be adequate to address the prisoner's serious medical need." *De'lonta*, 708 F.3d at 526. Accordingly, Mr. Courtney has alleged sufficient facts to establish a medical malpractice claim against VitalCore through Dr. Gore's failure to provide him with adequate medical care.

### 2.    William Stravitz

Mr. Stravitz alleges that Dr. Harris breached his duty of care when he failed to schedule Mr. Stravitz's cataract surgery or otherwise ensure that Mr. Stravitz received follow-up care for his cataracts for nearly a year as of the date the Complaint was filed (and he still has not received the surgery), Compl. ¶¶ 245–46, which caused Mr. Stravitz's cataracts to worsen, *id.* ¶ 247. If VitalCore's employee Dr. Harris had provided Mr. Stravitz with adequate follow-up care and worked to schedule cataract surgery for him, he would not have suffered (and continue to suffer) worsened blindness, physical discomfort, mental anguish, and emotional distress, including concerns that he will lose his job in the law library as a result of his vision loss. *Id.* ¶¶ 159–61. Accordingly, Mr. Stravitz has alleged sufficient facts to establish a negligence claim against Defendant VitalCore.

If, however, this Court is inclined to dismiss Mr. Courtney and Mr. Stravitz's medical malpractice claims, Plaintiffs respectfully request leave to amend.

### C.    Mr. Courtney and Mr. Stravitz do not need to comply with the VMMA's procedural requirements in a federal court action.

Contrary to VitalCore's assertions, Mr. Courtney and Mr. Stravitz do not need to comply with the VMMA's procedural requirements to bring a medical malpractice claim in federal court. VitalCore's argument ignores applicable U.S. Supreme Court and Fourth Circuit precedent and, instead, relies on an inapposite district court opinion that is readily distinguishable from this case. *See* Def.'s Mot. at 10–12.

Under the VMMA, a defendant in a medical malpractice case may request that the plaintiff "provide the defendant with a certification form that affirms that the plaintiff had obtained the necessary certifying expert opinion at the time service was requested or affirms that the plaintiff did not need to obtain a certifying expert witness opinion." Va. Code Ann. § 8.01-20.1. However, the Federal Rules of Civil Procedure govern civil actions in federal court. Fed. R. Civ. P. 1; *see also e.g.*, *Hanna v. Plumer*, 380 U.S. 460, 465 (1965) ("[F]ederal courts are to apply state substantive law and federal procedural law." (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938))); *Felder v. Casey*, 487 U.S. 131, 151 (1988) (holding that *Erie* equally applies in cases involving supplemental jurisdiction).

To avoid wading into the "murky waters" of *Erie* and its complex choice-of-law rules, the Supreme Court has provided a simple two-part test for when a Federal Rule of Civil Procedure conflicts with an applicable state procedural rule. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398–99 (2010). First, a court must decide if a Federal Rule "answer[s] the question in dispute." *Pledger v. Lynch*, 5 F.4th 511, 518–19 (2021) (quoting *Shady Grove*, 559 U.S. at 398). If so, then the court must apply the Federal Rule over the state law,

unless the Rule was adopted *ultra vires*, i.e., outside of Congress's constitutional rulemaking power or the statutory authority provided by the Rules Enabling Act. *Id.* at 520–21 (citing *Shady Grove*, 559 U.S. at 398–99; *Hanna*, 380 U.S. at 471).

The U.S. District Court for the Western District of Virginia applied a *Shady Grove* analysis in *Andes v. United States*, No. 1:19-cv-00005, 2020 WL 3895780 (W.D. Va. July 10, 2020), holding that Va. Code Ann. § 8.01-20.1—the VMMA's expert witness certification requirement—did not apply to a Virginia medical malpractice claim brought in federal court. *Id.* at *7–9. The court reasoned that the VMMA's expert certificate requirement conflicted with Federal Rule 11(b), which "sets forth the implied certifications a party makes when filing a complaint." *Id.* at *8. Those implied certifications include that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *Id.* (quoting Fed. R. Civ. P. 11(b)). By requiring a "written opinion signed by the expert witness," the Virginia law "attempts to add another implied certification." *Id.* Thus, the court concluded that the VMMA's expert certification requirement "does not apply in federal court and cannot serve as a basis for dismissing the plaintiff's Virginia-based medical malpractice claim pursuant to Rule 12." *Id.* at *9.

Citing *Andes*, the Fourth Circuit in *Pledger v. Lynch*, 5 F.4th 511 (4th Cir. 2021), recently held that a similar West Virginia expert certification requirement did not apply to the plaintiff's medical negligence claim brought under the Federal Tort Claims Act ("FTCA"). *Id.* at 519. Subsequently, the Fourth Circuit applied *Pledger* to vacate and remand a case in which the district court had dismissed the plaintiff's FTCA claims because he had failed to comply with

VMMA's expert certification requirement. *See Zupko v. United States*, No. 20-2157, 2022 WL 256343 (4th Cir. Jan. 26, 2022).

VitalCore attempts to differentiate *Pledger* and *Zupko* by arguing that those decisions only apply to claims brought under the FTCA. Def.'s Mot. at 14. VitalCore does not cite to any authority supporting this argument, *see id.*, and Plaintiffs have found none. VitalCore then argues that *Pledger* and *Zupko* may be distinguished because they necessarily involved prisoners housed in federal prisons, which is a threshold component of an FTCA claim. *Id.* This attempted distinction is irrelevant, as the Fourth Circuit's holding in *Pledger* that West Virginia's expert certification did not apply to the plaintiff's medical negligence claims under the FTCA did not rest on the fact that the tort claims were brought under a federal statute. Instead, the Fourth Circuit's holding, applying the *Shady Grove* analysis, rested on the fact that West Virginia's expert certificate requirement conflicted with Federal Rules of Civil Procedure 8, 9, 11, and 12. *Pledger*, 5 F.4th at 519–21.

VitalCore also argues that *Whittaker v. O'Sullivan*, No. 3:21cv474, 2022 WL 3215007 (E.D. Va. Aug. 9, 2022), controls the outcome in this case. Def.'s Mot. at 15. It does not. The plaintiff in *Whittaker* argued (in a footnote) in his Opposition to the medical defendants' motions to dismiss that the VMMA's certification requirement applied only to wrongful death actions, not medical negligence claims. *See, e.g.*, Mem. of L. in Supp. of Pl.'s Opp'n to Defs.' Mot. to Dismiss at 7 n.1, *Whittaker v. O'Sullivan*, No. 3:21cv474 (Jan. 11, 2022), ECF No. 62. The *Whittaker* plaintiff did not cite *Andes*, *Pledger*, *Zupko*, or *Shady Grove* in his briefs. Therefore, the issue of whether the VMMA's expert certification requirement conflicts with the Federal Rules—and the applicable case law holding that it does—was not before the court as it is here.

Thus, because the VMMA's expert witness certification requirement, Va. Code Ann.

§ 8.01-20.1, conflicts with Federal Rules 8, 9, 11, and 12, and these Rules are presumptively

valid, *Pledger*, 5 F.4th at 521, it follows that the Federal Rules—not the VMMA's procedural

requirements—govern Mr. Courtney and Mr. Stravitz's claims against VitalCore in federal court.

*See id.*; *Andes*, 2020 WL 3895780, at *8; *Zupko*, 2022 WL 256343. The VMMA's expert

certification requirement, therefore, cannot form the basis of a motion to dismiss an action in

federal court.

## II.    Mr. Courtney's and Mr. Stravitz's allegations are sufficiently specific to put VitalCore on notice of the claims alleged.

VitalCore contends that Mr. Courtney's and Mr. Stravitz's claims should be dismissed

because they "lump[ ] together Defendants" under each claim. Def.'s Mot. at 18–21. VitalCore

further argues that the form of the Complaint "places Defendant VitalCore at a distinct

disadvantage in this litigation." *Id.* at 19. This places a level of specificity on pleadings that

*Twombly*, *Iqbal*, and the Federal Rules of Civil Procedure stand against.

Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the

claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78

(2009); Fed. R. Civ. P. 8(a)(2). As the Court held in *Twombly* and reinforced in *Iqbal*, the

pleading standard announced by Rule 8 "does not require 'detailed factual allegations,'" but must

be more than mere legal conclusions. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

This pleading standard gives "the defendant fair notice of what the . . . claim is and the grounds

upon which it rests." *Ray*, 948 F.3d at 226 (4th Cir. 2020) (alteration in original) (quoting *Tobey

v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

VitalCore's argument puts a decidedly "hypertechnical" gloss on the notice pleading

standard. *Iqbal*, 556 U.S. at 678. If the standard VitalCore advocates for were the law, a plaintiff

would have to allege that each individual defendant committed a legal wrong in a highly specific way, and that anything less would put a defendant at an unfair disadvantage. Def.'s Mot. at 19. Not only is this standard not the black letter law, but it is contrary to the notice pleading standard, which eschews such detail in favor of a "short and plain statement" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 677; Fed. R. Civ. P. 8(a)(2).

The cases on which VitalCore relies are readily distinguishable. In *Raub v. Bowen*, 960 F. Supp. 2d 602 (E.D. Va. 2013), the Court dismissed a complaint for lack of specificity because it was targeted at "one or more Defendants" including both named and unnamed defendants. *Id.* at 616 (quoting Compl. at ¶ 72). The Court dismissed as to the unnamed defendants but allowed the claim to proceed against the named defendants. *Id.* Here, by contrast, all four of the claims at issue identify the targets of each claim and do not use the imprecise "one or more" formulation. *See generally* Compl. at ¶¶ 324–32, 333–43, 361–74.

VitalCore's reliance on *Marcantonio v. Dudzinski*, 155 F. Supp. 3d 619 (W.D. Va. 2015), is also misplaced. Although the complaint in *Marcantonio* contained some "generic" allegations about collective defendants, the Court nevertheless ruled in the plaintiff's favor, as his complaint "supplement[ed] its generic or ambiguous references with several specific allegations against Defendants by name." *Id.* at 627.

Here, the Complaint names Dr. Harris and Dr. Gore multiple times in connection with their alleged misconduct, thereby supplementing any purported "generic" references so as to put VitalCore on sufficient notice as to the claims against it and its employees. As to Dr. Gore, Mr. Courtney alleges that Dr. Gore "denied and unreasonably delayed" providing him "necessary medical treatment for the medical condition that causes his blindness." Compl. ¶ 5. He further alleges that "Dr. Gore was responsible for the medical care of Greensville prisoners, including

13

Mr. Courtney. These responsibilities include authorizing referral requests for diagnostic studies and specialty care for prisoners at Greensville." *Id.* ¶ 71. Mr. Courtney states that he "continued to have issues receiving regular appointments with the ophthalmologists at VCU who treat his keratoconus, as well as the cleaning solution for his contact lenses and the 0.9% sodium chloride solution that he must apply before inserting his contact lenses" and that Dr. Gore "failed to ensure that he has regular appointments and medical treatment for his eyes, leading to physical pain from his increasingly bulging, swollen eyes, infection, and significant emotional distress." *Id.* ¶¶ 237–38. Mr. Courtney also alleges that Dr. Gore denied him his prescribed contact lens cleaning solution. *Id.* ¶ 236.

Similarly, Mr. Stravitz alleges that "Dr. Harris was responsible for the medical care of Deerfield prisoners, including Mr. Stravitz. These responsibilities include authorizing referral requests for diagnostic studies and specialty care for prisoners at Deerfield." *Id.* ¶ 72. He further alleges that notwithstanding the fact that he submitted multiple requests to schedule his surgery, Dr. Harris still has not scheduled the "medically necessary surgery for his cataracts." *Id.* ¶ 245. Mr. Stravitz also alleges that Dr. Harris has refused to provide him with eyeglasses because "they are not worth getting because Mr. Stravitz is going to get surgery." *Id.* ¶ 246. As a result of these failures to provide medical care, Mr. Stravitz's vision is getting progressively worse, leading to increased discomfort, mental anguish, and emotional distress. *Id.* ¶ 247.

Thus, VitalCore has no colorable argument that it lacked notice as to Mr. Courtney's and Mr. Stravtitz's claims, or that the Complaint lacked specificity.

14

## CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that this Court deny Defendant's Motion to Dismiss.

Respectfully submitted,

Eve L. Hill
Monica R. Basche (*pro hac vice*)
Evan Monod (*pro hac vice*)
Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 2500
Baltimore, Maryland 21202
410.962.1030
ehill@browngold.com
mbasche@browngold.com
emonod@browngold.com

Vishal Agraharkar
Samantha Westrum
American Civil Liberties Union of Virginia
701 E. Franklin Street, Suite 1412
Richmond, Virginia 23219
804.644.8022
vagraharkar@acluva.org
swestrum@acluva.org

Rebecca Herbig
disAbility Law Center of Virginia
1512 Willow Lawn Drive, Suite 100
Richmond, Virginia 23230
804.225.2042
Rebecca.Herbig@dlcv.org

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of April 2023, I filed the foregoing electronically

with the Clerk of the Court using the CM/ECF system, with copies to the following attorneys:

Patrick Burns, Esq.
Gordon Rees Scully Mansukhani, LLP
1101 King Street, Suite 520
Alexandria, VA 22314
(202) 370-8003
Pburns@grsm.com

*Counsel for Defendant VitalCore Health Strategies*

Kenneth T. Roeber, Esq.
Michelle L. Warden, Esq.
Wimbish Gentile McCray & Roeber PLLC
8730 Stony Point Parkway, Suite 201
Richmond, VA 23235
804-655-4830– Telephone
804-980-7819 – Facsimile
kroeber@wgmrlaw.com
mwarden@wgmrlaw.com

*Counsel for Defendant Pranay Gupta, M.D.*

Taylor D. Brewer. Esq.
Moran Reeves & Conn PC
1211 E. Cary Street
Richmond, Virginia 23219
Telephone: (804) 421-6250
Facsimile: (804) 421-6251
tbrewer@moranreevesconn.com

*Counsel for Armor Correctional Health Services, Inc., Vincent Gore, M.D., and Alvin Harris, M.D.*

Laura Maughan, Esq. (VSB No. 87798)
Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, VA 23219
(804) 786-0030
lmaughan@oag.state.va.us

*Counsel for Defendants Barry Marano, Darrell Miller, Harold Clarke, Kevin Punturi, Lakiesha Shaw, Lane Talbott, Larry Edmonds, Nurse Cynthia Lester, Officer D. Smith, Tammy Williams, and the Virginia Department of Corrections*

_____

Eve L. Hill