**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

THE NATIONAL FEDERATION
OF THE BLIND OF VIRGINIA, et al.,

Plaintiffs,

v.                                         Case No. 3:23-cv-127-HEH

VIRGINIA DEPARTMENT OF
CORRECTIONS, et al.,

Defendants.


**PLAINTIFFS' OPPOSITION TO**
**MOTION TO DISMISS ON BEHALF OF DEFENDANTS VIRGINIA DEPT. OF**
**CORRECTIONS, BARRY MARANO, DARRELL MILLER, HAROLD CLARKE,**
**KEVIN PUNTURI, LAKEISHA SHAW, LANE TALBOTT,**
**LARRY EDMONDS, D. SMITH, AND TAMMY WILLIAMS**

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

STATEMENT OF FACTS .................................................................................................... 2

STANDARD OF REVIEW ................................................................................................... 5

ARGUMENT ......................................................................................................................... 6

I.    Plaintiffs' Complaint complies with the Federal Rules of Civil Procedure. ..................... 6

    A.    Plaintiffs' Complaint complies with Rule 8. ............................................................. 6

    B.    Plaintiffs' Complaint complies with Rule 10. ........................................................... 9

II.   The NFB-VA has associational standing to bring this case. ............................................ 11

III.  Plaintiff Nacarlo Courtney states a claim for retaliation under the ADA. ....................... 17

IV.   Plaintiffs adequately allege a claim for gross negligence. ............................................... 21

    A.    Plaintiffs allege claims for gross negligence with sufficient specificity as to put
    Defendants on notice of the claims brought against each Defendant. .................... 21

    B.    Plaintiffs' allegations support a reasonable inference that Defendants exhibited
    complete neglect to Plaintiffs' safety and proximately caused their injuries. ........ 22

        i.    Defendants minimize Plaintiffs' injuries. .................................................... 22

        ii.   Defendants understate their impact on Plaintiffs' injuries. ......................... 23

V.    Plaintiffs have established claims under the Virginians with Disabilities Act. ................. 26

    A.    Each Plaintiff alleges sufficient facts to assert a disability discrimination claim
    against VDOC and its employees. ......................................................................... 26

    B.    Defendants are not entitled to sovereign immunity on Plaintiffs' claim under the
    VDA. ...................................................................................................................... 27

VI.   Plaintiffs have adequately alleged claims under Title II of the ADA. ............................. 31

    A.    Plaintiffs did not violate the rules of joinder, nor can those rules serve as the basis
    for dismissal. ......................................................................................................... 31

    B.    Plaintiffs properly brought ADA claims against the Individual VDOC Defendants
    in their official capacities. ...................................................................................... 35

    C.    Plaintiffs have adequately stated a claim against Defendant VDOC. .................... 37

i.     Plaintiffs need not articulate specific reasonable modifications to VDOC's programs and services at this stage in the litigation. .................................. 38

ii.     Plaintiffs alleged unequal access to written materials and information.... 40

iii.    Plaintiffs alleged unequal access to educational and vocational programs. ....................................................................................................... 43

iv.    Plaintiffs alleged unequal access to work assignments............................ 44

v.     Plaintiffs alleged a failure to provide reasonable modifications.............. 46

vi.    Plaintiffs alleged a failure to provide reasonable modifications in housing. ....................................................................................................... 47

D.    Sovereign immunity does not bar Plaintiffs' Title II claim for damages. ............. 49

i.     Title II is an appropriate response to the long history of constitutional violations that people with disabilities have suffered in detention settings. ....................................................................................................... 51

ii.    Because sovereign immunity is abrogated in the class of prison cases, this Court need not determine whether each Title II claim constitutes a constitutional violation............................................................................. 54

VII.   Plaintiffs adequately allege a Section 504 claim. ........................................................... 57

CONCLUSION .................................................................................................................... 58

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*A Soc'y Without a Name v. Commonwealth of Va.*,
   655 F.3d 342 (4th Cir. 2011) ................................................................... 18, 30

*Albertson's, Inc. v. Kirkingburg*,
   527 U.S. 555 (1999) .................................................................................. 2

*Am. Humanist Assoc. v. Perry*,
   303 F. Supp.3d 421 (E.D.N.C. 2018) ...................................................... 17

*Amos v. Md. Dep't of Pub. Safety and Corr. Servs.*,
   178 F.3d 212 (4th Cir. 1998) .................................................................... 51

*Antrican v. Odom*,
   290 F.3d 178 (4th Cir. 2002) .................................................................... 37

*Arenas v. Georgia Dep't of Corrs.*,
   No. CV416-320, 2018 WL 988099 (S.D. Ga. Feb. 20, 2018) .................. 48

*Armstrong v. Brown*,
   732 F.3d 955 (9th Cir. 2013) ........................................................ 41, 42, 49

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................. 6

*Bacon v. City of Richmond*,
   386 F. Supp.2d 700 (E.D. Va. 2005) ....................................................... 13

*Baird ex rel. Baird v. Rose*,
   192 F.3d 462 (4th Cir. 1999) .................................................................... 36

*Bd. of Trs. v. Four-C-Aire, Inc.*,
   929 F.3d 135 (4th Cir. 2019) .................................................................... 6

*Beall v. Abbott Laboratories*,
   130 F.3d 614 (4th Cir. 1997) .................................................................... 24

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................. 5, 6

*Bolton v. Chesterfield Cnty. Sch. Bd*,
   No. 3:19cv558, 2020 WL5750896 (E.D. Va. Sept. 25, 2020) .......... 10, 11

*Bradick v. Grumman Data Sys. Corp.*,
   254 Va. 156 (1997) .................................................................................. 30

*Burgess v. Bowen*,
   466 F. App'x 272 (4th Cir. 2012) ............................................................ 18

*Caperton v. Beatrice Pocahontas Coal Co.*,
   585 F.2d 683 (4th Cir. 1978) ............................................................................ 33

*Carmine v. Poffenbarger*,
   154 F. Supp. 3d 309 (E.D. Va. 2015) ............................................................... 33

*Childress v. Clement*,
   5 F. Supp. 2d 384 (E.D. Va. 1998) .................................................................. 30

*City of Bourne v. Flores*,
   521 U.S. 507 (1997) ................................................................................... 50, 55

*City of Cleburne v. Cleburne Living Ctr.*,
   473 U.S. 432 (1985) .......................................................................................... 56

*Clay v. Campbell Cnty. Sheriff's Off.*,
   No. 6:12-CV-00062, 2013 WL 3245153 (W.D. Va. June 26, 2013) ................. 30

*Commonwealth v. Giddens*,
   816 S.E.2d 290 (Va. 2018) ............................................................................... 22

*Courthouse News Serv. v. Schaefer*,
   2 F.4th 318 (4th Cir. 2021) .................................................................... 31, 33, 34

*Cowan v. Hospice Support Care, Inc.*,
   603 S.E.2d 916 (2004) ..................................................................................... 22

*Cunningham v. Gen. Dynamics Info. Tech., Inc.*,
   888 F.3d 640 (4th Cir. 2018) .......................................................................... 27

*Edwards v. City of Goldsboro*,
   178 F.3d 231 (4th Cir. 1999) ................................................................. 6, 39, 40

*Equal Rts. Ctr. v. Abercrombie & Fitch Co.*,
   767 F. Supp. 2d 510 (D. Md. 2010) ........................................................... 13, 16

*Estelle v. Gamble*,
   429 U.S. 97 (1976) ........................................................................................... 52

*Evans v. B.F. Perkins Co.*,
   166 F.3d 642 (4th Cir. 1999) .......................................................................... 27

*Evans v. Evans*,
   695 S.E.2d 173 (Va. 2010) ............................................................................... 22

*Ex parte Young*,
   209 U.S. 123 (1908) ......................................................................................... 37

*Fauconier v. Clarke*,
   966 F.3d 265 (4th Cir. 2020) ..................................................................... 35, 36

iv

*Foster v. Univ. of Md.-Eastern Shore,*
    787 F.3d 243 (4th Cir. 2015) ............................................................... 18, 19

*Frazier v. City of Norfolk,*
    362 S.E.2d 688 (Va. 1987) ........................................................................ 22

*Gagnon v. Scarpelli,*
    411 U.S. 778 (1973) .................................................................................. 52

*Gary v. Va. Dep't of Elections,*
    No. 1:20-CV-860, 2020 WL 6589326 (E.D. Va. Aug. 28, 2020) ............. 31

*Greenholtz v. Inmates of Neb. Penal & Corr. Complex,*
    442 U.S. 1 (1979) ..................................................................................... 52

*Hall v. DIRECTV, LLC,*
    846 F.3d 757 (4th Cir. 2017) ..................................................................... 6

*Halpern v. Wake Forest Univ. Health Scis.,*
    669 F.3d 454 (4th Cir. 2012) ............................................... 38, 39, 46, 57

*Hammonds v. Builders First Source-Atl. Grp., Inc.,*
    No. CIV.A. 3:01CV00023, 2002 WL 535071 (W.D. Va. Mar. 28, 2002) ............. 30

*Heiko v. Colombo Sav. Bank, F.S.B.,*
    434 F.3d 249 (4th Cir. 2006) ..................................................................... 2

*Hicks v. Doyle,*
    No. 1:20cv552, 2023 WL 2385613 (E.D. Va. Mar. 6, 2023) .................... 35

*Hill v. Jamestown-Yorktown Found.,*
    No. 4:18cv137, 2019 WL 3084242 (E.D. Va. July 14, 2019) ............. 10, 11

*Hope v. Pelzer,*
    536 U.S. 730 (2002) .................................................................................. 52

*Hosp. Council of W. Pa. v. City of Pittsburgh,*
    949 F.2d 83 (3d Cir. 1991) ................................................................. 15, 16

*Hudson v. McMillian,*
    503 U.S. 1 (1992) ..................................................................................... 52

*Hudson v. Palmer,*
    468 U.S. 517 (1984) .................................................................................. 52

*Hunt v. Wash. State Apple Advertising Comm'n,*
    432 U.S. 333 (1977) ........................................................................... *passim*

*Hutto v. S.C. Ret. Sys.,*
    773 F.3d 536 (4th Cir. 2014) .................................................................... 28

*Intl. Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*,
659 F.2d 1259 (4th Cir. 1981) ................................................................................ 15

*J.D. by Doherty v. Colonial Williamsburg Found.*,
925 F.3d 663 (4th Cir. 2019) .................................................................................. 29

*Jefferson v. School Board of City of Norfolk*,
452 F. App'x 356 (4th Cir. 2011) ............................................................................ 14

*Jenkins v. Home Ins. Co.*,
635 F.2d 310 (4th Cir.1980) ................................................................................... 24

*Johnson v. Avery*,
393 U.S. 483 (1969) ................................................................................................ 51

*Johnson v. Martin*,
No. 2:00-CV-75, 1:01-CV-515, 2005 WL 3312566 (W.D. Mich. Dec. 7, 2005) ................... 17

*Johnson v. Neiman*,
504 F. App'x 543 (8th Cir. 2013) ............................................................................ 52

*Jones v. Sternheimer*,
387 F. App'x 366 (4th Cir. 2010) ............................................................................ 36

*Kimel v. Florida Bd. of Regents*,
528 U.S. 62 (2000) .................................................................................................. 49

*King v. Rubenstein*,
825 F.3d 206 (4th Cir. 2016) ............................................................................... 6, 39

*King v. Rumsfeld*,
328 F.3d 145 (4th Cir. 2003) .................................................................................. 19

*Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne LLC*,
No. 1:11-CV-872 AJT/TCB, 2012 WL 2462301 (E.D. Va. June 27, 2012) .......................... 13

*Lee-Thomas v. Prince George's Cnty. Pub. Sch.*,
666 F.3d 244 (4th Cir. 2012) .................................................................................. 28

*M.K. v. Tenet*,
216 F.R.D. 133 (D.D.C. 2002) ................................................................................ 32

*Malpica v. Kincaid*,
No. 1:21-CV-417, 2022 WL 503966 (E.D. Va. Feb. 18, 2022) ............................................ 26

*McCoy v. Tex. Dep't of Crim. Justice*,
No. C-05-370, 2006 WL 2331055 (S.D. Tex. Aug. 9, 2006) ................................................ 47

*Md. Highways Contractors Ass'n, Inc. v. Maryland*,
933 F.2d 1246 (4th Cir. 1991) ................................................................................ 12

*Mitchell v. Virginia*,
   No. 3:22-cv-783, 2023 WL 174957 (E.D. Va. Jan. 12, 2023)........................................... 31, 34

*Mueller v. Henrico Cnty. Sch. Bd.*,
   No. 3:18cv848, 2020 WL 5414347 (E.D. Va. Sept. 9, 2020)............................................ 10, 11

*N.Y. State Club Ass'n, Inc. v. City of New York*,
   487 U.S. 1 (1988)........................................................................................................... 15, 16

*Nat'l Fed'n of the Blind v. Lamone*,
   813 F.3d 494 (4th Cir. 2016) ............................................................... 37, 38, 44, 46

*Nat'l Fed'n. of the Blind v. Lamone*,
   2014 WL 4388342 (D. Md. Sept. 4, 2014), *aff'd*, 813 F.3d 494 (4th Cir. 2016) .................... 38

*Nat'l. Fed'n of the Blind, Inc v. Wal-Mart Assocs., Inc.*,
   566 F. Supp.3d 383 (D. Md. 2021) ................................................................................. 13

*Nevada Dep't of Human Res. v. Hibbs*,
   538 U.S. 721 (2003)........................................................................................................ 49

*North Carolina v. McGuirt*,
   114 F. App'x. 555 (4th Cir. 2004) ............................................................................. 7, 9, 11

*Ofori v. Clarke*,
   No. 7:18-cv-00587, 2019 WL 4344289 (W.D. Va. Sept. 12, 2019)........................................ 33

*Pandazides v. Va. Bd. of Educ.*,
   13 F.3d 823 (4th Cir. 1994)........................................................................................... 54

*Paulone v. City of Frederick*,
   787 F. Supp.2d 360 (D. Md. 2011) .................................................................................. 38

*Pell v. Procunier*,
   417 U.S. 817 (1974)....................................................................................................... 52

*Pennell v. City of San Jose*,
   485 U.S. 1 (1988)........................................................................................................... 13

*Pharm. Care Mgmt. Ass'n v. Rowe*,
   429 F.2d 294 (1st Cir. 2004)........................................................................................... 15

*Pierce v. Cnty. of Orange*,
   526 F.3d 1190 (9th Cir. 2008) ................................................................................ 41, 42, 49

*Prison Justice League v. Bailey*,
   697 F. App'x 362 (5th Cir. 2017) .................................................................................. 15

*Ray v. Roane*,
   948 F.3d 222 (4th Cir. 2020) ..................................................................................... 6, 9

*Retail Indus. Leaders Ass'n v. Fielder*,
    475 F.3d 180 (4th Cir. 2007) ............................................................ 15

*Retired Chicago Police Ass'n v. City of Chicago*,
    7 F.3d 584 (7th Cir. 1993) ........................................................... 15, 16

*Reynolds v. Am. Nat'l Red Cross*,
    701 F. 3d 143 (4th Cir. 2012) ............................................................. 18

*Richardson v. Clarke*,
    No. 3:18cv23, 2020 WL 4758361 (E.D. Va. Aug. 17, 2020) ................... 28, 29, 39

*Semenova v. Md. Transit Admin.*,
    845 F.3d 564 (4th Cir. 2017) ......................................................... 30, 43

*Seremeth v. Bd. of Cnty. Comm'rs of Frederick Cnty.*,
    673 F.3d 333 (4th Cir. 2012) ...................................................... 38, 41, 43

*Shepard v. Irving*,
    77 F. App'x. 615 (4th Cir. 2003) ......................................................... 36

*Shonk v. Fountain Power Boats*,
    338 F. App'x. 282 (4th Cir. 2009) ....................................................... 10

*Silva v. Bowie State Univ.*,
    172 F. App'x 476 (4th Cir. 2006) ........................................................ 20

*South Carolina v. Katzenbach*,
    383 U.S. 301 (1966) ................................................................... 54

*Spencer v. Earley*,
    278 F. App'x. 254 (4th Cir. 2008) ....................................................... 48

*Strothers v. City of Laurel*,
    895 F.3d 317 (4th Cir. 2018) ............................................................ 18

*SunTrust Mortg., Inc.v. First Res. Mortg. Servs. Corp.*,
    No. 3:12CV162, 2012 WL 7062086 (E.D. Va. Sept. 11, 2012) ............................ 6, 7

*Taliaferro v. N.C. State Bd. of Elections*,
    489 F. Supp. 3d 433 (E.D.N.C. 2020) ...................................................... 2

*Tennessee v. Lane*,
    541 U.S. 509 (2004) ............................................................... *passim*

*Tobey v. Jones*,
    706 F.3d 379 (4th Cir. 2013) ............................................................. 6

*Turner v. Safley*,
    482 U.S. 78 (1987) ..................................................................... 52

*Tyndall v. Nat'l Educ. Centers, Inc. of California*,
  31 F.3d 209 (4th Cir. 1994) ........................................................................ 29, 30

*UAW v. Brock*,
  477 U.S. 274 (1986) ............................................................................................ 13

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*,
  517 U.S. 544 (1996) ............................................................................................ 12

*United States v. Georgia*,
  546 U.S. 151 (2006) ...................................................................................... 51, 55

*Verizon Md. Inc. v. Pub. Serv. Comm'n*,
  535 U.S. 635 (2002) ............................................................................................ 37

*Virginia Hosp. & Healthcare Assoc. v. Roberts*,
  No. 3:20-cv-587-HEH, 2023 WL 3132005 (E. D. Va. Apr. 27, 2023) ................... 13

*Vitek v. Jones*,
  445 U.S. 480 (1980) ............................................................................................ 52

*Warth v. Seldin*,
  422 U.S. 490 (1975) ..................................................................................... *passim*

*Washington v. Harper*,
  494 U.S. 210 (1990) ............................................................................................ 52

*Williams v. Big Picture Loans, LLC*,
  929 F.3d 170 (4th Cir. 2019) .............................................................................. 28

*Williams v. Carvajal*,
  63 F. 4th 279 (4th Cir. 2023) ............................................................................. 36

*Williams v. Kincaid*,
  45 F.4th 759 (4th Cir. 2022) ......................................................................... 23, 25

*Wimer v. Whitlock*,
  No. 3:19CV0001, 2019 WL 257984 (W.D. Va. Jan. 17, 2019) .............................. 36

*Wolff v. McDonnell*,
  418 U.S. 539 (1974) ............................................................................................ 52

*Wolsky v. Med. College of Hampton Rds*,
  1 F.3d 222 (4th Cir. 1993) .................................................................................. 30

*Wright v. N.Y. State Dep't of Corr.*,
  242 F. Supp. 3d 126 (N.D.N.Y. 2017) ................................................................ 41

*Wright v. N.Y. State Dep't of Corr.*,
  831 F.3d 64 (2nd Cir. 2016) ..................................................................... 41, 42, 49

*Young v. Barthlow*,
No. RWT-07-662, 2007 WL 5253983 (D. Md. Nov. 7, 2007) ...................................... 36

*Young v. Harper,*
520 U.S. 143 (1997) ..................................................................................... 52

*Younger v. Gilmore*,
404 U.S. 15 (1971) ...................................................................................... 51

*Zemedagegehu v. Arthur*,
No. 1:15CV57 JCC/MSN, 2015 WL 1930539 (E.D. Va. Apr. 28, 2015) ........................... 53

**Statutes**

18 U.S.C. § 3626 ......................................................................................... 16

29 U.S.C. § 794 ............................................................................................. 3

42 U.S.C. § 12131 .................................................................................. 3, 46

42 U.S.C. § 12132 ....................................................................................... 53

42 U.S.C. § 12202 ....................................................................................... 49

42 U.S.C. § 12205 ....................................................................................... 30

42 U.S.C. § 1983 ........................................................................................... 4

Va. Code Ann. § 2.2-2012 ......................................................................... 4, 5

Va. Code Ann. § 2.2-3500 ............................................................................. 4

Va. Code Ann. § 51.5-40 .................................................................... 3, 26, 28

Va. Code Ann. § 51.5-43 .............................................................................. 31

Va. Code Ann. § 51.5-46 ....................................................................... 28, 29

Va. Code Ann. § 8.01-243.2 ........................................................................ 24

**Rules**

Fed. R. Civ. P. 10 ......................................................................................... 9

Fed. R. Civ. P. 20 ....................................................................................... 31

Fed. R. Civ. P. 21 ....................................................................................... 33

Fed. R. Civ. P. 8 ........................................................................................... 6

**Regulations**

28 C.F.R. § 35.104 ...................................................................................... 47

28 C.F.R. § 35.130 ................................................................................................ 46, 53

28 C.F.R. § 35.139 ...................................................................................................... 53

28 C.F.R. § 35.160 ...................................................................................................... 40

28 C.F.R. § 35.164 ...................................................................................................... 53

## INTRODUCTION

Blind prisoners in the custody of the Virginia Department of Corrections ("VDOC") are not receiving the accommodations or medical care they are entitled to under federal and state law. As a result of VDOC's failures, Plaintiffs do not have what they need to live safely and independently while incarcerated. Plaintiffs—seven blind prisoners and a nonprofit membership organization—filed a Complaint that pleads ten claims for relief against VDOC, its employees, and medical care providers arising from incidents of disability discrimination, denials of medical care, and gross negligence.

The Complaint adheres to the necessary procedural and substantive requirements at this stage of litigation. Plaintiffs' Complaint complies with Rules 8 and 10 of the Federal Rules of Civil Procedure, despite Defendants' pedantic interpretation of the Rules. The National Federation of the Blind of Virginia seeks injunctive relief that mirrors the relief the individual Plaintiffs request, and, therefore, it has associational standing to bring this case. Plaintiff Nacarlo Courtney sufficiently alleges a claim for retaliation under the ADA. Plaintiffs do not violate the rules of joinder, which cannot serve as the basis for dismissal. Plaintiffs properly bring Title II claims against the individual Defendants in their official capacities, and adequately state a Title II claim against the Virginia Department of Corrections. Sovereign immunity does not bar Plaintiffs' Title II claim for damages. Additionally, all Plaintiffs sufficiently allege claims under Section 504 of the Rehabilitation Act, the Virginians with Disabilities Act, and common law gross negligence. Accordingly, Plaintiffs request that this Court deny Defendants' Motion to Dismiss.

## STATEMENT OF FACTS

Plaintiffs are seven blind men who, at all relevant times, have been incarcerated within VDOC, and one non-profit, membership organization, the National Federation of the Blind of Virginia ("NFB-VA"). Compl. ¶¶ 1, 50, ECF No. 1. Four of the Plaintiffs, Michael McCann, Kevin Muhammad Shabazz, Patrick Shaw, and William Stravitz, are housed at Deerfield Correctional Center ("Deerfield") and who are members of the NFB-VA. *Id.* ¶¶ 23, 34, 39, 45. Two of the Plaintiffs, William Hajacos and Wilbert Rogers, are currently housed at Greensville Correctional Center ("Greensville"). At all relevant times and until his recent release, Plaintiff Nacarlo Courtney was also housed at Greensville. *Id.* ¶¶ 10–11, 17, 28. Each individual Plaintiff has a vision impairment that substantially limits the major life activity of seeing. *Id.* ¶¶ 1, n.1, 13, 19, 24, 30, 35, 41, 47.[1] Plaintiff NFB-VA's members include blind people of all ages (including four of the Individual Plaintiffs), their families, and friends. *Id.* ¶ 51. NFB-VA's purpose includes ensuring that blind Virginians have full and equal access to all the services, programs, and activities of the State. *Id.* ¶¶ 50–52.

Plaintiffs sue VDOC; VDOC Director, Harold Clarke; VDOC ADA Coordinator, Barry Marano; Darrell Miller, Warden of Deerfield; Kevin Punturi, Acting Warden of Greensville; Lakeisha Shaw, Deerfield's ADA Coordinator; and Lane Talbott, Greensville's ADA Coordinator (collectively, "VDOC Defendants"), as well as Larry Edmonds, former Warden of

---

[1] Defendants appear to make light of Plaintiffs' disabilities, stating that at least five of the Plaintiffs "can see." Defs.' Mot. ¶ 4. To the extent that Defendants call into question the severity of Plaintiffs' visual impairments—and therefore, Defendants' responsibilities to accommodate them—Plaintiffs direct this Court, and the Defendants, to ample case law which emphasizes that a person need not be totally blind to be considered a person with a disability under the ADA, Rehabilitation Act, and VDA. *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567 (1999); *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 256 (4th Cir. 2006); *Taliaferro v. N.C. State Bd. of Elections*, 489 F. Supp. 3d 433, 437 (E.D.N.C. 2020).

Greensville; Tammy Williams, former Warden of Deerfield; and Officer Smith, a corrections officer at Greensville, for denying Plaintiffs equal access to services, programs, and activities for which they are qualified and to which sighted prisoners have access. *Id.* ¶ 2. Defendants' discriminatory policies and practices have left Plaintiffs reliant on sighted prisoners to read and write, access the grievance procedure, and navigate their environments; have excluded them from jobs and educational opportunities—some of which would reduce their prison terms; have led to their placement in either overly restrictive or unsafe housing arrangements; and have denied them access to vital medical care. *Id.* ¶¶ 3–5.

Plaintiffs have brought suit against VDOC and the other above-named Defendants for violating several of Plaintiffs' federal and state rights:

(1) Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*: a claim for discriminatory treatment on the basis of disability against VDOC and VDOC Defendants, in their official capacities, *id.* ¶¶ 260–70;

(2) Title II of the ADA, 42 U.S.C. § 12131 *et seq.*: a claim for retaliating against Mr. Courtney for engaging in a protected activity against VDOC and Defendants Clarke, Marano, Talbott, and Punturi, in their official capacities, *id.* ¶¶ 271–75;

(3) Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794: a claim for discriminatory treatment on the basis of disability against VDOC and VDOC Defendants, in their official capacities, *id.* ¶¶ 276–87;

(4) the Virginians with Disabilities Act ("VDA"), Va. Code Ann. § 51.5-40: a claim for discriminatory treatment on the basis of disability against VDOC and VDOC Defendants, in their official capacities, *id.* ¶¶ 288–98;

(5) a breach of ministerial duty, Va. Code Ann. § 2.2-2012: a claim for failing to procure accessible technology in compliance with Section 508 of the Rehabilitation Act of 1973 ("Section 508"), *id.* ¶¶ 299–308;

(6) the Information Technology Accessibility Act ("ITAA"), Va. Code Ann. § 2.2-3500 *et seq.*: a claim for failing to procure technology that is accessible to blind and visually impaired people, *id.* ¶¶ 309–23;

(7) Section 1983, 42 U.S.C. § 1983: a claim against Defendants VDOC, Edmonds, Punturi, Marano, and Talbott for their deliberate indifference to Plaintiff Courtney's medical needs, in violation of the Eighth Amendment, *id.* ¶¶ 324–32;[2]

(8) Section 1983, 42 U.S.C. § 1983: a claim against Defendants VDOC, Miller, and Williams for their deliberate indifference to Plaintiff Stravitz's medical needs, in violation of the Eighth Amendment, *id.* ¶¶ 333–43;[3]

(9) Section 1983, 42 U.S.C. § 1983: a claim against Defendants Punturi, Talbott, and Smith, in their individual capacities, for violating Plaintiff Courtney's right to procedural due process, in violation of the Fourteenth Amendment, *id.* ¶¶ 344–52;

(10) gross negligence[4] against VDOC Defendants and Defendants Edmonds, Williams, and Smith, in their individual capacities, *id.* ¶¶ 353–60, regarding Defendants' willful

---

[2] Mr. Courtney also includes Armor Correctional Health Services, Inc. ("Armor"), VitalCore Health Strategies ("VitalCore"), and Vincent Gore, M.D. as Defendants in this claim.

[3] Mr. Stravitz also includes Armor, VitalCore, Alvin Harris, M.D., and Pranay Gupta, M.D. as Defendants in this claim.

[4] Mr. Courtney and Mr. Stravitz have also brought claims for negligence against Defendants who are not VDOC employees in the Eleventh and Twelfth Claims of the Complaint. Because those Defendants are not subject to this Motion to Dismiss, Plaintiffs do not discuss those claims here.

and conscious disregard for the federal rights, health, and safety of the Individual

Plaintiffs, putting these vulnerable prisoners at an obvious risk of harm.[5]

Because of Defendants' discriminatory practices, Plaintiffs have suffered physical

violence, sexual abuse, and theft, and have been placed at greater risk of becoming victims of

such conduct. *Id.* ¶¶ 186–89, 205, 212–14. They have lost money, opportunities to earn higher

wages and credits off their sentences, and the benefits of educational opportunities. *Id.* ¶¶ 128–

32, 137–42, 153–54, 156–58, 162–63, 181, 191–92, 246. Because of their blindness, they are at

greater risk of discipline and have been unable to access the grievance procedure. *Id.* ¶¶ 124–26,

182, 187, 192. And critically, they have irreparably lost their eyesight without the medical

attention they have required. *Id.* ¶¶ 171–80, 191, 193, 198–99, 220–25, 232–33, 236–38, 240–45,

247.

## STANDARD OF REVIEW

A party moving to dismiss a complaint pursuant to Rule 12(b)(6) bears the burden of

demonstrating that the plaintiff's claims are legally insufficient, and that the plaintiff has stated

no claim for relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007). A claim is plausible if the complaint contains "factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

---

[5] Plaintiffs agree to dismiss their Fifth Claim under Va. Code Ann. § 2.2-2012 and their Sixth
Claim under the ITAA. Plaintiff Nacarlo Courtney agrees to dismiss Plaintiff's Seventh Claim
under the Eighth Amendment against VDOC, Edmonds, Punturi, Marano, and Talbott, but Mr.
Courtney maintains his Eighth Amendment claims against Armor, VitalCore, and Dr. Gore. Mr.
Stravitz also agrees to dismiss his claim under the Eighth Amendment against VDOC, Williams,
and Miller, but he maintains his claims against all other Defendants named in Plaintiff's Eighth
Claim. Plaintiffs also agree to dismiss their Ninth Claim under the Fourteenth Amendment.
Regarding their Tenth Claim, Plaintiffs agree to dismiss their gross negligence claim against
Officer Smith. Plaintiff Kevin Shabazz also agrees to dismiss his gross negligence claim against
Defendants.

*Iqbal*, 556 U.S. 662, 678 (2009). "A complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (alteration in original) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)). In considering a Rule 12(b)(6) motion, the court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). The court does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (citation omitted). The court must also "construe the complaint 'liberally so as to do substantial justice.'" *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Four-C-Aire, Inc.*, 929 F.3d 135, 152 (4th Cir. 2019) (quoting *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017)).

## ARGUMENT

### I.    Plaintiffs' Complaint complies with the Federal Rules of Civil Procedure.

#### A.    Plaintiffs' Complaint complies with Rule 8.

Federal Rule of Civil Procedure 8 requires a "short and plain statement showing that the pleader is entitled to relief" and a demand for the relief sought. Fed. R. Civ. P. 8(a)(2)–(3). The Rule 8 pleading standard "does not require 'detailed factual allegations'" but must be more than mere legal conclusions. *Iqbal*, 556 U.S. at 677–78 (quoting *Twombly*, 550 U.S. at 555). This standard is designed to give "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Ray*, 948 F.3d at 226 (alteration in original) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

A complaint complies with Rule 8 when it "articulate[s] claims with sufficient clarity to allow the defendant to frame a responsive pleading." *SunTrust Mortg., Inc. v. First Residential Mortg. Servs. Corp.*, No. 3:12CV162, 2012 WL 7062086, at *7 (E.D. Va. Sept. 11, 2012)

(citations omitted). In *SunTrust*, the court denied the defendant's motion to dismiss under Rule 8(a)(2) because the plaintiff "clearly present[ed] the facts and allegations as related to the four individual loans and then provide[d] a short and plain statement of [the plaintiff]'s entitlement to relief." *Id.* Plaintiffs' Complaint is similar to the complaint in *SunTrust* in its organizational structure and, therefore, the Court should similarly conclude that it complies with Rule 8 because it presents the facts and relates them to each claim asserted in the prayer for relief. *See id.* Accordingly, Plaintiffs' Complaint complies with Rule 8 of the Federal Rules of Civil Procedure.

Defendants claim that the Complaint should be dismissed because it is neither plain nor short. Mem. in Supp. of Defs.' Mot. to Dismiss ["Defs.' Mot."] at 12, ECF No. 58. Their pedantic view of Rule 8 fails as a matter of both law and fact. Defendants primarily rely on *North Carolina v. McGuirt*, 114 F. App'x. 555, 558 (4th Cir. 2004) (per curiam), which is readily distinguishable. *McGuirt*, an unpublished opinion, dealt with a complaint that was amended twice and was eventually slimmed down from 211 counts over 200 pages to contain 113 individual counts spanning 79 pages. *Id.* at 557–58. In affirming the dismissal of the complaint under Rule 8(a), the court cited the amended complaint's "needless detail" like the plaintiff's allegation that the defendants used a "smart-alecky tone of voice." *Id.* The complaint also had an organizational structure that was "difficult to understand" and "did not reveal" which facts were related to which claims. *Id.* at 559–60. Plaintiffs' Complaint suffers from none of these deficiencies.

Plaintiffs, by contrast, presented the facts with easy-to-understand headings and subheadings that relate to the short and plain statement for relief at the end of the Complaint. In the Statement of Facts, Section A indicates that blind prisoners lack access to written materials and information, in violation of Title II of the ADA. This relates to the claim that the Defendants

failed to provide access to programs, effective communication, appropriate auxiliary aids and reasonable accommodations. Compl. ¶¶ 77–132, 263(a), (f)–(h), 279(a)–(b), (d)–(e). This also forms part of the basis of Plaintiffs' gross negligence claim, as well as the basis for Plaintiffs' claim under the VDA, *id.* ¶¶ 288–98, 355–56, and VITAA, *id.* ¶¶ 78–9, 299–323.

Section B details how blind prisoners lack access to educational and vocational programs, which relates to Plaintiffs' claims that Defendants are not equally "affording the Individual Plaintiffs and other blind prisoners opportunities to participate in or benefit from aids, benefits, or services." *Id.* ¶¶ 133–42, 263(a)–(c), 279(b). Section C details how blind prisoners lack equal access to work assignments, and Plaintiffs allege that this practice amounts to the use of criteria and methods of administration that discriminate on the basis of disability and defeat the objectives of VDOC programs. *Id.* ¶¶ 143–63, 263(d)–(e), 279(c).

Likewise, Section D details the Defendants' failure to provide reasonable accommodations, which connects to the Title II and Section 504 claims presented in the Claims section related to reasonable accommodations. This section also delineates each Plaintiff's difficulties in obtaining reasonable accommodations. *Id.* ¶¶ 164–199, 263(f), (h)–(i), 279(d)–(e). Section E relates to housing accommodations and the accessibility barriers that Plaintiffs encounter in VDOC custody. This again links to Plaintiffs' claims about VDOC's failure to reasonably accommodate them. *Id.* ¶¶ 200–215, 263(f)–(h) 279(d)–(e). Section F details the denial of medical treatment to Mr. Courtney and Mr. Stravitz and delineates each Plaintiff's facts to match with the Eighth Amendment and gross negligence claims below. *Id.* ¶¶ 216–247, 324–43, 355. Finally, Section G details the retaliation against Mr. Courtney, which forms the basis of his accompanying ADA and Fourteenth Amendment claims. *Id.* ¶¶ 248–59, 271–75, 344–52.

This level of organization goes far beyond the "difficult to understand" complaint at issue in *McGuirt*, does not contain unnecessary details, and adequately puts Defendants on notice of the claims against them and the facts underlying those claims. *See McGuirt*, 114 F. App'x at 558, *Ray*, 948 F.3d at 226.

Nevertheless, Defendants argue that Plaintiffs' Complaint fails under Rule 8(a). They highlight certain facts as "needless," when they are, in fact, integral to the claims alleged. For example, Defendants cite VDOC's failure to make orientation, educational, and vocational materials accessible as "needless." Defs.' Mot. at 15 (citing Compl. ¶ 82). Contrary to Defendants' characterization, this statement lends factual support to Plaintiffs' claims regarding accessibility and effective communication and begins a section of the Complaint wherein those claims are alleged in greater detail. *See* Compl. ¶¶ 82–132, 263(a), (f)–(h), 279(a)–(b). Likewise, the sexual harassment Mr. McCann suffered in the shower speaks to the need for VDOC to better accommodate blind prisoners who are put at risk of harassment and physical harm because they cannot see what is around them. *Id.* ¶¶ 204–05. This relates to Plaintiffs' ADA and Section 504 claims against Defendants, specifically their failure to provide reasonable accommodations and appropriate auxiliary aids to ensure they have meaningful access to VDOC's programs, *i.e.*, safe housing. *Id.* ¶¶ 205, 263(f), (h), 279(d)–(e). Far from being needless, these facts provide the necessary predicates to support Plaintiffs' claims. *See id.* ¶¶ 205, 263(f), (h), 279(d)–(e).

**B.    Plaintiffs' Complaint complies with Rule 10.**

Plaintiffs' Complaint also complies with Rule 10. Rule 10 provides that "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." Fed. R. Civ. P. 10(b). On the rare instances where it found a complaint wanting under Rule 10(b), this Court has typically looked to the overall organizational structure of a complaint and whether the claims have been alleged as counts. *See,*

*e.g.*, *Bolton v. Chesterfield Cnty. Sch. Bd*, No. 3:19cv558, 2020 WL5750896, at *3 n.8 (E.D. Va. Sept. 25, 2020) (dismissing complaint under Rule 10(b) because "the facts list a number of events, accusations, and people without any organizational scheme or structure"); *Mueller v. Henrico Cnty. Sch. Bd.*, No. 3:18cv848, 2020 WL 5414347, at *4 (E.D. Va. Sept. 9, 2020) (dismissing complaint for failing to "demarcate *any* claims as Counts"); *Hill v. Jamestown-Yorktown Found.*, No. 4:18cv137, 2019 WL 3084242, at *4 (E.D. Va. July 14, 2019) (dismissing under Rule 10(b) for lack of numbered paragraphs).

Defendants argue that Plaintiffs violated Rule 10 by failing to assert separate counts based on separate occurrences. Defs.' Mot. at 16. Defendants attempt to graft a heightened pleading standard onto the Federal Rules of Civil Procedure. Defendants rely on *Shonk v. Fountain Power Boats*, 338 F. App'x. 282, 287 (4th Cir. 2009), which is inapposite. In *Shonk*, the Fourth Circuit affirmed the district court's dismissal of the plaintiff's warranty claims against various boat and boat part manufacturers because the claims should have been alleged in separate counts. *Id.* at 287. Because each claim the *Shonk* plaintiff alleged was founded on a "separate transaction or occurrence" related to each individual defendant's role in manufacturing either a part of the boat or the boat as a whole, the plaintiff had to allege them as separate counts. *Id.*

Here, by contrast, Plaintiffs do not allege discrete discriminatory actions that give rise to a "separate transaction or occurrence." *See id.* Rather, Plaintiffs allege ongoing and systemic conduct as violations of constitutional, federal statutory, state statutory, and common law. *See generally* Compl. ¶¶ 76–360. As Defendants' violations are persistent and ongoing, it would be impossible and redundant for each Plaintiff to allege each violation as a separate transaction or occurrence such that Rule 10(b) would even apply, as that part of the Rule only applies to claims "founded on a separate transaction or occurrence." Fed. R. Civ. P. 10(b).

Even if Plaintiffs' claims were founded on separate transactions or occurrences, it is difficult to see how breaking each claim into separate counts for each Defendant would "promote clarity" as Rule 10(b) demands. *Id.* Plaintiffs bring this case against sixteen Defendants. Requiring a separate count for each Defendant would septuple the number of counts for just the Title II claim, as that was alleged collectively against seven individuals/entities. *See* Compl. at 2 (defining "VDOC Defendants"), ¶¶ 260–270. This would invariably lead to the overlong, repetitive pleading that the court found wanting in *McGuirt*. *See McGuirt*, 114 F. App'x. at 559–60. Defendants already complain, without merit, that Plaintiffs' Complaint is overly complex. Yet they would seek to make it more complex by requiring individualized pleading.

Moreover, Plaintiffs' Complaint suffers from none of the organizational defects that typically mark complaints for dismissal on Rule 10(b) grounds. Unlike the complaints at issue in *Mueller* and *Hill*, Plaintiffs' Complaint is presented in numbered paragraphs and organizes each claim as a Count with a subheading indicating which Defendants are liable under that Count. *See* Compl. ¶¶ 288–374; *Mueller*, 2020 WL 5414347, at *4; *Hill*, 2019 WL 3084242, at *4. As explained above, Plaintiffs' use of subheadings gives their Complaint an "organizational scheme or structure" that was lacking in *Bolton*. *See supra* Sec. I.A; *Bolton*, 2020 WL5750896, at *3 n.8.

Thus, because Plaintiffs' complaint is sufficiently well-organized and does not rely on separate transactions or occurrences, and because it would not aid clarity to allege separate counts against each Defendant, the Court should deny Defendants' Motion. If this Court is inclined to dismiss the Complaint under Rule 8 or Rule 10, Plaintiffs respectfully request leave to amend.

## II. The NFB-VA has associational standing to bring this case.

An organization can demonstrate standing in two ways. First, it can assert organizational standing "to seek judicial relief from injury to itself and to vindicate whatever rights and

immunities the association itself may enjoy." *Md. Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246, 1250 (4th Cir. 1991) (quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975)). Second, an organization can assert associational standing as "the representative of its members who have been harmed." *Id.* (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977)).

An organization has associational standing to bring suit on behalf its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343. "[O]nce an association has satisfied *Hunt's* first and second prongs assuring adversarial vigor in pursuing a claim for which member Article III standing exists, it is difficult to see a constitutional necessity for anything more." *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 556 (1996). Thus, the third *Hunt* prong is "best seen as focusing on these matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution." *Id.* at 557.

Defendants do not dispute that NFB-VA satisfies the first two prongs of the *Hunt* test.[6] As to the third prong, Defendants argue that the NFB-VA lacks organizational standing because either the claims asserted or the relief requested require the participation of individual members

---

[6] Nor could they. As to the first prong, Mr. McCann, Mr. Shabazz, Mr. Shaw, and Mr. Stravitz are members of the NFB-VA and otherwise have standing to sue in their own right. *Hunt*, 432 U.S. at 343; Compl. ¶¶ 54, 56. As to the second prong, the interests the NFB-VA seeks to protect are germane to its purpose of "ensuring that blind Virginians have full and equal access to all of the services, programs, and activities of the State" including incarcerated blind Virginians. *Hunt*, 432 U.S. at 343; Compl. ¶¶ 52–53.

in this litigation. Defs.' Mot. at 18–21. This analysis misstates the law, the nature of the claims Plaintiffs assert, and the relief requested.

The U.S. Supreme Court has consistently held that requests for injunctive and declaratory relief typically do not require participation by individual association members, unlike requests for money damages. *See, e.g.*, *Pennell v. City of San Jose,* 485 U.S. 1, 7 n.3 (1988); *UAW v. Brock*, 477 U.S. 274, 287–88 (1986); *Warth*, 422 U.S. at 515. Likewise, the Fourth Circuit has distinguished injunctive and declaratory relief from suits for money damages, which "would require examination of each member's unique injury" to determine the correct quantum of damages. *Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 187 (4th Cir. 2007). In contrast, where an association seeks only declaratory or injunctive relief, the remedy is presumed "to inure to the benefit of those members of the association actually injured" such that "associational standing is virtually always present. *Virginia Hosp. & Healthcare Assoc. v. Roberts,* No. 3:20-cv-587–HEH, 2023 WL 3132005, at * 9 (E. D. Va. Apr. 27, 2023) (Hudson, J.) (quoting *Warth*, 422 U.S. at 515.). Courts in this Circuit have consistently held that organizations satisfy the third *Hunt* prong when they request injunctive and declaratory relief. *See, e.g.*, *Via. Hosp. Assoc.*, 2023 WL 31320005, at *9; *Nat'l Fed'n of the Blind, Inc. v. Wal-Mart Assocs., Inc.*, 566 F. Supp. 3d 383, 396 (D. Md. 2021); *Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne LLC*, No. 1:11-cv-872 AJT/TCB, 2012 WL 2462301, at *7 (E.D. Va. June 27, 2012); *Equal Rts. Ctr. v. Abercrombie & Fitch Co.*, 767 F. Supp. 2d 510, 525 (D. Md. 2010); *Bacon v. City of Richmond*, 386 F. Supp. 2d 700, 704-05 (E.D. Va. 2005). NFB-VA has asked this Court for injunctive and declaratory relief, thereby presumptively satisfying the third *Hunt* prong. Compl. ¶¶ 377–81.

To rebut this presumption, Defendants rely on *Jefferson v. School Board of City of Norfolk*, 452 F. App'x 356 (4th Cir. 2011), which is unavailing. In *Jefferson*, plaintiffs were a public school teacher and a teacher's organization that brought suit to challenge the teacher's dismissal. The court noted that "[t]he injury giving rise to the claim for injunctive relief is [the teacher's] alleged dismissal without due process," and the prospective relief requested was the teacher's reinstatement. *Jefferson v. Sch. Bd. of City of Norfolk, Va.*, No. 2:10cv316, 2010 WL 11527350, at *4 (June 30, 2010). While plaintiffs also sought to enjoin Defendant from engaging in conduct which violates the constitutional rights of employees, they failed to point to any policy, regulation, or practice that allegedly threatened the rights of their employees. As such, the Fourth Circuit found the constitutional relief requested "so vague as to be meaningless," and that "the complaint otherwise concerns only Jefferson's specific rights and requires her individual participation." *Jefferson v. Sch. Bd. Of City of Norfolk*, 452 F. App'x. 356, 358 (4th Cir. 2011).

Here, by contrast, NFB-VA has asked this Court to enjoin the VDOC Defendants to develop policies and procedures to prevent them from discriminating on the basis of disability against current and future blind prisoners; to reasonably modify VDOC policies, procedures, and practices; from housing blind prisoners in dorm-style living quarters when doing so is unsafe, and from denying blind prisoners the ability to read, write, and access other VDOC programs privately and independently. Compl. ¶¶ 377–81. The relief Plaintiffs request may be broad, but it is not vague and does not concern only the specific rights of the individual plaintiffs in the same manner as the complaint in *Jefferson*. *Compare Jefferson*, 2010 WL 11527350, at *4, *with* Compl. ¶ 13; *see also Jefferson*, 452 F. App'x. at 358. Rather, this injunctive relief would vindicate the interests of NFB-VA and protect the rights of those it represents, namely "blind

prisoners in the custody of VDOC and blind persons who may be placed in the custody of

VDOC in the future"—some of whom are NFB-VA members. Compl. ¶ 55.

Defendants argue that because some individual NFB-VA members have asserted separate

ADA claims that require individualized proof of their disabilities, reasonable accommodations,

and actions taken by VDOC and the individual defendants, that this necessarily requires the

participation of individual members and defeats NFB-VA's theory of standing. Defs.' Mot. at

18–19.[7] But associational standing exists where "there is complete identity between the interests

of the [organization] and those of its member[s] . . . and the necessary proof could be presented

'in a group context.'" *N.Y. State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 10 n.4 (1988)

(quoting *Hunt*, 432 U.S. at 344). As the Fourth Circuit has explained, "[i]t is not fatal to the

standing of an organization that its members might be in a position to litigate their own claims."

*Int'l Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259,

1267 (4th Cir. 1981). Courts have also held that membership organizations do not lack standing

solely because the litigation requires some members to participate in fact discovery or at trial.

*See Pharm. Care Mgmt. Ass'n v. Rowe*, 429 F.2d 294, 310–11 (1st Cir. 2005) (per curiam);

*Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 600–03 (7th Cir. 1993); *Hosp.

Council of W. Pa. v. City of Pittsburgh*, 949 F.2d 83, 89 (3d Cir. 1991).

Here, the NFB-VA seeks declaratory and injunctive relief under the ADA, Section 504,

and state law. This is precisely "the type of relief for which associational standing was originally

recognized." *Retail Indus. Leaders Ass'n*, 475 F.3d at 187. Although certain individual plaintiffs

may need to provide testimony and other evidence to establish an organizational plaintiff's

---

[7] Defendants mistakenly cite *Prison Justice League v. Bailey*, 697 F. App'x 362 (5th Cir. 2017), as a Fourth Circuit case. *See* Defs.' Mot. at 18.

claims, the organizational plaintiff still satisfies the third prong of the *Hunt* test "so long as the nature of the claim and of the relief sought does not make the individual participation of *each injured party indispensable* to proper resolution of the cause." *Equal Rights Ctr.*, 767 F. Supp.2d at 525 (quoting *Warth*, 422 U.S. at 511) (holding that disability-rights organization established associational standing in ADA claim for injunctive and declaratory relief where only some members may need to participate at trial). That is the case here.

The NFB-VA's interest in eliminating Defendants' discriminatory practices is aligned with those of its members, and any necessary proof could be presented in a group context. *See N.Y. State Club Ass'n*, 487 U.S. at 10 n.4. Likewise, any participation by the individual NFB-VA members—Mr. McCann, Mr. Shabazz, Mr. Shaw, and Mr. Stravitz—in fact discovery or at trial would not undermine the NFB-VA's associational standing because the participation of "only *some* members. . . does not run afoul of the *Hunt* test." *Equal Rights Ctr.*, 767 F. Supp.2d at 525; *see also Warth*, 422 U.S. at 51; *Rowe*, 429 F.2d 294, 310–11; *Retired Chicago Police Ass'n*, 7 F.3d at 601–02; *Hosp. Council of W. Pa.*, 949 F.2d at 89.

Finally, Defendants argue that individual members of the NFB-VA are required to participate in this litigation because, under the Prison Litigation Reform Act ("PLRA"), any injunctive relief entered on their behalf must be tailored to the relief each of them requests. Defs.' Mot. at 21. By its terms, the PLRA limits prospective relief to "no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1)(A). Under Defendants' reading, the "particular plaintiff" means the individual member plaintiffs, which means that their participation in this case is required. Defendants' invocation of the PLRA is unavailing.

Defendants can point to no court that has interpreted the PLRA as limiting associational standing in this way, and the PLRA contains no limitation on who or what that particular plaintiff may be. *See* 18 U.S.C. § 3626(a)(1)(A). Here, the NFB-VA, not the individual member plaintiffs, is the "particular plaintiff." Thus, this Court would only have to enter an injunction that would extend "no further than necessary to correct the violation of the Federal right" of the NFB-VA and, by extension, its blind members. *Id.*

Moreover, when courts have entered injunctions on behalf of member organizations that represent prisoners, those injunctions have not been limited by the particular circumstances of the individual member plaintiffs so as to defeat a finding of associational standing. *See Am. Humanist Assoc. v. Perry*, 303 F. Supp.3d 421, 427, 433 (E.D.N.C. 2018) (holding that plaintiff religious organization had associational standing and that broad injunction "to recognize Humanism as a faith group" was consistent with the PLRA); *Johnson v. Martin*, No. 2:00-CV-75, 1:01-CV-515, 2005 WL 3312566, at *8 n.12 (W.D. Mich. Dec. 7, 2005) (holding that plaintiff religious organization had associational standing and that broad injunction "preventing Defendants from totally banning Melanic [religious] materials" was consistent with the PLRA). Thus, the NFB-VA has associational standing to pursue its claims for declaratory and injunctive relief.

## III.     Plaintiff Nacarlo Courtney states a claim for retaliation under the ADA.

In Plaintiffs' Second Claim, Mr. Courtney alleges retaliation under the ADA against VDOC and Defendants Clarke, Marano, Talbott, and Punturi. Compl. ¶¶ 271–75. Defendants erroneously maintain that this claim fails because Mr. Courtney does not allege "some sort of conspiracy" between Defendant Clarke and Defendant Smith. Defs.' Mot. at 35. In doing so, Defendants overstate the factual specificity with which Mr. Courtney must allege his claim.

17

Given the facts in the Complaint, this Court may draw a reasonable inference that VDOC and Defendants Clarke, Marano, Talbott, and Punturi are liable for retaliation under the ADA.

"To establish a prima facie retaliation claim under the ADA, a plaintiff must prove (1) he engaged in protected conduct, (2) he suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action." *Reynolds v. Am. Nat'l Red Cross*, 701 F. 3d 143, 145 (4th Cir. 2012) (citing *A Soc'y Without a Name v. Commonwealth of Va.*, 655 F.3d 342, 350 (4th Cir. 2011)). Defendants do not dispute that Mr. Courtney engaged in protected conduct, nor do they dispute that he suffered an adverse action. Defs.' Mot. at 35–36. As for establishing a causal link, the Fourth Circuit has held that "establishing a 'causal relationship' at the prima facie stage is not an onerous burden." *Strothers v. City of Laurel*, 895 F.3d 317, 335 (4th Cir. 2018) (citing *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 251 (4th Cir. 2015)); *Burgess v. Bowen*, 466 F. App'x 272, 283 (4th Cir. 2012) ("[V]ery little evidence of a causal connection is required to establish a prima facie case [of retaliation].") (citation omitted)).

Plaintiffs have provided ample evidence of the suspect nature of the drug test from December 20, 2022, sufficient to support a reasonable inference that the urinalysis was retaliatory. The test was conducted shortly after Mr. Courtney sent two separate letters, through counsel, to Defendants Clarke and Talbott.[8] Compl. ¶ 248. The letters cited VDOC's and Greensville's failures to provide him with contact cleaning solution and sodium chloride: two materials prescribed by Mr. Courtney's doctors, without which he is unable to use his contacts and, therefore, is unable to see. *Id*. To claim that this test was "routine" contradicts the facts

---

[8] Defendants incorrectly limit Mr. Courtney's protected conduct as just the Plaintiffs' letter to Defendant Clarke and other VDOC Defendants, which was sent by Plaintiffs' counsel on October 27, 2022. Mr. Courtney also engaged in protected conduct when he sent a letter, through counsel, to Defendant Talbott on November 21, 2022, concerning similar issues regarding his accommodations.

provided in the Complaint. Until he was subjected to this drug test in December 2022, Mr.

Courtney had never tested positive for illegal drugs on a urinalysis while in VDOC custody.

*Id.* ¶ 250. In fact, he was hardly ever tested for drugs throughout the course of his ten years of

incarceration. *Id.* ¶ 251. Furthermore, the method of administering the December 2022 drug test

was far from routine. Mr. Courtney's previous drug tests were conducted in a room with security

cameras, *id.* ¶ 252, presumably to protect against tampering with the test materials. However, in

this case, Defendant Smith administered this urinalysis in a staff bathroom. *Id.* ¶ 253.

Conspicuously, other prisoners being tested at the same time were not required to take their tests

in the staff bathroom. *Id.* ¶ 254. Beyond the red flags raised by the time, place, and manner of

this incident, the December 2022 urinalysis tested for only two of the five substances typically

assessed in a urinalysis. *Id.* ¶ 255. Mr. Courtney's test came back positive for both marijuana and

methamphetamines—the only two drugs Defendant Smith tested for. *Id.* ¶ 256. Mr. Courtney

knows these results to be false because he did not take illegal drugs of any kind while

incarcerated. *Id*. ¶ 249.

Mr. Courtney has established sufficient temporal proximity to give rise to an inference of

retaliation because the adverse action taken against him was just a month after his protected

activity. *See Foster*, 787 F.3d at 253 (holding that complaints of discrimination one month before

adverse action was sufficient to create a jury question regarding the causation prong of a prima

facie retaliation case); *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (holding that two

months and two weeks between the protected activity and the adverse action, in the context of

the facts of the case, did not "undercut the inference of causation enough to render [the

plaintiff's] prima facie claim unsuccessful"); *Silva v. Bowie State Univ.*, 172 F. App'x 476, 478

(4th Cir. 2006) (finding that a "ten-week lapse of time sufficiently established a prima facie case of retaliation").

As a result of this positive test, Mr. Courtney received a disciplinary charge. Compl. ¶ 256. If Mr. Courtney was convicted of that charge, he could have lost his in-person visitation, video visitation, telephone, and commissary privileges for up to three months—just the amount of time he had left on his sentence. *Id.* More importantly, a guilty verdict on the charge could have added up to eight months to his sentence. *Id.* Defendants knew that Mr. Courtney had engaged in the protected activity of writing letters to Defendants Clarke and Talbott. *Id.* ¶ 248. They had no reason to suspect that Mr. Courtney was taking drugs, yet they administered a urinalysis without regard for VDOC's drug testing procedures. *Id.* ¶¶ 254, 258. And, critically, Mr. Courtney's drug test came back positive for drugs he has never taken while in prison. *Id.* ¶ 256. These circumstances lead Mr. Courtney to believe, with good cause, that his test results were falsified in retaliation for his complaints against Defendants for failing to accommodate him. *Id.* ¶ 259.

Construing the facts in the light most favorable to Plaintiffs, Mr. Courtney plausibly alleges a causal link between his protected conduct and the adverse action he suffered, and therefore can state a claim for retaliation under the ADA.[9]

---

[9] Defendants briefly mention in a footnote that, while he may make such allegations against VDOC, Mr. Courtney cannot maintain a claim for retaliation under the ADA against the individual Defendants. For the same reasons stated in Section VI.B, *infra*, Defendants' argument on this point is unavailing. As such, the Court may properly deny Defendants' Motion to Dismiss on this count. If the Court is inclined to dismiss Mr. Courtney's claim for retaliation, he respectfully requests leave to amend.

IV.    **Plaintiffs adequately allege a claim for gross negligence.**

A.    **Plaintiffs allege claims for gross negligence with sufficient specificity as to put Defendants on notice of the claims brought against each Defendant.**

Plaintiffs have provided a thorough account of the wrongs they have endured while incarcerated to allow this Court to make a reasonable inference of the Defendants' gross negligence. Still, Defendants argue that this claim, too, should be dismissed for "lackadaisical" pleading. Defs.' Mot. at 62. In doing so, Defendants seek to hold Plaintiffs to an overly formalistic standard of pleadings. Defendants complain that Plaintiffs' gross negligence claims are so unclear that it seems as though the Greensville Plaintiffs could be bringing claims against the Deerfield Defendants, and vice versa. *Id.* This attempt to cast doubt on the clear factual support Plaintiffs have for their gross negligence claims fails by their own reading of the Complaint. *Id.* Defendants were perfectly able to decipher in their statement of facts that Plaintiffs Hajacos, Rogers, and Courtney have only put forward allegations which address instances at Greensville, where they have been housed, *id.* ¶ 2, and that Plaintiffs McCann, Shabazz, Shaw, and Stravitz have only put forward allegations which address instances at Deerfield, where they have been housed, *id.* ¶ 3. Plaintiffs have, therefore, given Defendants sufficient notice of the claims against them and the Plaintiff bringing each claim.

Defendants also misstate the Defendants named in Claim 10. Plaintiffs plainly bring their gross negligence claims against "VDOC Defendants and Defendants Edmonds, Williams, and Smith in their individual capacities." Compl. at 54. Plaintiffs do not assert a claim for gross negligence against VDOC itself.[10] Defs.' Mot. at 62.

---

[10] In further support of Plaintiffs' argument that they have alleged their gross negligence claims with sufficient factual specificity, Plaintiffs incorporate the facts and arguments set forth in Section I of this Memorandum.

**B.     Plaintiffs' allegations support a reasonable inference that Defendants exhibited complete neglect to Plaintiffs' safety and proximately caused their injuries.**

In Virginia, "[g]ross negligence is 'a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person.'" *Commonwealth v. Giddens*, 816 S.E.2d 290, 294 (2018) (quoting *Cowan v. Hospice Support Care, Inc.*, 603 S.E.2d 916, 918 (Va. 2004)). "Ordinarily, the question whether gross negligence has been established is a matter of fact to be decided by a jury." *Frazier v. City of Norfolk*, 362 S.E.2d 688, 691 (Va. 1987). A court should rule on gross negligence only when "reasonable minds could not differ." *Id.*

Defendants argue that Plaintiffs have not established a claim for gross negligence because the service denials they allege could not possibly "shock fair minded" people. Defs.' Mot. at 63–64 (quoting *Evans v. Evans*, 695 S.E.2d 173, 174 n.1 (Va. 2010)). Defendants' argument drastically minimizes Plaintiffs' injuries and the circumstances giving rise to them.

### i.   Defendants minimize Plaintiffs' injuries.

Defendants deny that Plaintiffs have incurred *any* physical harm proximately caused by Defendants' conduct. Defs.' Mot. at 64. They leave out critical details in the Complaint that support Plaintiffs' claims.

Mr. Courtney's vision progressively worsened while he waited for Greensville Defendants to provide him with medical treatment and the materials he was prescribed to help him manage his keratoconus. Compl. ¶¶ 216–38. Deerfield Defendants have prevented Mr. McCann from having access to a Caregiver, without whom he must navigate the prison alone, which has led to physical altercations when other prisoners mistake his accidental contact with them for aggression. *Id.* ¶ 186. Greensville Defendants' failures to maintain an accessible alert system has led Mr. Hajacos to miss meals on several occasions because he was not notified that

it was time to go to chow. *Id.* ¶ 196. VDOC Defendants have repeatedly denied Mr. Shaw and

Mr. Rogers access to Caregivers, forcing them to pay other prisoners to take them to the shower,

which placed them at an obvious risk of danger. *Id.* ¶ 122, 208; *see Williams v. Kincaid*, 45 F.4th

759, 778 (4th Cir. 2022) (reversing the district court's dismissal of the plaintiff's gross

negligence claim and noting that "maintaining a prison policy that violates federal law and that

puts vulnerable inmates at an obvious risk of harm . . . could allow a reasonable jury to conclude

that [the defendant] crossed the line from inadequacy to indifference"). In the months while Mr.

Stravitz has been waiting for cataract treatments, without any support from Deerfield

Defendants, his vision has worsened significantly and will continue to deteriorate if he is not

treated. *Id.* ¶ 160. Through these allegations and more, Plaintiffs' Complaint clearly connects

Defendants' actions with the physical harms and other injuries they have sustained. If allowing

Plaintiffs to be beaten up, go hungry, and go blind are not negligent acts that "shock fair minded"

people, Plaintiffs would be hard-pressed to find any that would.[11]

### ii. Defendants understate their impact on Plaintiffs' injuries.

Beyond the ways in which Defendants minimize Plaintiffs' injuries, they also downplay

the Defendants' involvement in the circumstances causing Plaintiffs' injuries. Defendants seem

to assert that the Plaintiffs themselves are at fault for the lack of accommodations and services

they receive in prison. Defendants claim that Mr. Courtney and others "permitted" other

prisoners to read their personal mail, *id.* ¶ 24, that Mr. Hajacos "chose" to give up his job in

order to maintain his accommodations in his pod, *id.* ¶ 35, and that Mr. Shaw "elected" to drop a

---

[11] While Plaintiffs' physical injuries are accompanied by understandable emotional distress and mental anguish, Defendants unreasonably read into the Plaintiffs' Complaint a claim for negligent or intentional infliction of emotional distress. Defs.' Mot. at 64. Plaintiffs have not brought such a claim.

course in which his accommodations were denied, *id.* ¶ 54.[12] Defendants use this framing in an attempt to mask their failures as the results of Plaintiffs' own actions—a cruel blame-shifting tactic aimed at shaming Plaintiffs for seeking the accommodations they are guaranteed by law.[13]

Plaintiffs have made sufficient allegations for the Court to draw a reasonable inference that Defendants directly and proximately caused the harms Plaintiffs have experienced. For example: Though Mr. Courtney's accommodations had already been prescribed by a private doctor, Defendant Talbott forwarded all of his accommodation requests to Greensville's medical unit. *Id.* ¶ 178. This action was a completely unnecessary step, taken for the sole purpose of delaying and avoiding providing Mr. Courtney with accommodations. Mr. Courtney received no responses from Medical, leaving his windows without the necessary tinting, further damaging his eyesight. *Id.* ¶¶ 178–80, 181. This is one of many examples where Defendants had clear involvement in Plaintiffs' denial of access to vision-saving accommodations.

---

[12] Defendants also impermissibly distill Plaintiffs' injuries to those caused by Defendants' failures to provide them access to DVD players and Sharpie pens. *Id.* at 63–64. Again, these mischaracterizations of Plaintiffs' allegations do nothing to distract from the strength of their claims.

[13] Defendants allude to, though they do not fully detail, an argument that Plaintiffs' allegations fall outside the statute of limitations for a gross negligence claim. Defs.' Mot. at 64 n.40 (citing Va. Code Ann. § 8.01-243.2). In case there was any doubt: Plaintiffs are aware of such a statute of limitations and, accordingly, have timely filed their claims. Plaintiffs have alleged several violations of gross negligence that occurred within the last year prior to filing this lawsuit. *See, e.g.*, Compl. ¶¶ 122, 171–72, 186, 196, 205, 241, 244. In other instances, Plaintiffs have alleged a "series of separate but related acts" amounting to continuing violations. *See Beall v. Abbott Laboratories*, 130 F.3d 614, 620 (4th Cir.1997) (quoting *Jenkins v. Home Ins. Co.*, 635 F.2d 310, 312 (4th Cir.1980) (per curiam)); *see also, e.g.*, Compl. ¶¶ 105–126 (reliance on caregivers and other untrained prisoners to complete daily tasks puts Plaintiffs in a vulnerable position and has resulted in abuse and manipulation), 198, 225, 237, 239-254 (consistent failures to obtain medical appointments for Plaintiffs, to notify Plaintiffs of upcoming appointments, and to transport them to those appointments).

Defendants complain that the allegations related to Mr. Courtney and Mr. Stravitz would more properly be brought as a medical malpractice claim. But Defendants ignore the fact that Mr. Stravitz and Mr. Courtney also bring medical malpractice claims against other Defendants who are medical professionals and are not subject to Defendants' Motion. Defendants also ignore the reality that the same set of facts can provide the basis for several different claims or theories of liability, and it is Plaintiffs, not Defendants, who decide which of those to pursue. Thus, Plaintiffs have properly brought a gross negligence claim against Defendants.

Defendants have acted, and continue to act, with complete carelessness regarding the urgency of Plaintiffs' medical conditions. They perpetually fail to obtain appointments for Plaintiffs with vision-care professionals. Compl. ¶¶ 223, 235, 237, 238, 242–45. They have failed to approve (or even respond to) accommodations already prescribed by medical professionals. *Id*. ¶¶ 171, 178, 245–46. They have threatened Mr. Courtney for trying to take care of his own needs which Defendants have ignored—which surpasses gross negligence as intentional misconduct. *Id*. ¶¶ 180–82. As a result, Defendants have aggravated Mr. Courtney's and Mr. Stravitz's vision loss. These facts demonstrate a direct link between Defendants' conduct and Plaintiffs' injuries.

Defendants claim that Defendant Clarke has had no personal involvement with any of the individual Plaintiffs and, therefore, cannot be liable for gross negligence. Defs. Mot. at 62 n.39. Yet, the Fourth Circuit has previously held that maintaining a policy that violates federal law and places prisoners at an obvious risk of danger can constitute gross negligence. *Williams*, 45 F.4th at 778. Clarke and other defendants may thus be held liable for gross negligence due to the persistent application of prison policies and practices that place disabled Plaintiffs at an obvious risk of harm. Compl. ¶ 360. In addition, well-settled Virginia law explains that public officials

can be held liable for gross negligence under a theory of *respondeat superior*. *Malpica v. Kincaid*, No. 1:21-CV-417, 2022 WL 503966, at *8 (E.D. Va. Feb. 18, 2022).[14] Therefore, Plaintiffs sufficiently allege their claims for gross negligence, Defendants' Motion as to Claim 10 should be denied.[15]

## V.     Plaintiffs have established claims under the Virginians with Disabilities Act.

### A.     Each Plaintiff alleges sufficient facts to assert a disability discrimination claim against VDOC and its employees.

The Virginians with Disabilities Act ("VDA") provides that no qualified individual with a disability may be "excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving state financial assistance or under any program or activity conducted by or on behalf of any state agency." Va. Code Ann. § 51.5-40. As established in support of their ADA and Rehabilitation Act Claims, the individual Plaintiffs are blind men who, by virtue of their incarceration, are qualified to participate in and benefit from VDOC's many programs and activities, including communication, employment, the grievance process, and more. Compl. ¶ 1.

In disputing Plaintiffs' claims under the VDA, Defendants reassert their discontent with Plaintiffs' "catchall" pleadings. Defs.' Mot. at 37. Yet, as explained above, Plaintiffs have specifically enumerated the many types of discrimination they faced, Compl. ¶ 291(a)–(e), included facts supporting how and when Plaintiffs experienced those forms of discrimination and exclusion, *see, e.g.*, *id.* ¶¶ 143–63 (describing how Plaintiffs have been denied opportunities to

---

[14] While Plaintiffs are aware that Defendant Clarke cannot be held liable under *respondeat superior* for the state law violations committed by his subordinates, other individual VDOC Defendants can. *See Malpica*, 2022 WL 503966 at *8.

[15] If the Court is inclined to dismiss Plaintiffs' claims for gross negligence, they respectfully request leave to amend.

participate in VDOC's employment programs), and delineated each set of facts with clear headings describing the content of the allegations therein, *see, e.g.*, *id.* at 22 ("C. Blind Prisoners Lack Equal Access to Work Assignments"). As such, Plaintiffs have met the standard of specificity required at this stage.

In further support of Plaintiffs' sufficient factual specificity as to their VDA claims, and NFB-VA's standing to sue on their behalf under the VDA, Plaintiff incorporates the arguments set forth in Sections I and II of this memorandum, respectively. Therefore, having made no additional arguments as to why Plaintiffs have failed to state their claims under the VDA, Defendants' argument against the Plaintiffs' pleading style must fail and the Court should deny Defendants' Motion with regard to Claim 4.

**B.    Defendants are not entitled to sovereign immunity on Plaintiffs' claim under the VDA.**

Defendants VDOC, Clarke, Punturi, Miller, Talbott, and Shaw also launch a jurisdictional challenge to Plaintiffs' VDA claim. Defs.' Mot. at 37–41. They argue that sovereign immunity shields Defendants Clarke, Punturi, Miller, Talbott, and Shaw from liability under the VDA. *Id.* But Fourth Circuit case law and the text of the VDA demonstrate that a federal court is a proper venue for Plaintiffs to bring a claim under the VDA in conjunction with related federal laws.

Sovereign immunity "deprives federal courts of jurisdiction to hear claims." *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018). But dismissal for lack of subject matter jurisdiction is warranted 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.' *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (citation omitted). While the plaintiff generally bears the burden to prove subject matter jurisdiction, "the burden of proof falls to an entity seeking immunity as an

27

arm of the state." *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 176 (4th Cir. 2019) (citing *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014)). Defendants have not met their burden.

As Defendants note, the Commonwealth expressly consented to be sued under the VDA, which applies to "any program or activity conducted by or on behalf of any state agency." Va. Code Ann. § 51.5-40. Defendants argue that a condition of this waiver is that plaintiffs are limited to filing suit under the VDA in a state circuit court. Defs.' Mot. at 39 (citing Va. Code Ann. § 51.5-46). But Defendants still fail to "cite the decision of any court that has concluded the [language of § 51.5-46] prohibits suits under the VDA in federal court." *Richardson v. Clarke*, No. 3:18cv23, 2020 WL 4758361, at *7 (E.D. Va. Aug. 17, 2020).[16]

The VDA waives sovereign immunity for cases brought in both state and federal court. The key language in the VDA's remedies provision states: "An action may be commenced pursuant to this section any time within one year of the occurrence of any violation of rights under this chapter." Va. Code Ann. § 51.5-46(B). This section does not mandate that a plaintiff seeking relief under the VDA do so in a state court, rather, it grants a cause of action under the chapter without jurisdictional limitations. This subsection is sufficient for the purposes of determining the extent of sovereign immunity.[17] Defendants narrowly focus on the provision

---

[16] Defendants even concede that "'there are numerous instances in which the federal courts have entertained claims under the VDA.'" *Id.* at 39 (quoting *Richardson,* No. 3:18cv23, 2020 WL 4758361, at *7 (citing cases)). *Richardson* is instructive here because the same defendants— Defendant Clarke and other prison officials—were denied their motion to dismiss the plaintiff's VDA claim. *Id.* In denying the motion, this Court rejected Defendants' argument that the VDA's remedies section, on its face, only waived sovereign immunity as to suits in state court. *Id.* Defendants provide no additional textual or case law support for their argument here and have therefore failed to meet their burden of proving sovereign immunity.

[17] The Fourth Circuit has stated that it is "reluctant to infer that the only way a state statute" can waive sovereign immunity in federal court is "to include the words 'federal court' or 'United States' in the statutory text." *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 254 (4th Cir. 2012).

in § 51.5-46(A), which confers on "[a]ny circuit court having jurisdiction and venue pursuant to Title 8.01" the right to provide injunctive and monetary relief where plaintiffs are entitled to it. *Id.* But this language still does not relegate a VDA plaintiff to state court. In clarifying that the circuit court has original jurisdiction to hear a VDA plaintiff's state court case (as opposed to a general district court), the General Assembly did not strip VDA plaintiffs of the opportunity to file the same claim in federal court, provided she could meet the requirements for federal jurisdiction. Defendants maintain that the text of § 51.5-46 "expressly states that [VDA] claims are to be brought in '[a]ny circuit court having jurisdiction and venue pursuant to Title 8.01.'" However, Defendants fail to quote the entire provision, which merely allows a plaintiff to bring a claim under the provisions of the VDA within one year of the harm done and also allows a state circuit court to hear such an action if the plaintiff files her suit in state court.

Nevertheless, Defendants maintain that sovereign immunity applies in this case because the federal cases cited by this Court in *Richardson* did not involve defendants who had sovereign immunity on their side. Defs.' Mot. at 39–40 (first citing *J.D. by Doherty v. Colonial Williamsburg Found.*, 925 F.3d 663 (4th Cir. 2019) (involving a defendant who was a "recipient of state financial assistance," and not a state agency); then citing *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209 (4th Cir. 1994) (involving a defendant entity which was an employer eligible for suit under the VDA)). This Court should deny this novel argument for sovereign immunity. Regardless of whether the defendants in *J.D. by Doherty* or *Tyndall* could assert sovereign immunity, any of those defendants could have asserted a defense that the plaintiffs were required to sue in the "circuit court having jurisdiction and venue" according to the remedies provision of the VDA. Va. Code Ann. § 51.5-46. It appears that they did not. In fact, some defendants have even removed cases in which they were sued under the VDA to federal

court. *See, e.g.*, *Hammonds v. Builders First Source-Atl. Grp., Inc.*, No. 3:01CV00023, 2002 WL 535071, at *1 (W.D. Va. Mar. 28, 2002); *Bradick v. Grumman Data Sys. Corp.*, 486 S.E.2d 545, 546 n.1 (1997). Plaintiffs have found no case in which any defendant has argued, either by way of sovereign immunity or a challenge to the court's supplemental jurisdiction, that the plaintiff could not bring her VDA claim in a federal court.

Moreover, the Fourth Circuit has repeatedly held that plaintiffs' rights under the VDA are coextensive with those under the ADA and Section 504. *Semenova v. Md. Transit Admin*., 845 F.3d 564, 567 (4th Cir. 2017) (holding that the VDA is an "exact state law counterpart to the Rehabilitation Act because it tracks the language of the federal law, requires regulations promulgated pursuant to state law to be consistent with the federal law, and affords the same remedies as the federal law") (internal quotation marks omitted) (quoting *Wolsky v. Med. College of Hampton Rds.*, 1 F.3d 222, 222–24 (4th Cir. 1993); *Tyndall,* 31 F.3d at 216 ("The VDA standards for liability follow the standards established in the federal Rehabilitation Act of 1973 and adopted in the ADA."). Aside from their shared standards of liability, the VDA, ADA, and Section 504 also have similar procedural provisions, such as a common statute of limitations, *A Soc'y Without A Name v. Va.,* 655 F.3d 342, 348 (4th Cir. 2011); Va. Code Ann. § 51.5-46(B), notice provisions, *Childress v. Clement*, 5 F. Supp. 2d 384, 389 (E.D. Va. 1998); Va. Code Ann. § 51.5-46(B), and nearly identical fee-shifting provisions, *Clay v. Campbell Cnty. Sheriff's Off.*, No. 6:12-CV-00062, 2013 WL 3245153, at *6 (W.D. Va. June 26, 2013) (citing 42 U.S.C. § 12205 and Va. Code Ann. § 51.5–46(A)). As such, plaintiffs who allege a violation of

their rights against nondiscrimination under the ADA, Rehabilitation Act, and VDA should be able to do so all in one lawsuit, just as they have been able to in every federal case to date.[18]

As discussed in Section III.D, Defendants cannot properly assert sovereign immunity against Plaintiffs' ADA claims. To the extent that a plaintiff's rights under the VDA's nondiscrimination provision are commensurate with that under the ADA, Defendants' argument for sovereign immunity here similarly fails, and the Motion on Claim 4 should be denied.

## VI.    Plaintiffs have adequately alleged claims under Title II of the ADA.

### A.    Plaintiffs did not violate the rules of joinder, nor can those rules serve as the basis for dismissal.

Contrary to Defendants' contentions,  Plaintiffs' Claim One under Title II of the ADA does not violate joinder rules. Persons may be joined together as defendants if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A)–(B). Claims "arise from the same transaction—and therefore can be joined in the same action—when there is a logical relationship between them." *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 325 (4th Cir. 2021) (citation and internal quotation marks omitted). A logical relationship may be found when the proposed complaint alleges a "consistent pattern" of malfeasance among the named defendants. *See Mitchell v. Virginia*, No. 3:22-cv-783, 2023 WL 174957, at *2 (E.D. Va. Jan. 12, 2023) (quoting *M.K. v. Tenet*, 216 F.R.D. 133, 142 (D.D.C.

---

[18] Granting Defendants' motion to dismiss on these grounds would also eliminate federal court litigation as an option for plaintiffs suing under other sections of the VDA who have previously been permitted to do so. *See Gary v. Va. Dep't of Elections,* No. 1:20-CV-860, 2020 WL 6589326, at *3 (E.D. Va. Aug. 28, 2020) (entering a partial consent judgment and decree based on plaintiffs' voting rights claims under the ADA, Section 504, and Va. Code Ann. § 51.5-43).

2002) (holding that the alleged repeated pattern of obstruction of counsel by the defendants was "logically related" as "a series of transactions or occurrences" aimed at denying effective assistance of counsel to the plaintiffs)).

Here, Plaintiffs allege that the VDOC Defendants discriminated against them on the basis of disability when they:

- Denied the Individual Plaintiffs and other blind prisoners the opportunity to participate in or benefit from VDOC's aids, benefits, or services;

- Afforded the Individual Plaintiffs and other blind prisoners opportunities to participate in or benefit from aids, benefits, or services that were not equal to those afforded others;

- Provided the Individual Plaintiffs and other blind prisoners with aids, benefits, or services that are not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;

- Used criteria and methods of administration that have the effect of subjecting the Individual Plaintiffs and other blind prisoners to discrimination on the basis of disability;

- Used criteria and methods of administration that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of VDOC's programs with respect to the Individual Plaintiffs and other blind prisoners;

- Failed to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability;

- Failed to ensure that communications with the Individual Plaintiffs and other blind prisoners are as effective as communications with others;

- Failed to furnish appropriate auxiliary aids and services where necessary to afford the Individual Plaintiffs and other blind prisoners an equal opportunity to participate in, and enjoy the benefits of, VDOC's services, programs, or activities; and

- Failed to give primary consideration to the requests of the Individual Plaintiffs and other blind prisoners concerning the types of auxiliary aids and services necessary. Compl. ¶¶ 263(a)–(i).

Although Defendants do not cite to Rule 20 specifically, they dispute that Plaintiffs incarcerated at Deerfield can properly join claims against Defendants employed at Greensville, and that Plaintiffs incarcerated at Greensville can properly join claims against Defendants employed at Deerfield. Defs.' Mot. at 22. In so doing, Defendants seem to be confusing the standard for joinder with the standard for stating a claim generally.[19] Rule 21 makes clear that "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, the court may drop or sever any claim against a party either *sua sponte* or on motion. *Id.* To the extent Defendants' argument represents a Rule 21 motion for severance, it should be rejected.[20]

Under the appropriate Rule 20 standard, the Individual Plaintiffs' claims from both Greensville and Deerfield may be properly joined because they have a "logical relationship between them." *Courthouse News Serv.*, 2 F.4th at 325. The experiences of all the Individual Plaintiffs at Deerfield and Greensville result from the lack of appropriate policies and procedures in place at VDOC generally. In addition, Defendants VDOC, Clarke, and Marano create and

---

[19] Defendants are also previewing their arguments alleging a failure to state a claim against the individual VDOC Defendants. *See id.* at 22–23. Plaintiffs will address these arguments below. *See infra* Sec. VI.B.

[20] Defendants demonstrate their understanding of a Rule 21 motion for severance in an earlier footnote. *See* Defs.' Mot. at 17 n.9. While they declined to expressly move for severance, they "would not object" to this Court exercising that power *sua sponte*. *Id.* This footnote and the accompanying text should be considered a response to that nominal motion. Defendants rely on *Ofori v. Clarke*, No. 7:18-cv-00587, 2019 WL 4344289 (W.D. Va. Sept. 12, 2019), which is readily distinguishable. Defs.' Mot. at 17 n.9. The complaint in *Ofori* contained multiple counts related to disparate issues, and was filed against fifty named Defendants, "not all of whom [were] not identified in each count." *Ofori*, 2019 WL 4344289, at *5. Here, by contrast, Count Two of Plaintiffs' Complaint properly identifies the VDOC Defendants by incorporation. Compl. at 2, ¶ 260. And, as explained above, Plaintiffs' ADA claim arises out of the same "series of transactions or occurrences," satisfying Rule 20, unlike the complaint at issue in *Ofori*. 2019 WL 4344289, at *5; Fed. R. Civ. P. 20(a)(2)(A)–(B). Further, while the ability to grant severance "is committed to the discretion of the trial court . . . it does not follow as a matter of right that a party can be dropped at the mere desire" of another party. *Carmine v. Poffenbarger*, 154 F. Supp. 3d 309, 319 (E.D. Va. 2015) (quoting *Caperton v. Beatrice Pocahontas Coal Co*., 585 F.2d 683, 692 (4th Cir. 1978)).

implement VDOC-wide policies and procedures that govern both Deerfield and Greensville and they are responsible for ensuring blind prisoners' federal and state rights are not violated VDOC-wide. Plaintiffs' claims, thus, flow from the same conduct by Defendants.

For example, Mr. Courtney, Mr. Hajacos, and Mr. Rogers have alleged the same lack of access to written materials and information as Mr. McCann, Mr. Shabazz, Mr. Shaw, and Mr. Stravitz, Compl. ¶¶ 117–20, 127–32. Mr. Courtney, Mr. Hajacos, and Mr. Shabazz have alleged the same lack of equal access to educational and vocational programs as Mr. McCann and Mr. Shaw. *Id.* ¶¶ 137–42. Mr. Courtney, Mr. Hajacos, and Mr. Shabazz have alleged the same lack of equal access to vocational and employment opportunities as Mr. McCann and Mr. Stravitz. *Id.* ¶¶ 153–63. Mr. Courtney, Mr. Hajacos, and Mr. McCann have all experienced denials of reasonable accommodations. *Id.* ¶¶ 166–199. Likewise, Mr. Rogers has experienced difficulties with dorm-style living at Greensville, as have Mr. McCann and Mr. Shaw at Deerfield. *Id.* ¶¶ 200–215. All of these assertions form the basis for Plaintiffs' Title II claim. *Id.*¶¶263(a)–(i). While the specifics of each Plaintiff's allegations naturally differ, there is a "logical relationship" between them across the two institutions. *Courthouse News Serv.*, 2 F.4th at 325.

Moreover, each of the individual Defendants at Deerfield and Greensville had roles similar to Director Clarke and Mr. Marano - implementing VDOC policies and procedures and ensuring that blind prisoners' federal and state rights are not violated - such that their joinder is based upon a "consistent pattern" of malfeasance among the individual Defendants at Deerfield and Greensville. *Mitchell*, 2023 WL 174957, at *2. Defendant Punturi is the Acting Warden of Greensville and Defendant Miller is the Warden of Deerfield. Both of them are responsible for ensuring that officials and agents at each institution do not violate the legal rights of prisoners in VDOC custody. Compl. ¶¶ 65–66. Defendant Williams previously filled Defendant Miller's role.

*Id.* ¶ 64. Likewise, as the ADA Coordinators at Greensville and Deerfield, Defendants Talbott and Shaw are responsible for "ensuring that blind inmates have meaningful access to VDOC programs and services at Greensville, as well as furnishing appropriate auxiliary aids and services and accommodations to inmates with disabilities" at their respective institutions. *Id.* ¶¶ 67–68. All of them were responsible for ensuring that Plaintiffs' legal rights were respected, and their discriminatory acts and omissions constitute a "series of transactions or occurrences" sufficient to satisfy Rule 20(a)(2)(A).

Likewise, Plaintiffs' Complaint satisfies Rule 21(a)(2)(B), which Defendants do not dispute. Defs.' Mot. at 22. A "common question of law" exists among the VDOC Defendants: namely whether their acts and omissions violated Plaintiffs' rights under Title II of the ADA. Compl. ¶¶ 263(a)–(i). Accordingly, Plaintiffs have properly joined Defendants in this case, and Defendants cannot move to dismiss Plaintiffs' Complaint based on misjoinder of parties. *See* Fed. R. Civ. P. 21. To the extent Defendants move for severance, Plaintiffs request that the Court reject Defendants' motion.

### B.   Plaintiffs properly brought ADA claims against the Individual VDOC Defendants in their official capacities.

Defendants further contend Plaintiffs' official-capacity ADA claims against the individual VDOC Defendants should be dismissed on the basis that there is no individual liability for a violation of the ADA. Defs.' Mot. at 23–25. This argument is foreclosed by *Fauconier v. Clarke*, 966 F.3d 265, 280 (4th Cir. 2020), where the Fourth Circuit made clear that state prison officials may be sued in their official capacity under Title II because those claims are "effectively, claims made against the State." *See also Hicks v. Doyle*, No. 1:20cv552, 2023 WL 2385613, at *10 (E.D. Va. Mar. 6, 2023) (holding that "[p]laintiff may clearly raise his ADA and

RA claims against [state prison medical contractor] in his *official* capacity").[21] That is exactly what Plaintiffs did here.

The cases on which Defendants rely are readily distinguishable, as they involved individual capacity claims for money damages, not official capacity claims for injunctive relief. *See, e.g.*, *Jones v. Sternheimer*, 387 F. App'x 366, 368 (4th Cir. 2010); *Baird ex rel. Baird v. Rose*, 192 F.3d 462 (4th Cir. 1999); *Young v. Barthlow*, No. RWT-07-662, 2007 WL 5253983, at *2 (D. Md. Nov. 7, 2007).[22] The ADA does not bar claims against individual defendants in their official capacities, which are treated as claims against the public entity. *Fauconier*, 966 F.3d at 280.

Alternatively, Defendants argue that where a complaint has properly named a public entity defendant like VDOC, any additional claims against individual public officials in their

_____

[21] To the extent Defendants advance this argument against Plaintiffs' Section 504 claim, the Fourth Circuit has likewise held that an official capacity suit under Section 504 is essentially a suit against a public entity and is permitted. *See, e.g.*, *Williams v. Carvajal*, 63 F. 4th 279, 284 (4th Cir. 2023) (citing *Baird ex re. Baird v. Rose*, 192 F..3d 462, 472 (4th Cir. 1999) (agreeing with the district court in allowing an official capacity claim against a federal Bureau of Prisons official in a suit against a covered federal government entity)); *Shepard v. Irving*, 77 F. App'x. 615, 620 n.3 (4th Cir. 2003) (holding that state university officials were liable in their official capacity under Section 504 for damages and injunctive relief, reasoning that a suit against the officials in their official capacity was in fact a suit against the state entity.). Thus, Plaintiffs' Section 504 claims against the Individual VDOC Defendants in their official capacities may also proceed.

[22] Defendants also rely on *Wimer v. Whitlock*, No. 3:19CV0001, 2019 WL 257984 (W.D. Va. Jan. 17, 2019), for the proposition that VDOC is the only proper defendant for the ADA Title II claim. *Wimer* involved a pro se plaintiff who sued three state courts and three individuals seeking prospective injunctive relief for violations of Title II of the ADA. The court dismissed the case because the plaintiff failed to allege any potential prospective violations. *Id.* at *2. The *Wimer* court went on to opine on whether the plaintiff properly brought suit against the individual plaintiffs and the courts, concluding that "any claims against the judges or court employees in their individual capacities are also subject to dismissal on this ground." *Id.* at *3. Although this statement of law is correct, the court's analysis conflates case law involving individual capacity suits for money damages—which Title II does not permit—with official capacity suits for injunctive relief. *See id.* at *3 (citing cases involving individual capacity suits for damages under Title II).

official capacities should be dismissed for redundancy. Defs.' Mot. at 24–25. This is incorrect. Plaintiffs' Complaint sufficiently alleges ongoing violations of federal law, namely Title II of the ADA and Section 504 of the Rehabilitation Act against the VDOC Defendants. Compl. ¶¶ 77– 215, 260–70, 276–87. They seek prospective injunctive relief to remedy these ongoing violations—relief which the individual VDOC Defendants can provide. *Id.* ¶¶ 377–81. Ironically, Defendants argue that the individual Defendants are redundant, at the same time that they argue VDOC should be dismissed pursuant to sovereign immunity. The inclusion of individual Defendants preempts the (incorrect) sovereign immunity defense Defendants make, discussed below. There is an exception to Eleventh Amendment immunity that allows plaintiffs to seek prospective injunctive relief from state officials acting in their official capacities. *Antrican v. Odom*, 290 F.3d 178, 184 (4th Cir. 2002) (citing *Ex parte Young*, 209 U.S. 123, 159 (1908)). To satisfy this exception, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) (citation omitted).

### C.       Plaintiffs have adequately stated a claim against Defendant VDOC.

To state a claim for disability discrimination under Title II of the ADA, a plaintiff must show that: "(1) they have a disability; (2) they are otherwise qualified to receive the benefits of a public service, program, or activity; and (3) they were denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of their disability." *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 502–03 (4th Cir. 2016). Defendants do not dispute that Plaintiffs have a disability and are otherwise qualified to receive the benefits of VDOC's public service, programs, or activities. Defs.' Mot. at 26. Instead, Defendants assert that Plaintiffs must allege specific modifications to the services, programs, and activities from which

VDOC is excluding them because of their blindness. Defendants also raise factual disputes regarding the Individual Plaintiffs' access to VDOC's services, programs, and activities. Defs.' Mot. at 26–27. As discussed in further detail below, both of these issues are disputes of fact that are not amenable to a motion to dismiss, and under the appropriate standard, Plaintiffs have alleged more than enough facts to survive a motion to dismiss.

### i.    Plaintiffs need not articulate specific reasonable modifications to VDOC's  programs and services at this stage in the litigation.

Defendants argue that Plaintiffs must "propose a reasonable modification to the challenged public program that will allow them the meaningful access they seek" to state a claim under Title II and that this failure constitutes grounds for dismissal. Defs.' Mot. at 26. (quoting *Lamone*, 813 F.3d at 507). Defendants are incorrect. This is the standard "to prevail on [an] ADA claim" *not* to state an ADA claim. *Lamone*, 813 F.3d at 507. The reasonableness of a modification[23] "is generally fact-specific." *Id.* at 509 (quoting *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 464 (4th Cir. 2012)). In *Lamone*, for example, the district court determined that the plaintiffs' proposed modification was reasonable "after a three-day bench trial" wherein it "carefully considered the exhibits introduced into evidence, the testimony of the witnesses who testified in person, the written submissions of the parties, and the oral arguments of counsel." *Nat'l Fed'n. of the Blind v. Lamone*, 2014 WL 4388342, at *1 (D. Md. Sept. 4, 2014), *aff'd*, 813 F.3d 494 (4th Cir. 2016). It also noted that "require[ing] this Court to make factual determinations regarding the reasonableness of Plaintiffs' requested accommodation" would have made "pre-trial resolution . . . inappropriate." *Id.* n.6.

---

[23] Courts use the terms "reasonable modification" and "reasonable accommodation" interchangeably. *See Seremeth v. Bd. of Cnty. Comm'rs. of Frederick Cnty.*, 673 F.3d 333, 338 (4th Cir. 2012) (citing *Paulone v. City of Frederick*, 787 F. Supp.2d 360, 372 (D. Md. 2011)) ("discussing the equivalence of 'reasonable accommodations' and 'reasonable modifications'").

This makes sense, as the reasonableness of a modification turns on facts entered into the record, such that "a court may grant summary judgment in favor of a defendant if the plaintiff fails to present evidence from which a jury may infer that the accommodation is reasonable" *Halpern*, 669 F. 3d at 464. No such record of facts exists until the parties have conducted discovery.

When ruling on a 12(b)(6) motion for failure to state a claim, this Court must not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards*, 178 F.3d at 243 (citation omitted). In demanding that Plaintiffs offer up their own reasonable modification, Defendants ask this Court to do this very thing.[24] This Court should reject Defendants' attempt to wade into factual disputes and the merits of Plaintiffs' claims and deny Defendants' Motion on this ground.

Nevertheless, even if this Court accepts Defendants' argument that Plaintiffs must allege reasonable modifications, it should find that Plaintiffs have met that burden. Plaintiffs have proposed a litany of reasonable accommodations, including: providing VDOC documents in accessible formats, such as "large print, taped text, accessible electronic format, or Braille"; providing documents in an accessible digital format, meaning a format "that can be read aloud with screen reader (*i.e.*, text-to-speech) software and adjusted in font size, color, and brightness"; providing greater access to SARA machines and text-to-speech software; use of qualified readers to access course materials; and occupational therapy and blindness skills to allow prisoners to

---

[24] Defendants' reliance in their accompanying footnote on a VDOC employee's affidavit in another case, *Richardson*, is inappropriate for the same reason. Defs.' Mot. at 26–27 n.16. At this stage, the Court must accept as true Plaintiffs' assertion that "Deerfield does not provide assistive technology to allow blind prisoners to access documents on the library computers." Compl. ¶ 132. *King*, 825 F.3d at 212. Defendants may vigorously dispute the facts Plaintiffs allege, but not at this stage. *See id*.

access work assignments. Compl. ¶¶ 77–78, 130, 139–40, 156, 158. Plaintiffs have also asked for specific accommodations related to their individual disabilities. *Id.* ¶¶ 179 (window and light tinting, sunglasses, a large-screen television, wireless headphones, and a Blu-Ray player), *id.* ¶¶ 191–93 (magnifier, Sharpie marker for writing large print, and prescription glasses), *id.* ¶¶ 194–99 (accessible titler system, shaking the cell door to notify about appointments and meal times, a larger television, magnifier, an external keyboard for the JP6 tablet, and a reading light).

### ii. Plaintiffs alleged unequal access to written materials and information.

Defendants dispute that Plaintiffs lack equal access to written materials and information. Defs.' Mot. at 25–26. For example, Defendants argue that Mr. Shabazz is being adequately accommodated to access the SARA machine in the library. Defs.' Mot. at 26. Whether access to a single SARA machine in a restricted location only accessible at limited times constitutes equally effective communication to that offered to sighted prisoners who can review documents at any time in any location is a question of fact not suitable to resolution on a motion to dismiss. *Edwards*, 178 F.3d at 243.

A SARA machine "converts printed text into spoken text," allowing blind people to access written materials they would not otherwise be able to read. Compl. ¶ 130. Defendants argue that because Mr. Shabazz ostensibly can access a SARA machine at some times under some circumstances, that is enough to satisfy the ADA. Defs.' Mot. at 26. But Defendants are obligated, not just to provide some access, but to provide *equally* effective communication to that offered to nondisabled prisoners. 28 C.F.R. § 35.160. This means that documents "must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy

and independence of the individual with a disability." 28 C.F.R. § 36.160(b)(1) -(2).[25] In

addition, "[i]n determining what types of auxiliary aids and services are necessary, a public

entity shall give primary consideration to the requests of individuals with disabilities."

Defendants' reliance on a single SARA machine in a restricted location available only for two

hours per week fails to provide equally effective communication, to ensure privacy and

independence, and to give primary consideration to Plaintiffs' requests.

Each time Mr. Shabazz needs to access an inaccessible document, he is forced to rely on

a sighted prisoner to complete the request form and wait for his allotted time in the library.

Compl. ¶¶ 112, 131. Courts have consistently held that relying on the assistance of other

prisoners does not meet a public entity's legal obligation to reasonably accommodate disabled

prisoners, including their effective communication obligation. *See, e.g.*, *Wright v. N.Y. State

Dep't of Corr.*, 831 F.3d 64, 74 (2nd Cir. 2016) (concluding that system requiring inmate to seek

assistance from willing inmates was not effective accommodation under ADA and Section 504);

*Armstrong v. Brown*, 732 F.3d 955, 960 (9th Cir. 2013) (finding systemic ADA violations where

prison denied "accessibility devices, such as tapping canes, to blind class members," and placed

them in "the vulnerable position of being dependent on other inmates to enable them to obtain

basic services, such as meals, mail, showers, and toilets"); *Pierce v. Cnty. of Orange*, 526 F.3d

1190, 1219–20 (9th Cir. 2008) (concluding that assistance rendered by other inmates is an

inadequate remedy for inaccessible facilities.); *Wright v. N.Y. State Dep't of Corr.*, 242 F. Supp.

3d 126, 138 (N.D.N.Y. 2017) ("In a normal prison setting, it is easy to envision the ramifications

an inmate could endure if he reports a fellow inmate to an officer. It is even more unsettling to

---

[25] Title II's implementing regulations should be given "controlling weight" in evaluating a public entity's obligations under Title II. *Seremeth v. Bd. of Cnty. Comm'rs. of Frederick Cnty.*, 673 F.3d 333, 338 (4th Cir. 2012).

imagine the consequences facing an inmate who 'snitches' on another inmate and then, must rely upon his fellow inmates to provide him with access to programs, yard, meals, bathroom, and other basic services.").

Plaintiffs have likewise alleged that Defendants failed to provide them with accessible versions of many other documents including: orientation materials, facility handbooks, operating procedures, memoranda, directives, facility publications, commissary lists, commissary order sheets, menus, updates to recreation and commissary schedules, job postings, and changes to policy. Compl. ¶¶ 80–91, 97. In addition, Greensville provides information to prisoners using its "titler" system, which displays written electronic messages concerning events, fire drills, recreation, commissary, and other information through printed text broadcast on televisions in common areas. *Id.* ¶ 92. This information is also not provided in an accessible format, because a prisoner must be able to see and read the message. *Id.* ¶¶ 93–94. None of the Individual Plaintiffs housed at Greensville can independently access the titler system. *Id.* ¶¶ 92–95.

The Individual Plaintiffs at both Greensville and Deerfield have further alleged that they lack private and independent access to the grievance system, medical request forms, visitor request forms, and other written communications, none of which are provided in an accessible format. *Id.* ¶¶ 99–104. This forces the Individual Plaintiffs to rely on other prisoners to read and write for them. *Id.* ¶ 106. This gives those prisoners access to private, personal, and confidential information, and further leaves the Individual Plaintiffs "at the mercy of. . .[the] other prisoner's literacy skills, ethical principles, work ethic, and self-interest." *Id.* ¶ 113. And as discussed above, courts have found that reliance on non-disabled prisoners is an inadequate remedy for a defendant's refusal to provide access under Title II. *See, e.g.*, *Wright*, 831 F.3d at 74; *Armstrong*, 732 F.3d at 960; *Pierce*, 526 F.3d at 1219–20; *Wright*, 242 F. Supp. 3d at 138.

42

Defendants address none of these allegations in their Motion, choosing instead to treat Mr. Shabazz's minimal access to the SARA machine as the sum total of Plaintiffs' allegations. Defs.' Mot. at 26.[26] Likewise, Defendants dispute that Mr. Shabazz was denied access to a program or service when he was forced to use an inaccessible form to access the SARA scanner for an additional hour a week. Defs.' Mot. at 26. Notably, the ADA prohibits, not only the complete denial of a program or service, but also the denial of the benefits of a program or service or being "subjected to discrimination" by a public entity. Title II "applies to anything a public entity does." *Seremeth*, 673 F.3d at 338 (collecting sources). Mr. Shabazz's access to the SARA machine is itself a VDOC service, which was conditioned on an inaccessible form. *Id.* ¶ 130. Because Title II "applies to anything a public entity does," Mr. Shabazz has stated a claim for discrimination and denial of access to a benefit or service.

### iii.    Plaintiffs alleged unequal access to educational and vocational programs.

Plaintiffs have also sufficiently alleged unequal access to VDOC educational and vocational programs. State prisons must provide prisoners with disabilities equal access to the benefits they confer, including educational and vocational programs. *Yeskey*, 524 U.S. at 210. Plaintiffs have alleged that VDOC fails to provide information about available educational and vocational programs in accessible formats. Compl. ¶ 135. Likewise, VDOC fails to provide the

---

[26]    Defendants likewise dispute that Plaintiffs sufficiently alleged that Greensville "does not provide assistive technology to allow blind prisoners to access documents on the library computers" because Plaintiffs did not define "assistive technology." Defs.' Mot. at 26 (quoting Compl. ¶ 132). Defendants are incorrect—Plaintiffs do define "assistive technology" in the Complaint. Plaintiffs alleged that such assistive technology includes printers (which would allow Plaintiffs to print accessible electronic documents to submit to Defendants in written format); scanners (which would convert printed text into a digital format accessible to a screen reader), and the screen reader itself, which converts text on a computer screen to an audio format accessible to blind individuals. Compl. ¶¶ 77, 79, 129–130, 133.

materials used in those programs, such as worksheets, textbooks, computer programs, and other tools in an accessible format. *Id.* ¶ 136. Plaintiffs also allege specific access issues related to individual courses. *See generally id.* ¶ 137–142.

Of those specific allegations, Defendants only dispute that Mr. Shabazz's inability to access a computer with VDOC's trial text-to-speech software rose to the level of an ADA violation. Defs.' Mot. at 27. Mr. Shabazz has been enrolled in a computer course at Deerfield since April 2022, and alleges that the course is inaccessible to him. *Id.* ¶ 138. Mr. Shabazz, like other blind prisoners, requires text-to-speech software in order to interact with a computer screen. *See id.* ¶ 77. Mr. Shabazz alleges that Defendants installed only a trial version of text-to-speech software, which imposes a time limit. *Id.* ¶ 138. Whether that limited time complies with the Defendants' obligation to ensure equally effective communication is a fact issue inappropriate for resolution at this stage.

By providing text-to-speech software with a time limit, Defendants have limited Mr. Shabazz's access in comparison to sighted prisoners who do not require such software to use the computer, which constitutes a *prima facie* claim of disability discrimination under Title II. *Lamone*, 813 F.3d at 502–03. Taken together with the other specific allegations related to vocational and educational programs, Plaintiffs' allegations adequately state a claim.

### iv.    Plaintiffs alleged unequal access to work assignments.

Plaintiffs have also sufficiently alleged unequal access to VDOC work assignments. Plaintiffs have alleged that all eligible prisoners in VDOC custody are expected to participate in a VDOC-approved work program. Compl. ¶ 145. While VDOC makes a variety of work assignments available at various rates of pay, blind prisoners are often relegated to the lowest "Grade 1 unskilled" work assignments, or receive no work assignment at all because of their blindness. *Id.* ¶¶ 146, 152. Information about job assignments is also not provided in an

accessible format. *Id.* ¶¶ 150–51. VDOC also terminates work assignments if a prisoner loses his vision while on the assignment. *Id.* ¶ 152.

Plaintiffs likewise alleged that certain work assignments are denied to them because they are considered "too dangerous" for a blind prisoner to perform and detail specific issues they have had with obtaining and keeping work assignments. *See generally id.* ¶¶ 153–63. Mr. McCann is considered ineligible for certain assignments and was given a job where he was given no actual work responsibilities. *Id.* ¶¶ 154–55. Mr. Shabazz has been consistently denied a higher-paying Grade 3 assignment because of his blindness. *Id.* ¶¶ 156–57. Mr. Shaw has not been allowed to have a job at all, and VDOC will not provide him with the occupational therapy needed to give him the skills to do a job. *Id.* ¶ 158. Mr. Stravitz worries that his work assignment in the law library will be put at risk by his developing blindness. *Id.* ¶¶ 159–61. Mr. Courtney was likewise removed from his job as a prison advisor because of his blindness. *Id.* ¶ 162.

Once again, Defendants reduce the sum total of Plaintiffs' allegations to a single Plaintiff's allegations. They reference that Mr. Hajacos has alleged that he was forced to give up his job in order to keep the accommodations in his housing unit. Defs.' Mot. at 27 (citing Compl. ¶ 163). Indeed, Mr. Hajacos has alleged that he was forced to choose between moving housing pods and giving up his housing accommodations to keep his job at the woodshop. Compl. ¶ 163. He decided to keep his accommodations, and he has not had a job since. *Id.* Defendants seem to imply that, if Mr. Hajacos gave up his job for his accommodations, then those accommodations cannot be inadequate under the ADA. Defs.' Mot. at 27. This is incorrect as a matter of law. State prisons are required to provide equal access to disabled prisoners to *all* of the benefits they confer on non-disabled prisoners. *Yeskey*, 524 U.S. at 210. Forcing Mr. Hajacos to choose between his accommodations and his work assignment necessarily states a

45

claim under Title II, because this constitutes discrimination on the basis of his disability. *Compare* Compl. ¶ 163, *with Lamone*, 813 F.3 at 502–03. Defendants' argument is meritless.

### v.   Plaintiffs alleged a failure to provide reasonable modifications.

Plaintiffs have likewise sufficiently alleged a failure to provide reasonable modifications. Public entities are required to provide "reasonable modifications to rules, policies, or practices, the removal of architectural, communication or transportation barriers, or the provision of auxiliary aids and services" to ensure equal access to programs and services. 42 U.S.C. § 12131(2); 28 C.F.R. § 35.130(b)(7).

Plaintiffs have alleged that the VDOC Defendants have continually failed to provide necessary reasonable modifications to accommodate blind prisoners. Compl. ¶ 164. As the reasonableness of an accommodation is "is generally fact-specific," *Halpern*, 669 F. 3d at 464, this Court should not resolve these factual disputes at this stage in the litigation. Plaintiffs have alleged specific accommodations were denied to individual Plaintiffs.

Defendants fail to address the specific accommodations that they denied all Individual Plaintiffs. *See* Compl. ¶¶ 179 (Mr. Courtney), 183–93 (Mr. McCann), 194–99 (Mr. Hajacos). Instead, Defendants focus only on Mr. Hajacos, arguing that he failed to state a claim when several of his requested accommodations were not given to him. Defs.' Mot. at 27. This argument holds no water. First, Mr. Hajacos alleged that he requested several accommodations, including a larger television, a magnifier or magnifying glasses, an external keyboard for his JP6 tablet, and a reading light. Compl. ¶ 199. Contrary to what Defendants claim, all of these accommodations would allow him to participate in services afforded to sighted prisoners, such as watching television, reading printed materials, and using the JP6 tablet, thereby qualifying as effective auxiliary aids. *See, e.g.*, Compl. ¶¶ 77–78 (outlining accessible printed and electronic formats and the inaccessible JP6 tablet), 168 (outlining a similar television accommodation that

was granted to Mr. Courtney); 28 C.F.R. § 35.104 (defining auxiliary aids). Mr. Hajacos need not specifically plead *when* this denial took place in order to state a claim under the ADA. Mr. Hajacos has alleged that he requested reasonable accommodations and they were not granted. Compl. ¶ 199. He need not allege more.

> ### vi.    Plaintiffs alleged a failure to provide reasonable modifications in housing.

Plaintiffs have likewise sufficiently alleged a failure to provide reasonable accommodations in housing. Plaintiffs at Deerfield have alleged that they live in dorm-style housing when they should be living in single cells that are currently used for storage. Compl. ¶¶ 200, 203. They further allege that they face a risk of physical injury from the dorm-style layout of the housing, as there are frequently obstructions in the aisles that pose a tripping hazard. *Id.* ¶ 204.

Being forced to use communal showers also puts blind prisoners at Deerfield at risk of sexual assault and harassment. Mr. McCann alleges that a fellow prisoner would masturbate while he was in the shower, thinking that he could not see him. *Id.* ¶ 205. Mr. Shaw lived in one of the single cells at Deerfield before he was forced to move into a dorm-style pod. As a result, he can no longer shower independently in the communal shower, as he is forced to rely on his Caregiver to assist him. *Id.* ¶ 206–07. When he was separated from his Caregiver during the COVID-19 pandemic, he was forced to pay other prisoners to take him to the shower. *Id.* ¶ 208. If he were in a single cell, he would be able to shower independently and privately. *Id.* ¶ 209.

Disabled prisoners at Greensville, by contrast, are all housed together in an "ADA pod." *Id.* ¶ 210. Cellmates' belongings can present tripping hazards to a blind prisoner. *Id.* ¶ 212. Cellmates may also move or steal a blind prisoner's property, leaving them unable to find their possessions. *Id.* Mr. Rogers, who is housed at Greensville, was previously given a single-cell

order on account of his blindness. *Id.* ¶ 211. Despite this medical order, Mr. Rogers was denied a single cell upon his transfer to Deerfield, and then Greensville. *Id.* ¶ 213. Mr. Rogers submitted a request for a single cell to Defendant Talbott but never received a response. *Id.* ¶ 214.

Defendants do not dispute the bulk of these allegations. Instead, they cherry-pick Mr. McCann being sexually harassed in the shower as proof that Plaintiffs failed to state a claim because they did not show that Mr. McCann was not excluded from using the shower because of his disability. Defs.' Mot. at 27-28. But the gravamen of Plaintiffs' complaint with regards to housing is a failure to accommodate, not a complete denial of access. *See* Compl. at 31. Title II requires Defendants "to provide safe housing to disabled and non-disabled inmates alike." *Brown*, 383 F. Supp.3d at 558; *see also Spencer v. Earley*, 278 F. App'x. 254, 258 n.2 (4th Cir. 2008) (allowing Rehabilitation Act claim by inmate based on denial of single-cell housing "as necessitated by his disability"); *Arenas v. Georgia Dep't of Corrs.*, No. CV416-320, 2018 WL 988099, at *8 (S.D. Ga. Feb. 20, 2018) (denying defendant's motion to dismiss ADA claim based on failure to provide accommodation of "appropriate cell"). By failing to accommodate Mr. McCann by giving him a single cell with a shower stall "as necessitated by" his blindness, Defendants failed to accommodate him and put him at risk of sexual harassment and assault.

Likewise, Defendants misunderstand Mr. Shaw's claim regarding his housing assignment. Defendants point to Mr. Shaw having received assistance to enter the shower as evidence that he was accommodated. Defs.' Mot. at 28. But Mr. Shaw received assistance *from other prisoners* and had to pay them to receive that assistance. Compl. ¶ 208.[27] As stated above,

---

[27] Defendants also assert that the mere existence of an "assisted living unit with trained nursing staff who can assist inmates with . . . bathing and/or dressing" is enough to show that Mr. Shaw failed to state a claim under Title II. Defs.' Mot. at 28 n.17. Once again this misunderstands the nature of Mr. Shaw's claim. He did not assert exclusion from the showers, but rather a failure to

courts have consistently held that reliance on non-disabled prisoners is an inadequate remedy for a public entity's refusal to provide accommodations under Title II. *See, e.g.*, *Wright*, 831 F.3d at 74; *Armstrong*, 732 F.3d at 960; *Pierce*, 526 F.3d at 1219–20; *Wright*, 242 F. Supp. 3d at 138. Accordingly, Plaintiffs have stated a Title II claim for failure to accommodate in housing.

> ### D.    Sovereign immunity does not bar Plaintiffs' Title II claim for damages.

Defendants argue that Eleventh Amendment sovereign immunity bars Plaintiffs' Title II claim for damages. Defs.' Mot. at 28–34. This argument is unavailing. Congress has expressly abrogated states' sovereign immunity under the ADA. *See* 42 U.S.C. § 12202; *Tennessee v. Lane*, 541 U.S. 509, 518 (2004). This express abrogation is valid if it was accomplished "pursuant to a valid grant of constitutional authority." *Id.* at 517 (citation omitted). Accordingly, "Congress can abrogate a State's sovereign immunity when it does so pursuant to a valid exercise of its power under Section 5 of the Fourteenth Amendment to enforce the substantive guarantees of that Amendment." *Id.* at 518 (citation omitted).

Section Five of the Fourteenth Amendment is an affirmative grant of legislative power, *see Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 81 (2000), that gives Congress the "authority both to remedy and to deter violation of [Fourteenth Amendment] rights . . . by prohibiting a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text." *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 727 (2003) (internal quotation marks omitted). Section Five "is a broad power indeed," *Lane*, 541 U.S. at 518 (citation omitted), that empowers Congress not only to remedy past violations of constitutional

---

accommodate his disability by failing to place him in a single cell with an accompanying single shower. Compl. ¶¶ 203, 206, 209. Plaintiffs allege that Deerfield has the assisted living unit that Defendants describe, but they note that Mr. Shaw instead lives in "a dorm-style pod with the general population." *Id.* ¶¶ 204, 206. The existence of the unit does not undermine Mr. Shaw's claim.

rights, but also to enact "prophylactic legislation that proscribes facially constitutional conduct, in order to prevent and deter unconstitutional conduct." *Hibbs*, 538 U.S. at 727–28. Thus, Congress may prohibit "practices that are discriminatory in effect, if not in intent, to carry out the basic objectives of the Equal Protection Clause." *Lane*, 541 U.S. at 520.

To determine whether Congress has validly abrogated a state's sovereign immunity pursuant to its Section 5 authority, courts must follow the three-part test in *City of Boerne v. Flores*, 521 U.S. 507 (1997). This Court should consider: (1) the "constitutional right or rights that Congress sought to enforce when it enacted Title II," *Lane*, 541 U.S. at 522; (2) whether there was a history of unconstitutional disability discrimination to support Congress's determination that "inadequate provision of public services and access to public facilities was an appropriate subject for prophylactic legislation," *id.* at 529; and (3) "whether Title II is an appropriate response to this history and pattern of unequal treatment" as applied to the class of cases implicating conditions of confinement in prisons, jails, and detention centers.[28] *Id.* at 530.

In passing the ADA, Congress sought to enforce rights under the Equal Protection Clause, as well as an array of rights subject to heightened scrutiny under the Due Process Clause of the Fourteenth Amendment. *Id.* at 522–23. The Supreme Court has also held that Congress relied on a sufficient historical predicate of unconstitutional disability discrimination to justify broad prophylactic legislation. *Id.* at 523–28; *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 485 (4th Cir. 2005). The third factor, the appropriateness of Congress's response to this history, or the "congruence and proportionality between the injury to be

---

[28] Applied here, the "class of cases" at issue is the broad class involving conditions of confinement in detention facilities. *See Lane*, 541 U.S. at 531 (Title II's abrogation is valid for "the class of cases implicating the accessibility of judicial services."); *Constantine*, 411 F.3d at 488 (Title II's abrogation is valid for "the class of cases implicating the right to be free from irrational disability discrimination in public higher education.").

prevented or remedied and the means adopted to that end," is also satisfied, as discussed below. *Lane*, 541 U.S. at 520.

        **i.**        **Title II is an appropriate response to the long history of constitutional violations that people with disabilities have suffered in detention settings.**

In *Amos v. Maryland Department of Public Safety and Correctional Services*, the Fourth Circuit held that Title II validly abrogated the Maryland Department of Public Safety and Correctional Services' sovereign immunity in the context of disability rights in prison. 178 F.3d 212, 223 (4th Cir. 1998), *rehearing en banc granted, judgment vacated* (1999). After rehearing *en banc* was granted, the parties settled the case, avoiding the *en banc* decision. However, it remains clear that the ADA constitutes a valid abrogation of sovereign immunity in this context. Given the vast array of constitutional rights at stake in prisons and other detention settings, as well as the pervasive history of disability discrimination rising to the level of constitutional violations in the detention context, Title II's limited relief is congruent and proportional to the injury Congress sought to prevent and remedy in passing Title II.

In the detention context, as in the access-to-courts context at issue in *Lane*, Title II protects not only the Equal Protection Clause's "prohibition on irrational disability discrimination," but also "a variety of other basic constitutional guarantees, infringements of which are subject to more searching judicial review." *See Lane*, 541 U.S. at 522–23. As Justice Stevens noted in *United States v. Georgia*, the prison context implicates a "constellation of rights." 546 U.S. 151, 162 (2006) (Stevens, J., concurring). Such rights include: (1) the Equal Protection Clause's protection from arbitrary and irrational discrimination, *see Lane*, 541 U.S. at 540 (Rehnquist, J., dissent); (2) fundamental rights subject to heightened scrutiny under the Due Process Clause, such as the right of access to the courts, *see Younger v. Gilmore*, 404 U.S. 15 (1971); *Johnson v. Avery*, 393 U.S. 483 (1969); *Ex parte Hull*, 312 U.S. 546 (1941), the right to

"enjoy substantial religious freedom" *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974), the right to

marry, *see Turner v. Safley*, and the right to free speech, *see Pell v. Procunier*; (3) the Due

Process Clause's promise of fair proceedings, including in the denial of benefits or programs

created by state regulations and policies, *see, e.g.*, *Greenholtz v. Inmates of Neb. Penal & Corr.*

*Complex* (parole); *Wolff*, 418 U.S. at 557 (good time credits), *id.* at 571–72 & n.19 (solitary

confinement); *Gagnon v. Scarpelli* (probation), in the administration of antipsychotic drugs, *see*

*Washington v. Harper*, 494 U.S. 210, 279–34, involuntary transfer to a mental hospital, *see Vitek*

*v. Jones*, and parole hearings, *see Young v. Harper*, 520 U.S. 143, 152–53; and (4) the Eighth

Amendment right to be free from cruel and unusual punishment, which includes restrictions on

use of excessive physical force, *see Hudson v. McMillian*, the "unnecessary and wanton infliction

of pain," *Hope v. Pelzer* (citations omitted), and deliberate indifference to serious medical needs,

*see Estelle v. Gamble*,  as well as the affirmative duties to "ensure that inmates receive adequate

food, clothing, shelter, and medical care," *Farmer v. Brennan* 511 U.S. 825, at 832–33 (1994),

and to "take reasonable measures to guarantee the safety of the inmates," *Hudson v. Palmer*, 468

U.S. 517, 526–27 (1984).

For prisoners with disabilities, the pattern of constitutional violations in detention settings

has been pervasive. The United States submitted a brief as an intervenor in *Johnson v. Neiman*,

504 F. App'x 543 (8th Cir. 2013), detailing the long history of violations and arguing that, as a

result, in passing Title II, Congress validly abrogated sovereign immunity in the prison context.

*See* Br. for the United States as Intervenor at 28-40, *Johnson*, 504 Fed. App'x. 543 (8th Cir.

2013). The United States correctly concluded that "[a]gainst that background of discrimination,

Title II of the ADA is well tailored in the prison context—as in others—to protect against and

remedy constitutional violations without infringing on public entities' legitimate prerogatives." *Id.* at 41.

Indeed, given our nation's long and extensive history of violating the constitutional rights of prisoners with disabilities, the remedies Congress created in passing Title II are quite limited. Title II only prohibits public entities from discriminating because of an individual's disability; public entities remain free to exclude individuals for other lawful reasons unrelated to disability. 42 U.S.C. § 12132. Rather than requiring that public entities cease discriminatory conduct at any cost, Title II limits modifications to those that are "necessary," and "reasonable," and provides defenses for actions that would "fundamentally alter the nature of the service, program, or activity" 28 C.F.R. § 35.130(b)(7), or "result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens," 28 C.F.R. § 35.164 or pose a "direct threat to the health or safety of others." 28 C.F.R. § 35.139(a).

These important limitations on the scope of Title II "tend to ensure Congress' means are proportionate to ends legitimate under § 5." *Constantine*, 411 F.3d at 489 (quoting *City of Boerne*, 521 U.S. at 533). Because Title II's requirements are congruent and proportional to the constitutional violations they remedy and prevent in the detention context, Congress validly abrogated sovereign immunity. *See Zemedagegehu v. Arthur*, No. 1:15CV57 (JCC/MSN), 2015 WL 1930539, at *15 (E.D. Va. Apr. 28, 2015) (In the "context of a local jail," sovereign immunity was validly abrogated by Title II in light of the "wide latitude given to Congress," and because Title II falls "within the sweep of Congress' enforcement power even if in the process it prohibits conduct which is not itself unconstitutional.") (quoting *Constantine*, 411 F.3d at 490).

Defendants ignore this history and instead insist on a novel application of the *City of Boerne* test. Defendants seek to apply the "congruence and proportionality" factor to the

substance of Plaintiffs' allegations in arguing that they do not state a claim for damages under the ADA. Defs.' Mot. at 30–33. But this factor applies to *Congress*'s ability to enact legislation that abrogates sovereign immunity under Section 5, not whether a litigant can state a claim for damages under the ADA. *See City of Boerne*, 521 U.S. at 529 (citing *South Carolina v. Katzenbach*, 383 U.S. 301, 308 (1966)). Whether a litigant may state a claim for damages is a separate legal inquiry that Defendants do not address. *See Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 829–30 (4th Cir. 1994). As a matter of sovereign immunity, Defendants' argument fails for the reasons outlined above.

> ### ii. Because sovereign immunity is abrogated in the class of prison cases, this Court need not determine whether each Title II claim constitutes a constitutional violation.

Defendants argue that Plaintiffs' claims are barred by sovereign immunity because they do not independently allege conduct that violates both Title II and the Fourteenth Amendment to the U.S. Constitution. Defs.' Mot. at 31–34. This is incorrect as matter of law. In *Lane*, the Supreme Court established that abrogation of sovereign immunity under the ADA is decided with respect to broad "class(es) of cases." *Lane*, 541 U.S. at 531 (finding Title II abrogation valid with respect to "the class of cases implicating the accessibility of judicial services"). Thus, the Court did not engage in a fact or claim-specific inquiry in deciding whether Congress had validly abrogated immunity for the broad category of judicial services. Nor did the Court assess whether the plaintiffs in *Lane* had actually been prevented from appearing in court. *Id.* at 513-14. Instead, the Court framed the abrogation question broadly as relating "to the class of cases implicating the accessibility of judicial services." *Id.* at 531.

The Fourth Circuit followed this approach in *Constantine*, where it held Title II validly abrogated sovereign immunity in the broad "context of public higher education," not simply with respect to the specific facts presented in that case. 411 F.3d at 488. In applying the three-part

*City of Boerne* test, the Fourth Circuit considered the overall context of higher education, not whether the plaintiff's specific claims amounted to constitutional violations. *Id.* As the court explained:

> The remedial measures employed in Title II may not be a perfect fit for the pattern of discrimination that Congress sought to remedy and deter, but they need not be. The Court has made it clear that prophylactic legislation such as Title II "can fall within the sweep of Congress' enforcement power even if in the process it prohibits conduct which is not itself unconstitutional." *City of Boerne,* 521 U.S. at 518, 117 S. Ct. 2157. Thus, the question is not *whether* Title II exceeds the boundaries of the Fourteenth Amendment, but *by how much.*

*Id.* at 490.

Notably, the Supreme Court did not change this "class of cases" analysis in *United States v. Georgia*. In *United States v. Georgia*, the Court simply held that where a plaintiff's particular Title II claim also constitutes a constitutional violation, sovereign immunity is validly abrogated for that claim , even if the claim is part of a broader class of cases where Congress's abrogation of sovereign immunity would be invalid. 546 U.S. at 159. The Court did not have to reach the issue of whether sovereign immunity was validly abrogated in the class of prison or conditions of confinement cases because it could reverse the Eleventh Circuit's decision on the narrower ground that where a claim alleged conduct that, itself, constituted a constitutional violation, sovereign immunity would, of course, be abrogated for that claim. *Id.* at 158 (reasoning that "[w]hile the Members of this Court have disagreed regarding the scope of Congress's 'prophylactic' enforcement powers under § 5 of the Fourteenth Amendment . . . no one doubts that § 5 grants Congress the power to 'enforce . . . the provisions' of the Amendment by creating private remedies against the States for *actual* violations of those provisions").

Because the class of detention cases satisfies each of the three *City of Boerne* factors, sovereign immunity is validly abrogated in this prison case and this Court should decline to

assess each of Plaintiffs' claims independently. Nevertheless, several of Plaintiffs' claims independently constitute constitutional violations: (1) claims related to denial of access to the grievance process, and to the law library, constitute a violation of the Fourteenth Amendment because they represent infringement of the right to access the courts; and (2) claims related to the Defendants' failure to allow Plaintiffs to read and write independently and to reside safely in single cells both amount to claims of cruel and unusual punishment in violation of the Eighth Amendment, which applies to the states through the Fourteenth Amendment. *See Rhodes v. Chapman*, 452 U.S. 337, 345 (1981). In addition, some of Plaintiffs' claims also violate the Equal Protection Clause of the Fourteenth Amendment, because Defendants' discriminatory actions are not rationally related to a legitimate government interest. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985).

As a result, Defendants' arguments related to co-extensive ADA and constitutional violations are meritless. For example, Defendants argue that because there is "no constitutional right to employment while incarcerated," Plaintiffs' allegations do not state a constitutional violation. Defs.' Mot. at 33 (citation omitted). But Plaintiffs do not argue that they have a constitutional right to employment. Rather, Plaintiffs allege that *disability discrimination* in employment violated their rights under Title II. Compl. ¶¶ 144, 152. This could also be seen as a co-extensive violation of their rights under the Equal Protection Clause of the 14th Amendment, because the alleged denial of Grade 3 work assignments and alleged termination on the basis of vision loss is rooted in "irrational prejudice" towards the blind and their capabilities, and not a legitimate government interest. *City of Cleburne*, 473 U.S. at 450.

Thus, even if the Court does not find that Congress validly abrogated sovereign immunity in the class of prison cases, it should preserve these portions of Plaintiffs' Title II claims that also constitute Fourteenth Amendment violations.

## VII.   Plaintiffs adequately allege a Section 504 claim.

In addition to their claim under Title II, Plaintiffs have also stated a claim under Section 504 of the Rehabilitation Act, under which Defendants have waived any sovereign immunity. Defendants erroneously argue that any analysis of discrimination under both statutes must be different because Section 504 requires that a plaintiff establish that they were "excluded solely by reason of his disability." Defs.' Mot. at 36 (quoting *Halpern*, 669 F.3d at 461–462) (internal quotation marks and citations omitted).[29] Defendants argue that Plaintiffs failed to state a claim under Section 504—as opposed to Title II—because they did not show that Defendants discriminated against them solely by reason of their disability. *Id.* at 28. However, Plaintiffs have, in fact, alleged that Defendants' discrimination was "solely" based on their disability, Compl. ¶¶ 278, 284, and no facts suggesting any other basis for the alleged discrimination appears in the Complaint. As Plaintiffs are required only to allege, not to prove, their claims at this stage, Plaintiffs' allegations are sufficient.

In each section, Plaintiffs have alleged support to indicate that their blindness was the basis of their exclusion from Defendants' programs and services. *Halpern*, 669 F.3d at 461–62. But for their blindness, they would not need various VDOC documents to be printed in accessible formats, as they would have equal and independent access to those materials.

---

[29] Defendants also attempt to reassert their argument on Rules 8 and 10 of the Federal Rules of Civil Procedure with respect to Plaintiffs' Section 504 claim. *See* Defs.' Mot. at 36. Defendants baldly assert without legal support that such "collective pleading" is improper. *Id.* Defendants' argument fares no better here and must be rejected for the same reasons outlined in Section II, *supra*.

Compl. ¶ 97. But for their blindness, they would have equal and independent access to the grievance and medical request forms, as well as their own mail, and would not have to rely on sighted prisoners called Caregivers to complete those tasks. *Id.* ¶¶ 99–126. But for their blindness, they would not need to use the screen reader, SARA machine, and other assistive technology to equally access materials in the law libraries at Deerfield and Greensville. *Id.* ¶¶ 127–32.

The same is true for educational and vocational opportunities. Plaintiffs have alleged that VDOC fails to provide information concerning educational and vocational programs in accessible formats. They have further alleged that VDOC has failed to make materials in those educational and vocational programs accessible. *Id.* ¶¶ 135–36. But for their blindness, Plaintiffs would not require those materials in accessible formats.

## CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss.

Respectfully submitted,

Eve L. Hill
Monica R. Basche (*pro hac vice*)
Evan Monod (*pro hac vice*)
Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 2500
Baltimore, Maryland 21202
410.962.1030
ehill@browngold.com
mbasche@browngold.com
emonod@browngold.com

Vishal Agraharkar
Samantha Westrum
American Civil Liberties Union of Virginia
701 E. Franklin Street, Suite 1412

Richmond, Virginia 23219
804.644.8022
vagraharkar@acluva.org
swestrum@acluva.org

Rebecca Herbig
disAbility Law Center of Virginia
1512 Willow Lawn Drive, Suite 100
Richmond, Virginia 23230
804.225.2042
Rebecca.Herbig@dlcv.org

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 14th day of June 2023, I filed the foregoing electronically

with the Clerk of the Court using the CM/ECF system, with copies to the following attorneys:


Kenneth T. Roeber, Esq. (VSB No. 41850)
Michelle L. Warden, Esq. (VSB No. 77266)
Wimbish Gentile McCray & Roeber PLLC
8730 Stony Point Parkway, Suite 201
Richmond, VA 23235
804-655-4830– Telephone
804-980-7819 – Facsimile
kroeber@wgmrlaw.com
mwarden@wgmrlaw.com

Patrick Burns, Esq. (VSB No. 80188)
Gordon Rees Scully Mansukhani, LLP
1101 King Street, Suite 520
Alexandria, VA 22314
(202) 370-8003
Pburns@grsm.com
*Counsel for Defendant VitalCore Health Strategies*

Laura Maughan, Esq. (VSB No. 87798)
Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, VA 23219
(804) 786-0030
lmaughan@oag.state.va.us

*Counsel for Defendants Barry Marano, Darrell Miller, Harold Clarke, Kevin Punturi, Lakiesha Shaw, Lane Talbott, Larry Edmonds, Officer D. Smith, Tammy Williams, and the Virginia Department of Corrections*


_____/s/ *Eve L. Hill*_____
Eve L. Hill