# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**THE NATIONAL FEDERATION**
**OF THE BLIND OF VIRGINIA**, *et al.*,

    **Plaintiffs,**

                                   **Case No. 3:23-cv-127-HEH**

    **v.**

**VIRGINIA DEPARTMENT OF**
**CORRECTIONS,** *et al.*,

    **Defendants.**

## SETTLEMENT AGREEMENT

This Agreement is entered into by the Plaintiffs National Federation of the Blind of Virginia ("NFB-VA"), Nacarlo Courtney, William Hajacos, Michael McCann, and Kevin Muhammad Shabazz ("Plaintiffs"), and the Defendant the Virginia Department of Corrections ("VDOC" or Defendant) and is for the purpose of settling all claims asserted against Defendant in *National Federation of the Blind of Virginia, et al. v. Virginia Department of Corrections, et al.*, Case No. 3:23–cv–00127 ("the Dispute"). Pursuant to this Agreement, the Parties agree as follows:

1. **Definitions:**

   a. "Accessible Formats" include large print, audio, and/or accessible electronic formats. Which Accessible Format will be required for a particular document or situation will depend on the needs of the Blind Prisoner and on the context and use of the document or situation.

   b. "Assistive Technology" means any item, piece of equipment, software program, or product system that is used to increase, maintain, or improve the functional capabilities of Blind persons.

   c. "Auxiliary Aids and Services" has the meaning assigned to it in 28 C.F.R. § 35.104.

   d. "Blindness/Blind" means the inability to see and usually, but not always, occurs when a person's vision is 20/200 or worse or a person's visual field is less than 20 degrees. Accordingly, the term "blind prisoners" includes people with low vision and other vision impairments that substantially limit their ability to see as determined by a medical professional.

e. "Blindness Skills" means mobility and orientation, computer, and assistive technology use (including typing, use of screen readers, low vision alternatives, and other assistive technology), the ability to effectively communicate in writing, and vocational and independent living/environment management skills.

f. "DBVI" means the Virginia Department for the Blind and Vision Impaired.

g. "Deerfield" means Deerfield Correctional Center.

h. "Effective Date" means the date this Agreement is signed by all Parties.

i. "Greensville" means Greensville Correctional Center.

j. "Health Care Appliance" means an assistive device or medical support equipment which has been prescribed for an inmate and/or approved by a licensed health care provider. Health Care Appliance includes, but is not limited to, canes, prescription eyeglasses, protective eyewear, and artificial eyes.

k. "Independent" or "Independently" means without assistance from others.

l. "Individual Accommodations List" means a list of a Blind Prisoner's trainings and other accommodations that have been approved by the VDOC facility where he or she is housed.

m. "Facility Auxiliary Aids List" means a nonexhaustive list of Accessible Formats, Assistive Technology, Health Care Appliances, and Reasonable Modifications possibly available to Prisoners and the processes for requesting them as described in Paragraph 3(c)(i)(3) and Paragraph 3(d)(vi);

n. "Key Print Materials" means printed materials provided by VDOC for regular or repeated use among Prisoners or all Prisoners at a particular facility, including:

    i. VDOC Prisoner Handbooks;
    ii. VDOC Prisoner Orientation Materials;
    iii. VDOC publicly available Operating Procedures, Administrative Regulations, and Policies;
    iv. VDOC Materials available to Prisoners to prepare for or request parole, community corrections, or release to the extent these exist;
    v. VDOC memoranda and written announcements posted for Prisoners to review or intended to convey information to Prisoners;
    vi. VDOC Forms and information that are routinely provided to Prisoners related to:
        1. Grievance and discipline processes;

      2. Classification proceedings;
      3. VDOC Medical forms which Blind Prisoners are required to fill out or sign, including sick call slips, emergency medical request forms, refusal of treatment forms, permission slips to share medical records with Prisoners' family members, vaccination forms, but these medical forms do not include Blind Prisoners' medical records;
      4. Requests for Reasonable Accommodation;
      5. Facility Request forms;
      6. Lists of items available through purchase on commissary;
      7. Property forms;
      8. Prisoner banking;
      9. Telephone approvals;
      10. Visitor lists.

  o. "Prisoner" means an individual incarcerated in the custody of VDOC.

  p. "Qualified Caregiver" means a sighted Prisoner with a Grade 3 work assignment (as it is defined in VDOC Operating Procedure 841.2(III)(C)(6)(c)) who has a GED or high school diploma, is able to read and write effectively, accurately, and impartially, is not a member of a security threat group, and has received training as set forth in Paragraph 3(g)(ii–iii).

  q. "Reasonable Modifications" are reasonable changes to policies, practices or procedures, or the provision of services, equipment, or technology to accommodate the disability of a Blind Prisoner.

**2. <u>Monetary Terms:</u>** Within ninety (90) days of the execution of this Agreement, VDOC will pay **<u>$250,000</u>** to Plaintiffs. This amount is inclusive of attorneys' fees and costs. This sum will be provided by check addressed to the American Civil Liberties Union Foundation of Virginia.

**3. <u>Non-Monetary Terms:</u>**

  a. Construction

      i. Nothing in this Agreement shall be construed to eliminate or limit any of the accommodations, Accessible Formats, Assistive Technologies, Auxiliary Aids and Services, or other Reasonable Modifications that have been available to Blind Prisoners prior to the execution of this Agreement.
      ii. Nothing in this Agreement shall be construed to require VDOC to take away or restrict any particular accommodations, Accessible Formats, Assistive Technologies, Auxiliary Aids and Services, or other Reasonable Modifications that are currently in use by Blind Prisoners.

      iii. VDOC will endeavor to comply with all time limits set forth in this Agreement. However, to the extent it is unable to do so because of exigent circumstances, security or administrative needs, or other factors beyond its control, this shall not constitute a breach of the Agreement. VDOC will inform Plaintiffs' counsel immediately upon determining that it will be unable to meet a deadline that is dependent upon the Effective Date of this Agreement.

b. Evaluation

      i. Within ninety (90) days of the Effective Date of this Agreement, VDOC will implement a policy whereby all Prisoners are given a vision test at intake by the Medical Department. When a Prisoner is transferred, the receiving facility will review the Prisoner's previous eye examination and offer the Prisoner the opportunity to take a new eye examination, unless the Prisoner will be housed at the receiving facility for seven (7) or fewer days.

          1. For Prisoners who become Blind or for other reasons are not identified as Blind at intake, upon the Prisoner's request, VDOC will timely evaluate Prisoners to determine whether they are Blind.

      ii. If, after all necessary evaluations are complete and the Prisoner is deemed to be Blind by a medical provider, within ten (10) days, VDOC will request that, at its earliest availability, DBVI evaluate the Prisoner to assess his or her basic Blindness Skills, appropriate Accessible Formats, Assistive Technology, Auxiliary Aids and Services, and other Reasonable Modifications, and training needs.

      iii. Within thirty (30) days of receiving the assessment from DBVI, the ADA Coordinator or an Assistant ADA Coordinator at the Blind Prisoner's facility will meet with the Prisoner to discuss the findings of the assessment and what training and other accommodations the Prisoner is interested in receiving based on DBVI's recommendations.

      iv. Within fourteen (14) days of the meeting between the Blind Prisoner and the ADA or Assistant ADA Coordinator, upon agreement of the Blind Prisoner and VDOC, VDOC will request the trainings and other accommodations, Assistive Technology, Auxiliary Aids and Services, and Accessible Formats recommended for or required by the Blind Prisoner and will provide them. If VDOC denies a training, accommodation, Assistive Technology, Auxiliary Aids or Service recommended by DBVI, VDOC will provide an explanation in writing stating the reasons why that training, accommodation, Assistive Technology, Auxiliary Aids or Service constitutes an undue burden, fundamental alteration, or safety or security concern.

      v. The Blind Prisoner's trainings and other accommodations will be documented on his or her Individual Accommodations List in the

Prisoner's file with the ADA Coordinator, as well as in a file accessible to the Chief of Housing and Programs. Individual Accommodations Lists will be accessible to any staff member under the supervision of the Chief of Housing and Programs. VDOC will notify staff at each facility that Individual Accommodations Lists exist, where they are kept, and appropriate storage of the lists. Whenever a new accommodation is granted for an individual Blind Prisoner, the ADA Coordinator will update that Prisoner's Individual Accommodations List and notify staff in the Blind Prisoner's pod or housing unit of the update. Each Blind Prisoner will receive a copy of his or her Individual Accommodations List in an Accessible Format.

vi. The Individual Plaintiffs who are in VDOC custody will be subject to the evaluation and planning process described in Paragraphs 3(b)(ii–iv), which VDOC will initiate within ninety (90) days of the Effective Date of this Agreement. Within ninety (90) days of the Effective Date of this Agreement, VDOC will inform other Prisoners who are currently identified by VDOC as Blind, verbally and in large print, that they have the option of having an evaluation of their Blindness Skills and the need for training and alternative formats conducted by DBVI, which may entitle them to training and other accommodations, Assistive Technology, Auxiliary Aids and Services, and Accessible Formats. For Prisoners who request the evaluation and planning, it will be provided as described in Paragraphs 3(b)(ii–iv).

vii. Any time after intake, if a Blind Prisoner requests a Blindness Skills evaluation, a particular Blindness Skills training, or training on a particular Accessible Format, Assistive Technology, Auxiliary Aid or Service, or other Reasonable Modification, VDOC will follow the protocols outlined in Paragraph 3(d) of this Agreement and VDOC Operating Procedure 801.3 to evaluate the request. If the request is granted, VDOC will follow the protocols outlined in Paragraph 3(b)(ii–iv) to work to obtain that training. VDOC may also utilize the services of another qualified state agency to the extent that DBVI is unavailable, and the other state agency offers the training or services requested.

viii. VDOC and DBVI shall not be required to provide training or accommodations to a Blind Prisoner who refuses those trainings or accommodations.

c. Orientation

i. Within ninety (90) days of the execution of this Agreement, as part of VDOC's intake and orientation process at its facilities, VDOC shall make available comprehensive information in Accessible Formats on the

following subjects (and will notify Blind Prisoners that these Accessible Formats are available):

1. Their rights as individuals with disabilities;
2. The contact information and responsibilities of the VDOC ADA Coordinator and the ADA Coordinator at that facility;
3. A nonexhaustive list of Accessible Formats, Assistive Technology, Health Care Appliances, and Reasonable Modifications possibly available to them and the processes for requesting them;
4. The availability of and/or the ability to request the services of a Qualified Caregiver;
5. The availability of the training described in Paragraph 3(b)(ii); and
6. A physical orientation to the facility in which the Blind Prisoner will be housed, conducted by a VDOC staff member who has received training in orientation and mobility.

ii. Plaintiffs who are in VDOC custody will receive the documents described above in Paragraph (3)(c)(i) within ninety (90) days of the Effective Date of this Agreement. Notice will be posted in all housing units where Blind Prisoners live (and Accessible Formats of that Notice will be made available) informing them of the availability of these documents in Accessible Formats and from whom to request them.

d. Accommodations

i. Within ninety (90) days of the Effective Date of this Agreement, VDOC will amend Operating Procedure 801.3, Managing Offenders with Disabilities, consistent with the terms of this Agreement, to include the following:

1. Who is involved in the process of determining whether to grant, deny, or modify a request for accommodation, Accessible Format, or Auxiliary Aid or Service; and
2. Who has final authority to determine whether to grant, deny, or modify a request for accommodation, Accessible Format, or Auxiliary Aid or Service.

ii. VDOC shall give primary consideration to the preferred Accessible Format and other Auxiliary Aids and Services of the Blind Prisoner, meaning it will honor their expressed choice unless it can demonstrate that another equally effective means of communication is available or that the Blind Prisoner's expressed choice presents an undue burden, fundamentally alters the program or activity in question, or poses a threat to safety and security.

iii. Any Accessible Formats, Assistive Technology, or Reasonable Modifications determined by VDOC to be appropriate for a Blind Prisoner shall be provided to them at any facility at which they are housed subject to safety and security concerns, or whether it would constitute an undue burden or fundamental alteration. The Parties understand that some

accommodations that are available at lower level VDOC facilities may not be approved at higher level VDOC facilities. Accommodations approved for a Blind Prisoner at one facility will remain approved for that Prisoner in the event of a transfer to another facility, unless the Prisoner has been found to have abused the accommodation, the accommodation is subsequently found to present a general security or administrative risk, or due to the particular security concerns of the receiving facility, allowing the accommodation would be an undue burden, fundamental alteration, or threat to safety and security at the receiving facility. VDOC will start the process for providing Accessible Formats, Assistive Technology, Health Care Appliances, or other Auxiliary Aids and Services or Reasonable Modifications previously approved for a Blind prisoner at the receiving facility within five (5) days of the Blind Prisoner's arrival at the receiving facility and upon his or her placement in his or her housing status. Blind Prisoners will be permitted to take the following priority accommodations with them in transit to the new facility: white canes, sunglasses, handheld magnifiers, talking watches, writing guides, and personal scanners, subject to the security concerns of the receiving facility. Blind Prisoners will not be required to pay to ship a box of their personal property that contains exclusively Auxiliary Aids approved for them at that facility.

iv. If VDOC denies a request for a Reasonable Modification or an Auxiliary Aid or and Service, VDOC must document in writing how the denial meets the requirements of 28 C.F.R. § 35.164. VDOC will document every denial of a request for Reasonable Modifications and Auxiliary Aids and Services and maintain such documentation in a Prisoner's ADA file or other appropriate setting consistent with VDOC's document retention policies.

v. All written requests for accommodation and responses to those requests (including denials) will be maintained in a Prisoner's ADA file in accordance with typical VDOC document retention policies.

vi. Within ninety (90) days of the Effective Date of this Agreement, Deerfield and Greensville will create the Facility Auxiliary Aids List (also described in Paragraph 3(c)(i)(3)) or update their existing lists of approved accommodations that may be made available as a reasonable accommodation when a Blind Prisoner requests it, subject to an evaluation of whether providing the accommodation would create an undue burden, fundamental alteration, or a threat to the safety and security of that individual Prisoner or the facility where he is housed. This list shall include, but is not limited to:

1. Tactile tape on housing unit floors outlining pathways to and from housing amenities and other areas used by Prisoners (as described in greater detail in Paragraph 3(i)(iv);

2. Materials in Accessible Formats, including large print, audio on a digital recorder, and accessible electronic documents on Prisoner tablets and/or library computers;

7

3. Assistive Technologies, including digital magnifiers, scanners, talking or Braille watches, audiobooks, and talking calculators;
4. Auxiliary Aids and Services, such as headphones;
5. Health Care Aids (such as white canes, glasses, contact lens solution);
6. A Qualified Caregiver, subject to availability at each facility;
7. Sunglasses;
8. Other approved low vision aids;
9. Approved personal grooming tools, such as emery boards;
10. Personal scanners like pens, wands, and other portable reading devices; and
11. A head start to chow, recreation, and any other appropriate group activity.

vii. If Blind Prisoners are approved for the following accommodations, they will not be required to pay for them. VDOC will select the device to be purchased:

1. Any Auxiliary Aid or Service, Assistive Technology, Health Aid, or other accommodation to the extent it is provided at no cost by DBVI;
2. White canes and any replacement tips for Blind Prisoners' white canes;
3. Talking devices, such as watches, clocks, or calculators;
4. Accessible Technology a Blind Prisoner requires to have equal access to a tablet or kiosk, including external keyboards or headphones;
5. Dark markers or pens, such as Sharpie pens;
6. Low vision aids, such as digital or handheld magnifiers or magnifying glasses;
7. Audiobooks;
8. Tactile tape;
9. Prescription eyewear, such as sunglasses, prescription glasses, or magnifying eyeglasses;
10. C-pens or other personal scanners, to the extent provided by DBVI; if purchased by VDOC, VDOC will provide them for check-out on the housing unit based on the need;
11. Writing aids, such as manual writing guides; and
12. Screen reader software, such as JAWS or NVDA.

viii. Within ninety (90) days of the Effective Date of this Agreement, VDOC will work with Keefe to identify one or more TVs Blind prisoners can purchase that have audio description.

e. Accessible Materials

i.  VDOC shall provide all Key Print Materials in large print of at least 18-point size or larger, depending on the needs of each Blind Prisoner and shall provide them on the devices listed in Paragraph 3(h)(ii). If Key Print Materials are revised or newly issued, VDOC shall create and make available such Key Print Materials to Blind Prisoners within two (2) business days of the Key Print Material being made available to sighted prisoners. For Key Print Materials that are not normally distributed to Prisoners, large print versions will be maintained in the libraries, rather than distributed to Blind Prisoners.

1.  If any other print material is not provided in large print, VDOC will create and provide a large print copy to the Blind Prisoner(s) upon request.

2.  For any print material that would be an undue burden or fundamental alteration to provide in an Accessible Format, for the Commissary Form, and for materials received in an inaccessible (print or handwritten) format, VDOC shall assign a counselor or a Qualified Caregiver to assist the Blind Prisoner with reading the inaccessible print materials, consistent with the choice of the Blind prisoner.

    a.  VDOC will instruct counselors that they must assist Blind Prisoners in completing their Commissary Forms.

3.  Once it is established that a particular Blind Prisoner needs a print accommodation, such as large print, accessible electronic, or audio, the Blind Prisoner's facility shall issue documents, or provide a way to access those documents independently, to that Prisoner in the Prisoner's required format, and that Prisoner shall not be required to re-request that print format for each print document issued by the facility.

4.  If a Blind Prisoner is unable to obtain a large print or other Accessible Format of an emergency grievance, written complaint, regular grievance, or a copy of a grievance receipt, the Blind Prisoner may leave a voicemail on VDOC's "Grievance Hotline," to notify VDOC staff that he or she is in need of a large print or other Accessible Format of those documents. The same policies regarding VDOC's timeline for responding to voicemails on the Grievance Hotline apply to these requests from Blind prisoners.

5.  Blind prisoners will have a weekly scheduled meeting with their counselors to get any needed assistance with reading and writing and other materials. VDOC will instruct counselors that they must timely assist Blind Prisoners with reading and writing materials.

ii.  Staff will provide any responses to Blind Prisoners' forms (*i.e.*, approval or denial of a request for accommodation, disposition of contraband, rejection of mail, grievance response, etc.) in legible, large print handwriting (not cursive) in a thick, dark marker or pen on a separate

sheet of paper attached to the response form. When available, staff will provide responses to these forms on a separate large print, typewritten sheet.

iii. In housing units or pods where Blind Prisoners live, staff will make announcements broadcast in an audio format any time a new memorandum, job posting, or other print announcement is posted to the bulletin board or titler system in that pod.

  1. The announcement will read through the content of the print announcement in its entirety to Blind Prisoners.

  2. The announcement will also be recorded on a digital recorder available for Blind Prisoners to check out from their building manager, counselor, or other appropriate staff member.

  3. Staff will not be required to record announcements signaling the start of a daily routine, such as chow call, pill call, and recreation.

f.  Staff Assistance

  i. Within a hundred-twenty (120) days of the Effective Date of this Agreement and at least annually, VDOC will notify staff, in writing and via video, of their obligations to reasonably accommodate and assist Blind Prisoners in their daily activities, including, but not limited to:

    1. Reading and writing;

      a. Assisting Blind Prisoners may entail reading and writing sensitive information such as grievances, medical forms, personal mail, or financial information if the Prisoner requests assistance with reading and writing those materials. VDOC will remind staff of their obligation to protect that Prisoner's privacy by keeping their sensitive information confidential to the extent consistent with policy and security and whether the assistance would constitute an undue burden or fundamental alteration of the program or activity. Staff will also be reminded to respectfully and nonjudgmentally assist in those tasks.

    2. Navigating their physical space, subject to safety and security considerations; and

    3. Operating assistive technology, or any document scanners in the housing unit.

  ii. The ADA Coordinators at Deerfield and Greensville will hold quarterly meetings with all Blind Prisoners to discuss their accessibility needs.

    1. When available, but no less frequently than every other meeting, a Warden or Assistant Warden of Deerfield and Greensville will attend the quarterly meetings with the ADA Coordinator.

    2. On the same day as these quarterly meetings, Blind Prisoners, who are members of the NFB-VA, will be allowed to meet as members of the NFB-VA.

    3. Any NFB-VA representative who wants to attend these meetings must undergo the same security screening process expected of any other visitor at Deerfield or Greensville.

    4. Prior to any NFB-VA meetings at Deerfield or Greensville, the NFB-VA must undergo VDOC's organization vetting process and be accepted as an organization under which Prisoners can regularly meet.

  iii. Within thirty (30) days of the Effective Date of this Agreement, VDOC will request that DBVI provide the ADA Coordinators and Assistant ADA Coordinators at all VDOC facilities with training on Blindness, Blindness Skills, and available accommodations for Blind people, including Assistive Technology and Health Care Aids.

g. Qualified Caregivers

  i. At VDOC facilities where Qualified Caregivers are available, VDOC will assign a Qualified Caregiver to each Blind Prisoner unless they decline such assistance in writing or no such qualified individual is available and willing to perform those services. If no qualified individual is available and willing to perform such services, VDOC will endeavor to assign a Qualified Caregiver when one becomes available. In the interim, VDOC will instruct staff to meet with the Blind Prisoner at least weekly to assist with any accommodations needed.

  ii. A Qualified Caregiver shall be assigned to the same cell, a cell near, or, if in a dormitory setting, to a bed assignment within two beds of the Blind Prisoner to whom they are assigned, consistent with safety and security protocols for both the Qualified Caregiver and the Blind Prisoner receiving assistance, other inmates, VDOC staff, and the facility, and considerations of undue burden and fundamental alteration. This provision is subject to the agreement of the assigned Qualified Caregiver and the Blind Prisoner and bed space availability.

  iii. VDOC's assignment of a particular Qualified Caregiver to a Blind Prisoner shall take into consideration any request for a specific Qualified Caregiver made by the Blind Prisoner, consistent with the safety of the Blind Prisoner, the Qualified Caregiver, other inmates, VDOC staff, and the facility. In the absence of a Blind Prisoner's request for a specific person to be assigned as his Qualified Caregiver, VDOC's assignment will take into consideration the safety of the Blind Prisoner, the Qualified Caregiver, VDOC staff, and the facility.

    iv.  VDOC shall provide Blind Prisoners and Qualified Caregivers any Blindness Skills training necessitated by the Prisoner's Blindness and as offered by DBVI.

        1.  VDOC shall, within sixty (60) days of the Effective of this Agreement request that DBVI provide this training to the caregivers currently assigned to the Individual Plaintiffs who are in VDOC custody.

h.  Technology

    i.  VDOC will include non-visual accessibility requirements in all future Requests for Proposals for tablets that will be used by Prisoners.

    ii.  Within one hundred and twenty (120) days of the Effective Date of this Agreement, VDOC will equip at least one computer in the Deerfield Education Library, at least one computer in the Deerfield Law Library, at least one computer in the Greensville Education Library in any housing cluster in which Blind Prisoners are housed, and at least one computer in the Greensville Law Library in any housing cluster in which Blind Prisoners are housed, with the following:

        1.  NVDA or JAWS Screen-reader/text-to-speech software;

        2.  ZoomText or other screen magnification software;

        3.  Word versions of all Key Print Materials, which will be updated within five (5) business days or as soon as practical given unforeseen security, safety, health, of administrative issues, of any updates to the materials;

        4.  Talking Typer or TypeAbility typing tutorial software;

        5.  Blank Word Documents, with VDOC templates, on which Blind Prisoners may write the information required to fill out any VDOC-specific form (grievances, informal complaints, request forms, etc.). Blind Prisoners will not be permitted to save any Word Documents to the computers, but will be provided with staff assistance to print those typed documents and submit them alongside those VDOC-specific forms.

    iii.  Within thirty (30) days of the installation of the above-described software, the librarians at Deerfield and Greensville will be instructed on how to use the software on the computers and all relevant staff will be instructed to accept typed, printed forms from Blind Prisoners regardless of formatting.

    iv.  Within one-hundred and twenty (120) days of the Effective Date of this Agreement, VDOC will make SARA Scanners or another equivalent document scanning devices available in the following places:

        1.  All general population pods at Deerfield in which Blind Prisoners are housed;

2. The housing unit where Mr. Hajacos currently resides at Greensville (Building 4, 100 Pod)

v. VDOC agrees to purchase SARA Scanner(s) or other equivalent document scanning device(s) to make available at VDOC facilities as needed. Document scanners will be reserved for the use of Blind Prisoners.

vi. VDOC will provide one SARA Scanner or other equivalent device in the housing units of the Individual Plaintiffs in VDOC custody and will make available additional document scanners dependent on need.

vii. Within thirty (30) days of the installation of a document scanner in a housing unit, the building sergeant, building lieutenant, and unit manager will be instructed on how to operate and use the scanner. VDOC will instruct these trainees to train any other relevant housing unit staff on how to operate the document scanner.

viii. Withing ninety (90) days of the Effective Date of this Agreement, VDOC shall make the following Assistive Technology available to Blind Prisoners through DBVI to use in their cells or dormitory upon request, and subject to security and undue burden and fundamental alteration concerns:

1. Digital magnifiers;
2. Talking calculators;
3. Talking or Braille watches; and
4. Wired headphones.

ix. Within ninety (90) days of the Effective Date of this Agreement, VDOC will notify staff that the following are reasonable accommodations for Blind Prisoners:

1. To permit Blind Prisoners to submit a separate sheet of paper with the information required for a VDOC-specific form (whether handwritten or typed). So long as the Prisoner meets the other requirements for submission (the form is timely submitted, includes all necessary information, etc.) the Prisoner's form will not be disqualified from consideration on the basis that a separate sheet is attached. If a Blind Prisoner is permitted to submit a form with an additional sheet as a reasonable accommodation, he or she will not be required to request that accommodation with respect to other forms.

2. To reserve the computers with screen-reader/text-to-speech software for certain periods of the day for Blind Prisoners' use at Deerfield and Greensville. This provision is subject to security, safety, undue burden and fundamental alteration concerns;

3. To reserve the computers with screen-reader/text-to-speech software for a particular Blind Prisoner at Deerfield and Greensville on a regular basis after he makes a request to use the computer on a regular basis and that request is granted so that the

13

Prisoner does not have to re-request regular time on the accessible computers. This provision is subject to security, safety, undue burden and fundamental alteration concerns.

4. To permit Blind Prisoners daily access to the facility library computers at Deerfield and Greensville equipped with Assistive Technology, during any day during the week in which the libraries are open and staffed. This provision is subject to security, safety, undue burden and fundamental alteration concerns.

i.   Housing

   i.   VDOC will take into account, subject to safety, security, health, undue burden and fundamental alteration concerns, a Blind Prisoner's preferences in the following areas of housing:
      1. The type of bed to which he or she is assigned (*e.g.*, top bunk, bottom bunk, single non-bunk bed if available at the facility where he is housed, etc.);
      2. The location of his or her bed or cell (*e.g.*, front of the pod near the bathrooms, microwave, and other amenities; back of the pod to have more space away from passersby, top or bottom tier; etc.);
      3. The space between his or her bed and another (*e.g.*, where possible, allowing for a wider aisle between beds);
      4. The proximity to his Qualified Caregiver (as described in Paragraph 3(g)(ii): at a bed nearby, in his or her cell, in a cell nearby, etc.);
      5. Whether he or she should be housed in a single cell; and
      6. Whether he or she should be housed in a housing unit with a lower population density.
   ii.  VDOC, upon request and approval dependent on safety, security, health, and undue burden and fundamental alteration concerns, will place tactile tape (textured tape that assists people who use white canes to navigate independently) in appropriate areas on each VDOC compound, including, but not limited to:
      1. Any pod in which the Individual Plaintiffs who are in VDOC custody are housed;
      2. Any pod in which a Blind Prisoner requests tactile tape and it is granted as a reasonable accommodation for that Prisoner.
   iii. VDOC will make best efforts to maintain the tactile tape and keep it unobstructed.
   iv.  At Deerfield and Greensville, tactile tape will guide Blind Prisoners from their bed area to the following key locations in the Housing Units in which tactile tape has been approved and placed:
      1. The housing unit bathroom;

14

2. The exit door(s);
3. The water fountain;
4. The microwave, ice machine, or other food prep area(s);
5. The washing machine, ironing board, or other laundry facility(ies);
6. Counselors' office and control booth;
7. Phones and videophones;
8. Kiosks; and
9. Pod trash cans.

v. Staff will make announcements when the bathroom stalls and showers are either empty or less crowded at Deerfield and Greensville.

j. Work Assignments

i. VDOC will provide any job postings, applications, and any other hiring-related materials available in Accessible Formats.

ii. A Blind Prisoner shall not be disqualified from any position on the basis of their Blindness unless no Reasonable Modification is available that would make it possible for the Blind Prisoner to perform the essential functions of the position without posing a threat to the health, safety, or security of the Blind Prisoner, other Prisoners, VDOC staff, or the facility.

1. If a Blind Prisoner is rejected for a position because it was determined that he or she could not perform the job because of his or her blindness, VDOC shall inform him or her in writing (in an Accessible Format), stating all reasons for the rejection and any Reasonable Modifications that VDOC considered before reaching the decision to reject. The written reasoning for rejecting the Blind Prisoner will be kept in the Prisoner's ADA file.

2. If a Blind Prisoner is rejected for a position on the basis of his or her blindness, VDOC will notify him or her of any other available positions at the same rate of pay for which he or she may apply.

3. Blind Prisoners shall not be given a medical code that prevents them from job eligibility solely on the basis of their Blindness.

iii. Blind Prisoners will be eligible for at least some Grade 3 work assignments provided they otherwise meet the job criteria.

4. **Applicability:**

a. This Agreement applies to and shall be enforceable against VDOC. The Agreement does not bind and may not be enforced against any third party, including any other agency of the Commonwealth of Virginia, any VDOC vendor or contractor, or any outside medical provider.

5. **Release of Liability:**

    a. In consideration for the aforementioned terms, the Plaintiffs, including the National Federation of the Blind of Virginia and the National Chapter of the National Federation of the Blind, for and on behalf of themselves and any of their children, grandchildren, spouses, parents, successors, beneficiaries, heirs, next of kin, assignees, executors, administrators, and/or related, associated, or affiliated persons or entities of any type or nature, or any and all other persons who could claim through them, hereby unconditionally, irrevocably, forever and fully release, acquit, and forever discharge VDOC, every VDOC employee, and the employees named as Defendants in both their individual and official capacities, and both those employees' and VDOC's agents, employees, officers, directors, principals, insurers, attorneys, predecessors, heirs, successors, assignees, and/or their related, associated, or affiliated persons or entities of any type or nature, as may be applicable, from any and all claims, demands, actions, causes of action, suits, damages or obligations of any type or nature that have been raised in, could have been raised in, arise out of, or relate to the Dispute.

6. **Court Jurisdiction:** The Parties understand and agree that a Stipulation of Dismissal, seeking dismissal of the Dispute pursuant to Federal Rule of Civil Procedure 41(a), with the Court retaining jurisdiction to enforce this Agreement for a term of two (2) years will be filed by Plaintiffs in the United States District Court for the Eastern District of Virginia. The Plaintiffs shall file such stipulation within fourteen (14) days of the Effective Date of this Agreement. Defendants agree to attend a status conference before Judge Colombell every six months during the course of the Court's jurisdiction to report on the progress of VDOC's implementation of the Agreement.

7. **Dispute Resolution:** In the event of any dispute between the Parties occurring during the term of this Agreement, the Parties agree to use the following provisions:

    a. The Party claiming nonperformance shall provide written notice to counsel for the other Party of the claimed nonperformance, containing the following information: (i) the alleged act of non-compliance and the particular Prisoner affected; (ii) a reference to the specific provision(s) of this Agreement that is or are not being complied with; (iii) a statement of the remedial action sought by the initiating Party; and (iv) a brief statement of the specific facts, circumstances, and legal argument supporting the position of the initiating Party. The other Party shall respond in writing to such notice within ten (10) days of the notice. Following such notice and response, the Parties will engage in good-faith discussions in an effort to resolve the dispute. If the Parties are unable to resolve the dispute within thirty (30) days following written notice and response, either Party may bring the matter to the Court.

    b. In resolving the dispute, the Court will apply the standards of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

8. **Non-Disparagement:**

    **a.** The Parties and their Counsel agree to file the Settlement Agreement on the publicly available docket in this case.

    **b.** The Parties and their Counsel will release an agreed-upon Joint Statement about the settlement of the Dispute. Any media statements by the Parties and their Counsel will be limited to the Joint Statement. The Parties and their Counsel may post the Joint Statement and the publicly filed Settlement Agreement on their websites, social media feeds, newsletters, and other non-media-focused communications.

    **c.** The Parties and their Counsel agree that any public statements outside the limitations described herein may be pursued as a material breach of this Agreement.

    **d.** The Parties acknowledge that the monetary amount paid to Plaintiffs in settlement of this case may, despite this Agreement, be disclosed by the Commonwealth of Virginia pursuant to a lawful Virginia Freedom of Information Act ("FOIA") request or other lawful request concerning monetary payments made by the Commonwealth. Likewise, the Parties acknowledge that Plaintiffs may disclose the monetary amount of this Agreement to their attorneys, financial advisors, health professionals (including mental health professionals), clergy, and to government entities as required for tax reporting purposes.

9. **No Admission of Liability:**
       a. Plaintiffs acknowledge that this agreement does not constitute an admission by VDOC or the individual VDOC Defendants of any: (a) liability; (b) violation of any federal, state, or local statute, law, regulation, order, or other requirement of law; (c) breach of contract, actual or implied; (d) commission of any tort; or (e) other civil wrong.

10. **Prison Litigation Reform Act:** For purposes of this Agreement only and in order to settle this Dispute, the Parties agree and represent that this Agreement complies in all respects with the provisions of 18 U.S.C. § 3626(a) and that the prospective relief specifically contained in this Agreement is narrowly drawn, extends no further than necessary, is the least intrusive means necessary to address the Plaintiffs' allegations, and is not intended to have an adverse impact on public safety or the operation of a criminal justice system.

11. **Acknowledgements**: Each of the Parties acknowledges and agrees that:

       a. This Agreement is entered into and executed voluntarily by each of the Parties hereto and without any duress or undue influence on the part of, or on behalf of, any such Party.

       b. Each of the Parties hereto has been represented by counsel and has had an opportunity to seek advice in connection with the negotiations for, and in the preparation of, this Agreement and that they have read this Agreement and that they are fully aware of its contents and legal effects.

    c.  The drafting and negotiation of this Agreement has been undertaken by all Parties hereto and their respective counsel. For all purposes, this Agreement shall be deemed to have been drafted jointly by the Parties hereto with no presumption in favor of one party over another in the event of any ambiguity.

12. **Virginia Law Applies:**  The Agreement shall be deemed to have been made within the Commonwealth of Virginia and shall be interpreted, construed, and enforced in accordance with the laws of the Commonwealth of Virginia. This paragraph is intended only to address the law applicable to the interpretation and enforcement of this agreement.

13. **Authority to Bind:**  Each individual executing this Agreement represents and warrants that such person is authorized to do so, and, that upon executing this Agreement, this Agreement shall be binding and enforceable in accordance with its terms upon the party or parties for whom such individual is acting.

14. **Counterparts:**  This Agreement may be executed in counterparts or with electronic signatures, and if so executed, each such counterpart shall have the force and effect of an original. A facsimile or copy of an original signature transmitted to the other Party is effective as an original document.

15. **Integration Clause:** This Agreement contains the entire agreement between and among the Parties hereto, and supersedes all other prior and contemporaneous discussions, negotiations, understandings, and agreements, whether oral or written, express or implied, between or among them relating to the subject matter of this agreement. This Agreement may not be amended orally, nor shall any purported oral amendment (even if accompanied by partial or complete performance in accordance therewith) be of any legal force or effect or constitute an amendment of this agreement. Rather, this Agreement may be amended only by an agreement in writing signed by the Parties.

**Entered:**

*Tracy Soforenko*
boxSIGN    469Y63Y2-4YY6WJ8R
_____
Tracy Soforenko, President
National Federation of the Blind of Virginia
Plaintiff

Date: May 30, 2024
_____

_____
Mark Riccobono
National Federation of the Blind

Date: _____

18

     c.   The drafting and negotiation of this Agreement has been undertaken by all Parties hereto and their respective counsel. For all purposes, this Agreement shall be deemed to have been drafted jointly by the Parties hereto with no presumption in favor of one party over another in the event of any ambiguity.

12. **Virginia Law Applies:**  The Agreement shall be deemed to have been made within the Commonwealth of Virginia and shall be interpreted, construed, and enforced in accordance with the laws of the Commonwealth of Virginia. This paragraph is intended only to address the law applicable to the interpretation and enforcement of this agreement.

13. **Authority to Bind:**  Each individual executing this Agreement represents and warrants that such person is authorized to do so, and, that upon executing this Agreement, this Agreement shall be binding and enforceable in accordance with its terms upon the party or parties for whom such individual is acting.

14. **Counterparts:**  This Agreement may be executed in counterparts or with electronic signatures, and if so executed, each such counterpart shall have the force and effect of an original. A facsimile or copy of an original signature transmitted to the other Party is effective as an original document.

15. **Integration Clause:** This Agreement contains the entire agreement between and among the Parties hereto, and supersedes all other prior and contemporaneous discussions, negotiations, understandings, and agreements, whether oral or written, express or implied, between or among them relating to the subject matter of this agreement. This Agreement may not be amended orally, nor shall any purported oral amendment (even if accompanied by partial or complete performance in accordance therewith) be of any legal force or effect or constitute an amendment of this agreement. Rather, this Agreement may be amended only by an agreement in writing signed by the Parties.

**Entered:**

_____     Date:_____

Tracy Soforenko
National Federation of the Blind of Virginia
Plaintiff

_____     Date:_____May 29, 2024_____

Mark Riccobono
National Federation of the Blind

     c.   The drafting and negotiation of this Agreement has been undertaken by all Parties hereto and their respective counsel. For all purposes, this Agreement shall be deemed to have been drafted jointly by the Parties hereto with no presumption in favor of one party over another in the event of any ambiguity.

12. **Virginia Law Applies:**  The Agreement shall be deemed to have been made within the Commonwealth of Virginia and shall be interpreted, construed, and enforced in accordance with the laws of the Commonwealth of Virginia. This paragraph is intended only to address the law applicable to the interpretation and enforcement of this agreement.

13. **Authority to Bind:**  Each individual executing this Agreement represents and warrants that such person is authorized to do so, and, that upon executing this Agreement, this Agreement shall be binding and enforceable in accordance with its terms upon the party or parties for whom such individual is acting.

14. **Counterparts:**  This Agreement may be executed in counterparts or with electronic signatures, and if so executed, each such counterpart shall have the force and effect of an original. A facsimile or copy of an original signature transmitted to the other Party is effective as an original document.

15. **Integration Clause:** This Agreement contains the entire agreement between and among the Parties hereto, and supersedes all other prior and contemporaneous discussions, negotiations, understandings, and agreements, whether oral or written, express or implied, between or among them relating to the subject matter of this agreement. This Agreement may not be amended orally, nor shall any purported oral amendment (even if accompanied by partial or complete performance in accordance therewith) be of any legal force or effect or constitute an amendment of this agreement. Rather, this Agreement may be amended only by an agreement in writing signed by the Parties.

**Entered:**

_____     Date:_____
Tracy Sofrenko
National Federation of the Blind of Virginia
Plaintiff

_____     Date: May 29, 2024
Nacarlo Courtney
Plaintiff

18

_____          Date:_____

William Hajacos
Plaintiff

_____          Date:_____

Michael McCann
Plaintiff

_Kevin Shabazz_
box SIGN   42J88Z74-4LRY5ZW6
                                         Date: **May 29, 2024**
Kevin Muhammad Shabazz                          _____
Plaintiff
                                         Signed with permission /s/ S. Westrum

_____          Date:_____

Ann-Marie White Rene
Assistant Attorney General
Counsel for Defendant VDOC

**Reviewed and Approved:**

_EL Hill_
box SIGN   4268PVW4-4LRY5ZW6
                                         Date: **May 29, 2024**
Eve Hill                                        _____
Brown, Goldstein & Levy
Counsel for Plaintiffs

_Sam Westrum_
box SIGN   42J88Z74-4LRY5ZW6
                                         Date: **May 29, 2024**
Samantha Westrum                                _____
ACLU of Virginia
Counsel for Plaintiffs

_Rebecca S. Herbig_
box SIGN   4YWKLPK3-4LRY5ZW6
                                         Date: **May 29, 2024**
Rebecca Herbig                                  _____
disAbility Law Center of Virginia
Counsel for Plaintiffs

_____          Date:_____
William Hajacos
Plaintiff


_____          Date:_____
Michael McCann
Plaintiff


_____          Date:_____
Kevin Muhammad Shabazz
Plaintiff


*Ann-Marie White Rene*                      Date: ___5/31/2024_____
Ann-Marie White Rene
Assistant Attorney General
Counsel for Defendant VDOC


**Reviewed and Approved:**


_____          Date:_____
Eve Hill
Brown, Goldstein & Levy
Counsel for Plaintiffs


_____          Date:_____
Samantha Westrum
ACLU of Virginia
Counsel for Plaintiffs


_____          Date: _____
Rebecca Herbig
disAbility Law Center of Virginia
Counsel for Plaintiffs

_____     Date:_____
Tracy Soforenko, President
National Federation of the Blind of Virginia
Plaintiff


_____     Date:_____
Mark Riccobono
National Federation of the Blind



_____     Date:_____
Nacarlo Courtney
Plaintiff


_____     Date: Fri, May 31, 2024
William Hajacos
Plaintiff

_____          Date:_____
William Hajacos
Plaintiff


_____          Date: 5/29-24
Michael McCann
Plaintiff


_____          Date:_____
Kevin Muhammad Shabazz
Plaintiff


_____          Date: _____
Ann-Marie White Rene
Assistant Attorney General
Counsel for Defendant VDOC


**Reviewed and Approved:**


_____          Date:_____
Eve Hill
Brown, Goldstein & Levy
Counsel for Plaintiffs


_____          Date:_____
Samantha Westrum
ACLU of Virginia
Counsel for Plaintiffs


_____          Date: _____
Rebecca Herbig
disAbility Law Center of Virginia
Counsel for Plaintiffs