**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

THE NATIONAL FEDERATION
OF THE BLIND OF VIRGINIA, *et al.*,

    **Plaintiffs,**

        **v.**                        **Case No. 3:23-cv-127-HEH**

VIRGINIA DEPARTMENT OF
CORRECTIONS, *et al.*,

    **Defendants.**

**JOINT STATUS REPORT REGARDING SETTLEMENT IMPLEMENTATION**

Plaintiffs National Federation of the Blind of Virginia ("NFB-VA"), Nacarlo Courtney, William Hajacos, Michael McCann, and Kevin Muhammad Shabazz ("Plaintiffs"), and Defendant the Virginia Department of Corrections ("VDOC," or "Defendant"), (collectively, "the Parties"), submit this Joint Status Report regarding settlement implementation pursuant to this Court's verbal order during the status conference held in this case on January 28, 2026. The Parties look forward to discussing settlement implementation further with the Court during the upcoming status conference

**INTRODUCTION**

Plaintiffs—four blind currently and formerly incarcerated[1] men and one non-profit membership organization that advocates for blind people like them—filed their Complaint on February 15, 2023, ECF No. 1. The Parties resolved the case by settlement agreement, which was filed with this Court on June 5, 2024. Since the Parties reached settlement, this Court has met with

---

[1] Since the onset of this litigation, both Mr. Courtney and Mr. Shabazz have been released from the custody of VDOC. Mr. McCann is a blind man who is housed at Deerfield Correctional Center. Mr. Hajacos is a Deafblind man who is housed at Greensville Correctional Center.

the Parties by virtual status conference on two occasions, approximately every six months. At the status conference before Judge Colombell on January 28, 2026, the Plaintiffs expressed ongoing concerns with VDOC's implementation of the terms in the Settlement Agreement, including concerns that were raised during previous status conferences and in the Joint Status Report submitted by the Parties on October 31, 2025. Accordingly, this Court ordered the Parties to submit two Joint Status Reports during the current monitoring period: one within 60 days, due on March 27, 2026, and a second due 60 days thereafter on May 29, 2026. The Parties have maintained frequent communication regarding outstanding issues, including a meet-and-confer via Zoom on Wednesday, May 20, 2026,. The Parties outline their respective positions below on the following key outstanding implementation topics: (i) provision of accommodation and auxiliary aids; and (ii) tablet accessibility.

## I.    Provision of Accommodations and Auxiliary Aids, ECF No. 381-1 § 3(d)(ii); VDOC Operating Procedure 801.3 § IX(A)(3)(b)

### A.    Plaintiffs' Position

VDOC is in the process of coming into compliance with its obligations under the Settlement Agreement to timely provide accommodations and auxiliary aids and services to blind prisoners.

Mr. Hajacos's accommodations remain substantially the same as they have been in the past year. Mr. Hajacos discussed his need for a tabletop magnifier with a DBVI representative and the Greensville ADA Coordinator in the fall of 2025, but has not received a written response to his request for that accommodation, nor has he received any reasonable alternative. VDOC's counsel represented in March that "VDOC intends to approve such a device," but that it needed additional clarification about the device Mr. Hajacos needed. Barry Marano, ADA Coordinator for VDOC, met with Mr. Hajacos in early April 2026 to discuss the accommodation and told Mr. Hajacos he

would procure a tabletop magnifier for him. To date, VDOC has not provided Mr. Hajacos with a tabletop magnifier, nor has VDOC provided any timeline by which it can be expected to arrive or explanation for the delay in its procurement. Without these accommodations, Mr. Hajacos is unable to independently read his Bible, write request forms and grievances, or review personal and legal correspondence. VDOC's absent responses and lengthy wait times violate the terms of the Settlement Agreement and federal law, preventing blind prisoners from maintaining equal participation in VDOC's programs and services and denying them equally effective communications.

On March 16, 2026, Plaintiffs gave notice to VDOC under Section 7 of the Settlement Agreement[2] of its noncompliance due to Mr. McCann's struggle to obtain a MerlinMini or other digital hands-free magnifier for nearly two and a half years, despite a prescription for the device from his providers at the low-vision clinic. Instead of providing Mr. McCann his own MerlinMini, VDOC procured a single MerlinMini in April 2026 to be shared among all blind prisoners in Mr. McCann's pod. Multiple prisoners use the device on any given day for a variety of tasks, including reading, writing, and personal grooming. Mr. McCann's hygiene concerns with the shared use of the MerlinMini, which he raised in the March 2026 Joint Status Report, remain at issue: the device is not currently being sanitized between uses. VDOC represented during the Parties' May 20 meet-and-confer that it would contact the manufacturer to inquire about proper cleaning procedures for the device.

---

[2] Section 7 provides that the Parties may resolve a dispute by providing "written notice to counsel for the other Party of the claimed nonperformance," to which the nonconforming party must "respond in writing" within ten days of the notice. ECF No. 381-1 § 7(a). If the Parties cannot resolve the dispute within thirty days after engaging in good-faith discussions, "either Party may bring the matter to the Court." *Id.*

Counsel for VDOC represented during a meet-and-confer on March 20 that Deerfield intends to procure three MerlinMinis. At this time, VDOC has not provided a timeline by which it will procure the additional devices.

Furthermore, the core problem remains that VDOC's process for approving and procuring accommodations takes months—or years—to complete. In both Mr. McCann's and Mr. Hajacos's case, their aforementioned requested accommodations have taken over a year and over two years, respectively, to fulfill. As described in the March 2026 Joint Status Report, Mr. McCann's request for cocoon glasses went unfulfilled for 10 months after the glasses were prescribed to him by the low-vision clinic in May 2025. And certain non-party blind prisoners continue to wait for longstanding accommodation requests to be fulfilled, including at least one prisoner whose request for a white cane has been outstanding since October 2025 at latest. VDOC represented in the March 2026 Joint Status Report that Deerfield had implemented weekly multi-disciplinary team meetings among ADA, medical, security, and administrative staff to ensure timely decisions on outstanding requests for accommodations and procurement of assistive devices. It remains unclear to Plaintiffs whether these meetings have positively influenced Deerfield's speed of response or management of accommodation requests. Furthermore, Greensville has not implemented such procedures, but could certainly benefit from greater structure in its ADA program considering Mr. Hajacos's experience of its failure to accommodate him.

### B.    Defendant's Position

VDOC had previously worked for the Department for the Blind and Vision Impaired to obtain a tabletop magnifier for Mr. Hajacos. During a recent meeting with Mr. Hajacos, DBVI's representative discussed a potential magnifier with Mr. Hajacos, but it was determined that this device would not be suitable for security purposes because the legs of the device could be broken

off. Mr. Marano has identified multiple alternative magnifiers that are security compliant and is ordering one for Mr. Hajacos.

With respect to the MerlinMini, Deerfield initially procured one device to streamline financial approvals which would otherwise have been needed if three devices had been purchased at once. Deerfield is placing orders for the other two devices on the date of this filing. Deerfield staff have been cleaning the device between uses with a dry cloth in accordance with the manufacturer's guidelines. The manufacturer has now informed Deerfield that the device can be sanitized using an alcohol solution,[3] and Deerfield is obtaining alcohol wipes for staff use. Deerfield has also reviewed checkout documentation and has observed that Mr. McCann is the only inmate who has been checking out the MerlinMini for use.

Regarding delays in the accommodation approval process, as noted in the previous update to the Court, Deerfield has seen success with implementing multi-disciplinary meetings to streamline the approval process, follow through on approved accommodations, and ensure that open requests receive a response. VDOC plans to implement the process at other facilities with a high volume of accommodation requests, including Greensville. VDOC would further encourage inmates to use the accommodation process and the grievance process if they wish to receive an update on an outstanding request. VDOC further notes that some delays in the process may occur due to supplier issues or because the inmate who requested an accommodation has rejected the proposed device offered by VDOC, requiring VDOC to explore additional options.

---

[3] The alcohol solution can only be used on the plastic surfaces of the device. Other surfaces, such as the screen and camera lens, cannot be cleaned with alcohol without causing damage, and therefore will only be cleaned with a dry cloth.

## II.      Tablet Accessibility, ECF 381-1 §§ 3(d)(vii)(4), 3(h)(i)

### A.      Plaintiffs' Position

Plaintiffs do not have equal access to their VDOC-issued tablet devices. Since the outset of this litigation to the resolution of this case through settlement negotiations, VDOC used JPay as its vendor for prisoner tablet devices. As of early spring 2026, VDOC started transitioning prisoner tablets to ViaPath devices. Greensville prisoners have received new ViaPath tablets, while Deerfield is scheduled to receive its ViaPath tablets in June.

Though ViaPath's tablets appear to include certain accessibility features designed for non-visual access, including a screen magnification setting and speech-to-text technology, those features are no more effective than those features that plagued Plaintiffs on the JPay tablets. To name a few, the screen magnification feature is one-size-fits-all, rather than allowing the blind user to select the magnification they need. As with the JPay tablets, the screen magnification and speech-to-text functions cannot be used simultaneously.

Not only are there issues with the ViaPath tablet accessibility, but VDOC has not provided training to blind prisoners on how to use the new tablets' accessibility features. For example, Mr. Hajacos received his new ViaPath tablet at Greensville without any training concerning its accessibility features. This directly conflicts with VDOC's prior representations that prisoners would receive training about the tablets at the time of their rollout. VDOC represented during the May 20 meet-and-confer that prisoners were invited to attend a training on the ViaPath tablets, but did not specify whether that training was specific to accessibility features, whether that training was provided at or near the time of tablet distribution, or whether prisoners were notified in an accessible format about the availability of the training. Plaintiffs have requested a detailed explanation of the manner in which blind prisoners at all facilities will receive training concerning the ViaPath tablets' accessibility features.

Beyond VDOC's failure to train Mr. Hajacos concerning the accessibility features of his tablet, Mr. Hajacos is still unable to access his tablet because VDOC has not provided him with the auxiliary aids he has repeatedly requested to be able to access his tablet. Mr. Hajacos has been approved to receive a radio frequency connection between his hearing aids and the tablet to afford him audio access to the tablet's functions (traditional headphones do not work for him in light of his Deafness). But he has not been scheduled to see the audiologist to acquire any hardware or program his hearing aids for this feature, and VDOC has not communicated with his audiologist to order any necessary equipment. In addition, Mr. Hajacos has requested a cord or cable that would allow him to connect his tablet to the television in his cell so he can better see the content on his tablet screen. To the extent the tablet is unable to accommodate the multiple plugs he needs for his TV cord, radio frequency connection device, flexible keyboard, and any microphone he may need in place of the microphone on traditional headphones, Mr. Hajacos has also requested a docking station or some other mechanism to be able to utilize the multiple accommodations he needs to access his tablet. VDOC has provided no information about any investigation or progress it has made in reviewing or procuring these auxiliary aids.

VDOC has represented that it is open to a NFB accessible technology specialist reviewing the ViaPath tablets for their accessibility features and to ensure VDOC's and ViaPath's trainings adequately capture the information blind prisoners need to know concerning the accessibility of the tablets. This will ensure that a blindness expert, not just a product technician, assesses the accessibility needed for blind users. VDOC represented on May 20 that it would contact ViaPath to ensure a representative from the company could take part in those discussions, which will likely need to continue until after the end of the Court's enforcement period.

VDOC suggested in the March 2026 Joint Status Report that it would work with Plaintiffs on an effective rollout of ViaPath tablets essentially as a courtesy because the Settlement Agreement "does not include specific provisions regarding tablet accessibility other than to provide that accessibility requirements be included in future requests for proposal for tablets." The Agreement does, however, require effective communication with blind prisoners in several VDOC programs—and the ADA requires equally effective communication in all of the programs and services VDOC offers prisoners. ViaPath's new tablet features, which permit prisoners to submit certain requests to prison officials, make the accessibility of the tablets of even greater importance. For example, the Agreement requires accessibility of Key Print Materials, including health request forms. ECF No. 381-1 §§ (I)(n)(vi)(3), (III)(e)(i). ViaPath tablets allow prisoners to submit request forms to their facilities' Medical departments, including requests for appointments or other care. These communications are directly protected by the Agreement. VDOC cannot evade its responsibilities under the Agreement, or under federal law, by contracting with a third-party vendor. 42 U.S.C. § 12182(b)(1)(A)(i)–(iii); *accord* 45 C.F.R. § 84.3 (Section 504).

**B.    Defendant's Position**

As Plaintiffs note, VDOC is currently in the process of introducing the new tablets at all of their facilities. The tablets are equipped with the Android accessibility suite, including talkback screen reader, capability to zoom and enlarge text size, text contrast, reverse color and color augmentation, night mode, and voice to text. The talkback feature can be toggled on the tablet's home screen, enabling users to tap for audio of any text on the device. It is anticipated that these features will be fairly intuitive, and many will be familiar to individuals who have used similar technology outside of the prison setting.

ViaPath, VDOC's vendor for the tablets, has personnel on site at its facilities for the distribution of the tablets. These personnel provide training for inmates to use the basic features

8

of the tablet at the time they are distributed. After the tablets are distributed, a ViaPath technician will remain at VDOC's facility to provide assistance. ViaPath is in the process of uploading a video to the tablets that provides instruction on the use of the accessibility features. In addition, ViaPath is training VDOC staff to provide instruction to inmates on the use of the accessibility features. ViaPath also has accessibility staff who can provide assistance if an inmate still has difficulty accessing these features.

With respect to external devices, the tablets can be connected to headphones, a microphone, and a keyboard or mouse.[4] There is no capability to cast the tablet display to another monitor or television, whether through a hardwire connection or wirelessly. The tablet is equipped with two headphone jacks and one micro USB port. VDOC has purchased over-the-ear headphones with a built-in microphone, and it is anticipated that these headphones will be compatible for most inmates with hearing aids. Inmates who have hearing aids that are not compatible with the headphones may be approved for a radiofrequency streaming device, which can be plugged into the tablet's headphone jack. Mr. Hajacos has been approved for such a device, and an order has been placed with his audiologist to procure the device.[5] It is not expected that a further appointment with the audiologist is needed. Once the device is received, VDOC will work with ViaPath to determine the best manner to also enable microphone use for Mr. Hajacos' tablet.

Counsel for VDOC met with representatives of ViaPath on May 28, 2026. Questions submitted by Plaintiffs' Counsel were provided to the ViaPath representatives for response. VDOC Counsel intends to arrange further discussions between Plaintiffs' Counsel and the ViaPath

---

[4] The tablet software does not enable a keyboard and mouse to be used simultaneously.

[5] Greensville staff previously updated Mr. Hajacos' chart with the approval for this device, but it appears that his audiologist did not receive the email notifying of this update. The audiologist has now been made aware of this approval.

representatives to answer any questions about the tablet and allow for Plaintiffs' accessible technology specialist to review the tablet. This process remains ongoing.

Date: May 29, 2026

Respectfully submitted,

/s/ Eve L. Hill
Eve L. Hill (VSB No. 96799)
Samantha Westrum (VSB No. 98453)
Monica R. Basche (*pro hac vice*)
Jamie Strawbridge (*pro hac vice)*
Jessica P. Weber (*pro hac vice*)
Jacqueline Cadman (*pro hac vice*)
Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 2500
Baltimore, Maryland 21202
(410) 962-1030
ehill@browngold.com
swestrum@browngol.com
mbasche@browngold.com
jstrawbridge@browngold.com
jweber@browngold.com

Vishal Agraharkar (VSB No. 93265)
Matthew Callahan (VSB No. 99823)
American Civil Liberties Union of Virginia
701 E. Franklin Street, Suite 1412
Richmond, Virginia 23219
(804) 519-5366
vagraharkar@acluva.org
mcallahan@acluva.org

Rebecca Herbig (VSB No. 65548)
disAbility Law Center of Virginia
1512 Willow Lawn Drive, Suite 100
Richmond, Virginia 23230
(204) 255-2042
Rebecca.Herbig@dlcv.org

/s/ Timothy E. Davis
Timothy E. Davis (VSB No. 87448)
Assistant Attorneys General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, VA 23219
Telephone: (804) 225-4226
Facsimile: (804) 786-4239
tdavis@oag.state.va.us

10

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of May, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing ("NEF") to all counsel of record.

/s/ Eve L. Hill
Eve L. Hill (VSB No. 96799)
Counsel for Plaintiffs

11